**Exhibit B**

The States' Motion for a § 705 Stay and Preliminary Injunction

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| STATE OF TENNESSEE, COMMONWEALTH OF KENTUCKY, STATE OF OHIO, STATE OF INDIANA, COMMONWEALTH OF VIRGINIA, and STATE OF WEST VIRGINIA,<br><br>*Plaintiffs*,<br><br>v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of Education, and UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 2:24-cv-00072-DLB-CJS<br>) District Judge David L. Bunning<br>) Magistrate Judge Candace J. Smith<br>)<br>)<br>)<br>)<br>)<br>) |

## **DECLARATION OF DEBORAH A. THOMPSON**

Pursuant to 28 U.S.C. § 1746, I, Deborah A. Thompson, duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this Declaration.

2. My name is Debby Thompson, and I serve as the Assistant Commissioner of Federal Programs and Oversight for the Tennessee Department of Education ("Department"). I have served in this capacity since June 2019, and prior to that, I served in various consulting and executive roles within the Department. My responsibilities include the oversight and implementation of federal education grant programs.

1

3. The Department supports the education of approximately 968,683 students in Tennessee who are educated through local education agencies ("LEAs"), Tenn. Code Ann. § 49-1-103(2), the Tennessee public charter school commission, *id.* 49-13-105, state special schools, *id.* § 49-50-1001, and the Achievement School District, *id.* § 49-1-614(a).

4. The Department administers the distribution of state and federal funds to all K through grade 12 public schools in Tennessee, including charter schools. All public-school districts in Tennessee receive federal funds.

5. The Department provides funding for and directly operates several state special schools, including the Tennessee School for the Blind, the Tennessee Schools for the Deaf (campuses in Knoxville, Nashville, and Jackson), and the Alvin C. York Agricultural Institute. It also currently oversees or operates approximately thirteen public schools in the Achievement School District for the 2023-2024 school year, *see* Tenn. Code Ann. § 49-1-614(a). All of these schools receive federal funds.

6. The Department and Tennessee's public schools use federal funds for many purposes, including, but not limited to:

    a. Providing supplemental educational support, materials, and enrichment for students;

    b. Providing non-academic support for students;

    c. Providing professional learning opportunities for teachers;

    d. Providing technology for student use.

7. If any program or activity at one of Tennessee's public schools is determined not to be in compliance with the requirements of Title IX, the U.S. Department of Education may terminate federal funding to the non-compliant program or activity.

8. The loss of federal funds to a Tennessee public school would require that school to either eliminate certain educational services currently offered using federal funds or to seek new funding to pay for those services. In the latter case, such services might need to be paused while new funding is obtained. The federal education grants that would be in jeopardy would include those provided under the Carl D. Perkins Act, the Elementary and Secondary Education Act (ESEA), and the Individuals with Disabilities Education Act (IDEA).

9. Tennessee recipients of Title IX funds must generally incur costs to comply with a federal rule implementing Title IX. These may include updating policies and training materials that reflect policies inconsistent with such a rule and incurring additional training costs for Title IX Coordinators.

10. More specifically, the Department's Office of Civil Rights is tasked with ensuring LEA and charter school compliance with Title IX and providing training and technical assistance to LEAs and charter schools regarding Title IX compliance. In fulfillment of that duty, the Department's Office of Civil Rights prepares and offers Title IX compliance training to LEAs and charter schools and in-house training to Department staff. The Department's Office of Civil Rights staff or a third-party contractor hired by the Department conduct training by traveling to school districts at the district's request (incurring travel costs), hosting virtual trainings, or hosting conferences. Depending on the training format, the Department or individual LEAs and charter schools or both incur training costs. Each Tennessee school district has a Title IX coordinator who, along with other school district employees, would participate in such trainings.

11. The amount of time dedicated to Title IX training both in-house and for LEAs and charter schools—and thus the cost for providing that training—increases in a year in which the U.S. Department of Education or another federal agency administering federal funding adopts

significant changes to Title IX regulations. Additionally, when new Title IX regulations are promulgated, the Department's Office of Civil Rights must review the regulations to determine whether the Department will recommend that the Tennessee State Board of Education's Civil Rights Compliance Rules be revised. Because the U.S. Department of Education has finalized new Title IX regulations, published at 89 Fed. Reg. 33,474 (Apr. 29, 2024), with an effective date of August 1, 2024, the Department (and, to the extent they bear training and other compliance costs, LEAs and public charter schools) will incur greater time and costs associated with Title IX training and other compliance this year than in a year in which the U.S. Department of Education did not revise its Title IX rules. And again, because recipients must comply with these new regulations before the next school year begins, many of Tennessee recipients' training and other compliance costs, including those of the Tennessee Department, will be incurred this spring and summer, before the effective date.

12. I declare under penalty of perjury that the foregoing is true and correct.

_____
Deborah A. Thompson
Dated: _____May 2_____, 2024