**Exhibit G**

The States' Motion for a § 705 Stay and Preliminary Injunction

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| STATE OF TENNESSEE, COMMONWEALTH OF KENTUCKY, STATE OF OHIO, STATE OF INDIANA, and STATE OF WEST VIRGINIA,<br><br>    *Plaintiffs*,<br><br>v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of Education, and UNITED STATES DEPARTMENT OF EDUCATION,<br><br>    *Defendants*. | Civil Action No. 2:24-cv-72 |

## DECLARATION OF DEREK J. DEUTH

Pursuant to 28 U.S.C. § 1746, I, Derek J. Deuth, duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this Declaration.

2. My name is Derek J. Deuth, and I serve as the Chief Financial Officer for the Indiana Department of Education. As Chief Financial Officer, I handle the transactions of the Department and oversee its fiscal policy and allocations.

3. The Indiana Department of Education oversees 1,769 schools across the State of Indiana as of 2022, as well as oversight over two specialty schools—the Indiana School for the Deaf and the Indiana School for the Blind and Visually Impaired. There are also 291 school

1

districts authorized by the Indiana General Assembly and overseen by the Indiana Department of Education across the state as of 2022.

4. The Department administers the distribution of state and federal funds to all K through grade 12 public schools in Indiana, including charter schools. All public-school districts in Indiana receive federal funds.

5. Educational programs and activities in Indiana that are funded through the Indiana Department of Education received an estimated $1.38 billion in federal funds and an estimated $8.54 billion in state funds in Fiscal Year 2022–2023. The Indiana Department of Education's total annual budget for Fiscal Year 2022–2023 was estimated to be $9.97 billion, making federal funds an estimated 13.8% of the Department's total estimated annual budget. The total estimated annual budget is greater than the sum of the estimated federal and state funds received because the Indiana Department of Education also receives funds from other sources that are neither federal nor state.

6. The Department and Indiana's public schools use federal funds for many purposes, including, but not limited to:

    a. Providing supplemental educational support, materials, and enrichment for students;

    b. Providing non-academic support for students;

    c. Providing professional learning opportunities for teachers;

    d. Providing technology for student use;

    e. Providing food and nutrition programs for students;

    f. Supporting special education students and programs.

7. These schools must conform with current Title IX regulations to receive federal funding. If a school is found to be in noncompliance with Title IX, the U.S. Department of Education may terminate federal funding to the non-compliant program or activity. Therefore, to ensure compliance with Title IX, each school district has a Title IX Coordinator.

8. The loss of federal funds to Indiana's public schools would require these institutions to either eliminate certain educational services currently offered using federal funds or to seek new funding to pay for those services. In the latter case, such services might need to be paused while new funding is obtained, causing a negative impact for students. Additionally, students could be forced to interrupt their education for schools to be trained in the new Title IX regulations, hampering their academic success.

9. The federal education grants that would be in jeopardy would include those provided under the Carl D. Perkins Act, the Elementary and Secondary Education Act (ESEA), the Individuals with Disabilities Education Act (IDEA), and the Child Nutrition Program.

10. The Indiana School for the Blind and Visually Impaired receives federal funds and grants in support of its mission. The Department distributes federal grant awards to the Indiana School for the Blind and Visually Impaired. These funds subject the school to all the provisions of Title IX.

11. The Indiana School for the Deaf receives federal funds and grants in support of its mission. The Department distributes federal grant awards to the Indiana School for the Deaf. These funds subject the school to all the provisions of Title IX.

12. The loss of federal funds to Indiana's School for the Blind and Visually Impaired, and the School for the Deaf would require those schools to either eliminate certain educational and food services currently offered using federal funds or to seek new funding to pay for those services.

In the latter case, such services might need to be paused while new funding is obtained. Additionally, students could be forced to interrupt their education for schools to be trained in the new Title IX regulations, hampering their academic success.

13. Title IX fund recipients must generally incur costs to comply with a federal rule implementing Title IX. Updating policies to conform with new Title IX regulations would place an unnecessary burden across Indiana educational institutions for schools to receive federal funding. These policy updates would take time and fiscal resources away from educating our students and require training for our employees and Title IX Coordinators. Further, schools may be forced to use taxpayer resources to comply with these policies, for example, using taxpayer resources to update school building restrooms and locker room facilities across our schools to ensure student privacy.

14. Because the U.S. Department of Education plans to finalize its recent proposed Title IX rule, published at 87 Fed. Reg. 41390 (July 12, 2022), with an effective date of August 1, 2024, Indiana schools, including the Indiana School for the Blind and Visually Impaired, and the Indiana School for the Deaf will incur greater time and costs associated with Title IX training this year than in a year in which the U.S. Department of Education did not revise its Title IX rules.

15. I declare under the penalty of perjury that the foregoing is true and correct.

_____
Derek J. Deuth

Dated: May 3, 2024