**Exhibit N**

The States' Motion for a § 705 Stay and Preliminary Injunction

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| STATE OF TENNESSEE, COMMONWEALTH OF KENTUCKY, STATE OF OHIO, STATE OF INDIANA, COMMONWEALTH OF VIRGINIA, and STATE OF WEST VIRGINIA,<br><br>    *Plaintiffs*,<br><br>v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of Education, and UNITED STATES DEPARTMENT OF EDUCATION,<br><br>    *Defendants.* | Civil Action No. 2:24-cv-72-DLB-CJS |

## DECLARATION OF SARAH ARMSTRONG TUCKER

Pursuant to 28 U.S.C. § 1746, I, Sarah Armstrong Tucker, duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this Declaration.

2. I serve as the Chancellor for Higher Education for the State of West Virginia, encompassing both the two-year and the four-year public institutions of higher education. I have served in this capacity since 2019, and prior to that, I served as the Chancellor of the Council for Community and Technical College Education, encompassing the two-year public institutions of higher education. My responsibilities include coordinating statewide higher education policy and administration of shared services for West Virginia's 19 public colleges and universities. Our

1

office also handles distribution of more than $100 million annually in State-funded student financial aid.

3. The West Virginia Higher Education Policy Commission was created by the West Virginia legislature in West Virginia Code § 18B-1B-1. Its mission is to provide shared services in a cost-effective manner upon request by the State's public institutions of higher education; undertake certain statewide and regional initiatives as specifically designated by statute, including those related to the administration of grants and scholarships and including those in conjunction with the Council for Community and Technical College Education; to review, confirm, or approve certain actions undertaken by the institutional governing boards; and develop and gain consensus around the public policy agenda for higher education and other statewide issues pursuant to statute. The Commission and the Council, of which I am Chancellor, oversee 19 public institutions of higher education, including both universities and community and technical colleges. These schools serve approximately 85,000 students annually.

4. West Virginia's public higher education institutions are arms of the State and alter egos of West Virginia.

5. All of West Virginia's public higher education institutions receive federal funds and are subject to the requirements of Title IX. These funds amount to hundreds of millions of dollars annually.

6. If any program or activity at one of West Virginia's public higher education institutions is determined not to be in compliance with the requirements of Title IX, the U.S. Department of Education may terminate federal funding to that program or activity.

7. West Virginia's public higher education institutions use federal funds for many purposes, including student loans; student financial aid and scholarships; academic and scientific

research; land grant services; veterans' educational benefits, such as the GI Bill; the operation of academic medical centers; and the implementation of workforce development programs.

8. If West Virginia's public higher education institutions lost their federal funding, they would be required to eliminate certain educational services currently offered using federal funds. Even if new funding is secured, institutions would likely need to pause the services while searching for new funding. Additionally, students who currently rely on federal funds to attend West Virginia's public higher education institutions could be forced to drop out and abandon their pursuit of a degree, workforce certification, or other postsecondary educational attainment.

9. The changes made in the Final Rule are remarkably onerous to West Virginia's public higher education institutions. The Final Rule would impose substantial costs without any additional funding, while threatening the loss of existing funding. This would be a burden on all of West Virginia's public higher education institutions, but it would particularly harm smaller schools, which lack the funding to adequately comply with everything required by the Final Rule.

10. The Final Rule does not align with the original intent of Title IX as has been understood by the Commission and West Virginia's public institutions of higher education since the law's inception.

_____
Sarah Armstrong Tucker, Ph.D.
Chancellor

Dated: April 29, 2024

3