**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY**

STATE OF TENNESSEE, et al.,

     *Plaintiffs*,

v.

MIGUEL CARDONA, *in his official capacity
as Secretary of Education*, et al.,

     *Defendants*.

No. 2:24-cv-00072

**DEFENDANTS' OPPOSITION TO
INTERVENOR-PLAINTIFFS' MOTION FOR
A § 705 STAY AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

PROCEDURAL HISTORY................................................................................. 2

LEGAL STANDARD.......................................................................................... 3

ARGUMENT ...................................................................................................... 3

I.     Intervenors Are Unlikely to Succeed on the Merits of Their Challenges to the
Rule. .......................................................................................................... 3

     A.     No Dispute About Athletics Regulations Is Properly Before the Court
Because the Rule Does Not Change the Status Quo Regarding Eligibility
for Sex-Separate Athletic Teams. ............................................................ 3

     B.     The Final Rule's Provision that Title IX Prohibits Discrimination on the
Basis of Gender Identity Is Compelled by the Statutory Text and Not
Arbitrary or Capricious. .......................................................................... 5

          1.     The Scope of Sex Discrimination in § 106.10 Is Consistent with
the Text of Title IX and Supreme Court Precedent. ................................... 5

          2.     Intervenors Do Not Show that the Interpretation in § 106.10 Is
Arbitrary or Capricious ............................................................................ 7

     C.     The Final Rule's Delineation of Title IX's Limits on Sex Separation and
Differentiation Is Properly Derived from the Statutory Text, Not Arbitrary
and Capricious, and Constitutional. ....................................................... 8

          1.     The De Minimis Harm Standard in § 106.31(a)(2) Is Properly
Derived from the Statutory Text and Fully Consistent with
Supreme Court Precedent. ........................................................................ 9

          2.     Intervenors Do Not Show that the Department's Consideration of §
106.31(a)(2) Was Unreasonable, or Arbitrary and Capricious. ............... 10

          3.     Intervenors Do Not Show that § 106.31(a)(2) Violates a
Constitutional Right to Bodily Privacy.................................................... 16

     D.     The Rule's Clarification of the Definition of Sex-Based Harassment Is Not
Overbroad or Vague, and it Does Not Restrict or Compel Speech in
Violation of the First Amendment. ......................................................... 17

II.     Intervenors Have Not Established Irreparable Harm....................................... 20

III.    The Equities and Public Interest Weigh Against Preliminary Relief. .............................. 22

IV.    Any Relief Afforded by the Court Should Be Limited in Accordance with the
        Administrative Procedure Act and Equitable Principles. .................................................. 22

CONCLUSION ..................................................................................................................... 23

# TABLE OF AUTHORITIES

**CASES**

*Adams v. Sch. Bd. of St. John's County,*
    57 F.4th 791 (11th Cir. 2022) ............................................................ 6, 7

*Ams. for Prosperity Found. v. Bonta,*
    594 U.S. 595 (2021) .......................................................................... 17

*B.P.J. v. W. Va. State Bd. of Educ.,*
    98 F.4th 542 (4th Cir. 2024) ......................................................... 4, 21

*Bostock v. Clayton County,*
    590 U.S. 644 (2020) ................................................................. 5, 7, 8, 9

*Brannum v. Overton County School Board,*
    516 F.3d 489 (6th Cir. 2008) ............................................................. 16

*D.T. v. Sumner Cnty. Sch.,*
    942 F.3d 324 (6th Cir. 2019) ............................................................. 21

*Doe by and through Doe v. Boyertown Area Sch. Dist.,*
    897 F.3d 518 (3d Cir. 2018) .............................................................. 17

*Doe v. Luzerne County,*
    660 F.3d 169 (3d Cir. 2011) .............................................................. 16

*FCC v. Prometheus Radio Project,*
    592 U.S. 414 (2021) ............................................................................ 8

*Fischer v. Thomas,*
    78 F.4th 864 (6th Cir. 2023) ............................................................. 21

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006) ...................................................................... 18, 19

*Grimm v. Gloucester Cnty. Sch. Bd.,*
    972 F.3d 586 (4th Cir. 2020) ............................................................. 10

*Harris v. Forklift Sys., Inc.,*
    510 U.S. 17 (1993) ........................................................................ 18, 20

*Jackson v. Birmingham Bd. of Educ.,*
    544 U.S. 167 (2005) ............................................................................ 6

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31,*
    585 U.S. 878 (2018) .......................................................................... 18

*Kennedy v. Bremerton Sch. Dist*,
　597 U.S. 507 (2022) ................................................................................ 18, 19

*Kent v. Johnson*,
　821 F.2d 1220 (6th Cir. 1987) ...................................................................... 16

*Kentucky v. Biden*,
　571 F. Supp. 3d 715 (E.D. Ky. 2021), *aff'd as modified*, 57 F.4th 545 (6th Cir. 2023) .......... 22

*Lane v. Franks*,
　573 U.S. 228 (2014) ...................................................................................... 19

*Leary v. Daeschner*,
　228 F.3d 729 (6th Cir. 2000) ........................................................................... 3

*Memphis A. Philip Randolph Inst. v. Hargett*,
　978 F.3d 378 (6th Cir. 2020) ......................................................................... 20

*Meriwether v. Hartop*,
　992 F.3d 492 (6th Cir. 2021) ......................................................................... 19

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*,
　945 F.2d 150 (6th Cir. 1991) ..................................................................... 20, 21

*Morgan Stanley Capital Grp. Inc. v. Public Util. Dist. No. 1*,
　554 U.S. 527 (2008) ...................................................................................... 8

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
　463 U.S. 29 (1983) ...................................................................................... 16

*Muldrow v. City of St. Louis*,
　144 S. Ct. 967 (2024) .................................................................................... 9

*Munaf v. Geren*,
　553 U.S. 674 (2008) ...................................................................................... 3

*Ne. Ohio Coal. for the Homeless v. Husted*,
　696 F.3d 580 (6th Cir. 2012) .......................................................................... 3

*Nken v. Holder*,
　556 U.S. 418 (2009) .................................................................................... 22

*Parents for Priv. v. Barr*,
　949 F.3d 1210 (9th Cir. 2020) ....................................................................... 17

*Speech First Inc. v. Cartwright*,
　32 F.4th 1110 (11th Cir. 2022) ...................................................................... 19

iv

*Tinker v. Des Moines Indep. Sch. Dist.*,
  393 U.S. 503 (1969) ........................................................................... 19

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................................. 4

*United States v. Miami Univ.*,
  294 F.3d 797 (6th Cir. 2002) ............................................................ 22

*United States v. Salerno*,
  481 U.S. 739 (1987) ........................................................................... 17

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
  858 F.3d 1034, (7th Cir. 2027) ........................................................ 10

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................. 3

**STATUTES**

20 U.S.C. § 1681 ........................................................................... 5, 15

20 U.S.C. § 1686 ........................................................................... 7, 15

42 U.S.C. § 2000e-2 .......................................................................... 5

**REGULATIONS**

34 C.F.R. § 106.10 ............................................................................ 1, 5

34 C.F.R. §106.31 ........................................................................ *passim*

34 C.F.R. §106.33 ......................................................................... 10, 14

34 C.F.R. § 106.41 .................................................................. 3, 4, 11, 12

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving
  Federal Financial Assistance: Sex-Related Eligibility Criteria for Male and Female
  Athletic Teams,
   88 Fed. Reg. 22,860 (proposed Apr. 13, 2023) .................................. 4, 11

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving
  Federal Financial Assistance,
  89 Fed. Reg. 33,474 (Apr. 29, 2024) ............................................... *passim*

# INTRODUCTION

Like the State Plaintiffs, Intervenors fail to demonstrate that they are entitled to preliminary relief in their challenge to the Final Rule. Much of Intervenors' Motion is devoted to Intervenors' concerns about sex separation in athletics, but the Rule does not affect the Department's regulations regarding sex-separate athletic teams, which are the subject of a separate rulemaking. Instead, the Department is currently considering a separate proposed rule that would address athletics; as the Department has unambiguously stated, "[u]ntil that rule is finalized and issued, the current regulations on athletics continue to apply." Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33,474, 33,817 (Apr. 29, 2024) (the Final Rule or Rule). Intervenors' focus on athletics rests on a basic misunderstanding of the Rule, *see infra* Part I.C.2, and many of their arguments and assertions are thus simply irrelevant to the issues before the Court. The applicable regulations regarding the eligibility criteria a school can use for sex-separate sports teams remain the same now as they were last year, and will continue to remain the same on August 1, 2024, regardless of the outcome in this case. Because the Rule does not govern this issue, Intervenors' claims regarding sex-separate athletic teams cannot be redressed through this case and are not properly before the Court.

As for Intervenors' challenges to the actual provisions of the Rule, Intervenors are unlikely to succeed on the merits because the relevant portions of the Rule—namely the provisions to be codified at 34 C.F.R. §§ 106.10 and 106.31(a)(2)—are grounded in the text of Title IX, are not arbitrary and capricious, and are consistent with the Constitution. In particular, Intervenors fail to demonstrate that the de minimis harm standard to be codified at 34 C.F.R. § 106.31(a)(2)—the focus of virtually all of their arguments—is inconsistent with Title IX or arbitrary and capricious, or that it violates a purported fundamental right to "bodily privacy." Moreover, Intervenors

mischaracterize the Final Rule's harassment standard as sweeping so broadly that it infringes on First Amendment rights. Thus, like the State Plaintiffs, the Intervenors fail to show that they are likely to succeed on the merits and their motion for preliminary relief can and should be denied on that basis alone.

Intervenors also have not met their high burden to satisfy the other requirements for a stay or preliminary injunction. Intervenors' alleged harms are speculative at best, or otherwise not legally cognizable, and thus cannot establish irreparable injury justifying preliminary relief. Moreover, the public interest and balance of equities weigh against granting Intervenors' Motion, as enjoining the Rule would substantially harm the Government's interests in preventing discrimination in federally funded education programs and activities.

Accordingly, the Court should deny the motion for a § 705 stay or preliminary injunction.

## BACKGROUND

Defendants incorporate by reference the Background Section of the Opposition, *see* Defs.' Opp'n to Pls.' Mot. for a § 705 Stay and Prelim. Inj. 3-4, ECF No. 73, filed in response to Plaintiff States' Motion for § 705 Stay and Preliminary Injunction, *see* ECF No. 19.

## PROCEDURAL HISTORY

On April 30, 2024, Plaintiff States ("States") filed their Complaint. ECF No. 1. On May 3, 2024, States filed their Memorandum in Support of a Motion for § 705 Stay and Preliminary Injunction ("States Mem."). ECF No. 19.

Also on May 3, 2024, Intervenors filed a Motion to Intervene, ECF No. 21, which was granted by the Court on May 8, 2024, ECF No. 50. On May 16, 2024, Intervenors filed a separate Motion for a § 705 Stay and Preliminary Injunction, ECF No. 63, and a memorandum in support ("Intervenors Mem."), ECF No. 63-1. On May 24, 2024, Defendants filed an Opposition to the States' Motion ("Defs.' Opp'n"). ECF No. 73.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted); *see Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). A plaintiff may obtain this "extraordinary remedy" only "upon a clear showing" that it is "entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). In determining whether a preliminary injunction is warranted, the Court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 590–91 (6th Cir. 2012) (citation omitted).

## ARGUMENT

### I. Intervenors Are Unlikely to Succeed on the Merits of Their Challenges to the Rule.

#### A. No Dispute About Athletics Regulations Is Properly Before the Court Because the Rule Does Not Change the Status Quo Regarding Eligibility for Sex-Separate Athletic Teams.

Intervenors state that the Rule will "harm many, especially females like Intervenor A.C.," by allowing other students to participate on athletics teams consistent with their gender identity. Intervenors Mem. 2, 11–14, 17–18, 23. This concern is unfounded because the Rule makes explicit that it does not amend or affect the Department's regulation regarding sex-separate participation on athletic teams, given that the eligibility criteria a school can use for its male and female athletic teams remain unchanged by the Rule. 89 Fed. Reg. at 33,817. The section of the current athletics regulations that addresses this issue is § 106.41(b), which sets forth an exception to the regulations' general nondiscrimination mandate for § 106.41(a) for "separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact

sport." 34 C.F.R. § 106.41(b). The Rule makes no changes to § 106.41(b). *See* 89 Fed. Reg. at 33,893.[1]

Indeed, the Rule expressly states that the Department will address sex-separate athletic teams in a separate rulemaking. *Id.* That proposed rulemaking issued in April 2023, addresses eligibility for male and female athletic teams, and has not yet been finalized. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance: Sex-Related Eligibility Criteria for Male and Female Athletic Teams, 88 Fed. Reg. 22,860 (proposed Apr. 13, 2023) [Athletics NPRM]. In the Rule, the Department further made explicit that "[u]ntil that rule is finalized and issued, the current regulations on athletics continue to apply." 89 Fed. Reg. at 33,817. Because the applicable regulations regarding the eligibility criteria a school can use for sex-separate sports teams remain unchanged by the Rule, any dispute about the proper scope of such regulations is not properly before this Court.

As a result, none of the Intervenors has standing to raise claims based on the sex-separation of athletic teams. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."). Intervenor A.C. lacks standing to raise any claims arising out of her experience competing against a transgender female student on her school sports teams. Intervenors Mem. 2–3, 10, 18. That aspect of A.C.'s athletics experience was required by an injunction in an unrelated court case, *B.P.J. v. W. Va. State Bd. of Educ.*, 98 F.4th 542 (4th Cir. 2024), that had nothing to do with, and pre-dated, the Rule. It is thus not traceable to the Rule, nor would it be redressed by any injunction from this Court. And Christian Educators Association

---

[1] To the extent Intervenors insist that sex-separate athletic teams are nonetheless impacted by the Rule—notwithstanding the fact that the Rule explicitly states otherwise—they are incorrect as discussed further *infra* in Part I.C.2.

International has not alleged that it or any of its members faces a concrete or particularized injury associated with sex-separate athletics teams, let alone an athletics-related harm purportedly tied to the Rule.

**B.** **The Final Rule's Provision that Title IX Prohibits Discrimination on the Basis of Gender Identity Is Compelled by the Statutory Text and Not Arbitrary or Capricious.**

1.  **The Scope of Sex Discrimination in § 106.10 Is Consistent with the Text of Title IX and Supreme Court Precedent.**

Like the States, the Intervenors argue that the Final Rule is contrary to Title IX because the Department incorrectly applied *Bostock*'s reasoning in interpreting the scope of sex discrimination under Title IX. *See* Intervenors Mem. 13–15. As Defendants explained in their Opposition, that interpretation—"Discrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity," Final Rule, 89 Fed. Reg. at 33,886 (to be codified at 34 C.F.R. § 106.10)—faithfully interpreted Title IX's antidiscrimination provision, applying the logic and reasoning of *Bostock*. *See* Defs.' Opp'n 5–10. To summarize, *Bostock v. Clayton County* concluded that "sex is necessarily a but-for cause" of discrimination on the basis of transgender status "because it is impossible" to discriminate against a person for being transgender "without discriminating against that individual based on sex." 590 U.S. 644, 660-61 (2020). That reasoning applies with equal force to Title IX's prohibition on discrimination "on the basis of sex," 20 U.S.C. § 1681(a), which employs a causation standard indistinguishable from Title VII's "because of . . . sex" language, 42 U.S.C. § 2000e-2(a)(1).

The Intervenors largely echo the States' reasons why, in their view, *Bostock*'s reasoning should not be applied to Title IX. For example, both the Intervenors and States argue that Title IX prohibits discrimination based on "the biological binary of male and female," Intervenors Mem.

5; *see id.* at 5–15, 22–24; *see* States Mem. 12–16. But the Supreme Court in *Bostock* proceeded under a similar assumption, as the Department explained in the Final Rule; one cannot discriminate based on gender identity without considering the individual's sex, "even if that term is understood to mean only physiological or 'biological distinctions between male and female.'" 89 Fed. Reg. at 33,802; *see also* Defs.' Opp'n 9. Similarly, both the Intervenors and States argue that *Bostock* did not concern "the lawfulness of sex-specific places." Intervenors Mem. 22; States Mem. 19. But again, as the Department has explained, neither does § 106.10 purport to address "the lawfulness of sex-specific places"; it explains only that discrimination on the basis of sex includes discrimination on the basis of gender identity. *See* Defs.' Opp'n 9–10.

Intervenors do cite two additional cases—*Adams v. Sch. Bd. of St. John's County*, 57 F.4th 791, 799 (11th Cir. 2022), and *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005)—in support of their view that *Bostock*'s reasoning does not apply to Title IX. *See* Intervenor Mem. 13. But those cases are, in fact, inapposite.

Intervenors take the quoted language from *Jackson* out of context. In evaluating whether Title IX, like Title VII, permitted a cause of action for retaliation, the *Jackson* Court stated that Title VII and Title IX are "vastly different." 544 U.S. at 175. But the differences the Court highlighted—that "Title IX's cause of action is implied" and that Title VII "spells out in greater detail the conduct that constitutes discrimination," including by expressly prohibiting retaliation, *id.*—are not relevant here. Title IX's prohibition against discrimination "on the basis of sex" is equivalent to the text the Court interpreted in *Bostock*, and neither *Jackson* nor any other decision of the Court suggests that it should be interpreted differently.

Intervenors' reliance on *Adams* fares no better. In *Adams*, the Eleventh Circuit held that a school district policy preventing a transgender boy from using the boys' restroom did not violate

Title IX because "the School Board's policy fits squarely within [Title IX's] carve-out" allowing educational institutions to "'maintain[] separate living facilities for the different sexes'" and relevant implementing regulations. 57 F.4th 791, 811 (2022) (en banc) (quoting 20 U.S.C. § 1686; *see* pp. 17–18, *infra* (discussing Section 1686). But the Final Rule's provision setting forth the scope of sex discrimination (§ 106.10) does not address restrooms, *see* 89 Fed. Reg. at 33,886, which are instead addressed by a separate provision of the Rule (§ 106.31(a)(2)). Nothing in *Adams* contradicts the Final Rule's clarification in § 106.10 that discrimination based on gender identity necessarily constitutes discrimination "on the basis of sex" under Section 1681 of Title IX, read in light of *Bostock*. *See Adams*, 57 F.4th at 808-09 (recognizing that "*Bostock* held that 'discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex'" and maintaining that this "statement is not in question in this appeal" (citation omitted)).

Last, Intervenors argue, without explanation, that *Bostock* does not apply to statutes passed under the Spending Clause. *See* Intervenors Mem. 15. As Defendants have explained, the Rule does not create a Spending Clause violation (which is a limitation on statutes anyway). *See* Defs.' Opp'n 19–20. And at any rate, *Bostock*'s holding was built on the Supreme Court's determination that Title VII's antidiscrimination provision is unambiguous and clear. *See Bostock*, 590 U.S. at 674. Title IX's parallel text is no less clear. Any clear statement rule is therefore satisfied.

Accordingly, neither the Intervenors nor States have rebutted the Department's straightforward application of *Bostock*'s reasoning to Title IX.

2. **Intervenors Do Not Show that the Interpretation in § 106.10 Is Arbitrary or Capricious.**

Intervenors also argue that the Department's explanation for § 106.10 is arbitrary and capricious. *See* Intervenor's Mem. 22–24. Because, as explained above, the interpretation reflected

in § 106.10 is compelled by Title IX's unambiguous terms, Intervenors would not be entitled to relief even if their challenges to the Department's explanation were correct. *See Morgan Stanley Capital Grp. Inc. v. Public Util. Dist. No. 1*, 554 U.S. 527, 545 (2008) ("That [an agency] provided a different rationale for the necessary result is no cause for upsetting its ruling.").

In any event, Intervenors' challenges lack merit. As the Supreme Court has emphasized, judicial review under the arbitrary-and-capricious standard is "deferential" and "simply ensures that the agency has acted within a zone of reasonableness." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Intervenors fail to meet this burden. They argue that § 106.10 is arbitrary and capricious because it does not "explain how *Bostock*'s 'but-for test' can apply to students who don't identify as male or female." Intervenors Mem. 23–24. To the contrary, the Rule explains that discrimination against a person because they are nonbinary is "inextricably bound up with sex." Final Rule, 89 Fed. Reg. at 33,807 (quoting *Bostock*, 590 U.S. at 660–61). The Rule continues, "A person's nonconformity with expectations about the sex of the person to whom they should be attracted or the sex with which they should identify implicate one's sex, and discrimination on that basis is prohibited." *Id.*

C. **The Final Rule's Delineation of Title IX's Limits on Sex Separation and Differentiation Is Properly Derived from the Statutory Text, Not Arbitrary and Capricious, and Constitutional.**

Like the States, Intervenors raise various objections to the Final Rule's provision that, with limited exceptions, a recipient may not carry out different or separate treatment on the basis of sex in a manner that subjects a person to more than de minimis harm, which includes preventing a person from participating in an education program or activity consistent with the person's gender identity. *See* 89 Fed. Reg. at 33,887 (to be codified at 34 C.F.R. § 106.31(a)(2)). Intervenors argue that this provision is inconsistent with Title IX, unreasonable in its articulation of a de minimis harm standard, arbitrary and capricious, and unconstitutional. These arguments fail.

1. **<u>The De Minimis Harm Standard in § 106.31(a)(2) Is Properly Derived from the Statutory Text and Fully Consistent with Supreme Court Precedent.</u>**

The de minimis harm standard to be codified at § 106.31(b)(2) correctly interprets Title IX's prohibition on sex-based "discrimination" and is fully consistent with Supreme Court precedents interpreting that term. Contrary to Intervenors' argument, *see* Intervenors Mem. 14, 15–17, § 106.31(b)(2) is a straightforward application of a central element of Title IX's prohibition of sex-based discrimination—that different or separate treatment based on sex is prohibited, i.e., discriminatory, only when it causes harm.

As set forth in Defendants' opposition to the States' Motion, the provision to be codified at § 106.31(a)(2) explains how recipients may carry out separate or different treatment on the basis of sex in certain contexts without running afoul of the statute's nondiscrimination mandate. *See* Defs.' Opp'n 10–12. In short, the Rule provides, consistent with Supreme Court precedent, that save for limited instances allowed by statute, Title IX prohibits "distinctions or differences in treatment [on the basis of sex] that injure protected individuals." 89 Fed. Reg. at 33,814 (brackets in original) (quoting *Bostock*, 590 U.S. at 681). Thus, except in certain contexts explained below, a recipient must not provide sex-separate facilities or activities in a manner that subjects any person to legally cognizable injury. *Id.*

As Intervenors acknowledge, it is well established that a statute prohibiting discrimination bars differential treatment only when it causes "some injury." Intervenors Mem. 16 (quoting *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 977 (2024)). Intervenors suggest that § 106.31(b)(2) is somehow in tension with the Supreme Court's recent holding in *Muldrow*, a Title VII case in which the Court held that a plaintiff claiming discrimination must demonstrate some harm, but need not establish a "significant" injury or meet "an elevated threshold of harm." 144 S. Ct. at 974. But this is precisely the standard articulated in § 106.31(a)(2)—that separate or different treatment

based on sex constitutes discrimination when it causes some harm (*i.e.*, a harm that is "more than de minimis"). 89 Fed. Reg. at 33,887.

The specification in § 106.31(a)(2) that, except in certain contexts explained below, recipients may not engage in sex separation or differentiation in a manner that prevents a person from participating in an educational program or activity consistent with the person's gender identity, is a straightforward application of that standard. As Intervenors note, the Department has regulations that allow sex-separate "toilet, locker room, and shower facilities." Intervenors Mem. 24 (quoting 34 C.F.R. §106.33). The Department has long recognized that, even without any specific statutory language permitting it, sex "separation in certain circumstances, including in the context of bathrooms or locker rooms, is not presumptively unlawful sex discrimination" because such sex-separate facilities generally impose no more than de minimis harm on students. 89 Fed. Reg. at 33,818. But consistent with federal court decisions and guidelines published by respected medical organizations, the Department explained that sex separation that prevents a person from participating in a program or activity consistent with their gender identity *does* cause more than de minimis harm. 89 Fed. Reg. at 33,818 (citing *Grimm v. Gloucester Cnty Sch. Bd.*, 972 F.3d 586, 617–18 (4th Cir. 2020), *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1045–46, (7th Cir. 2027); *id.* at 33,819 n.90 (citing guidelines published by medical organizations). Because preventing a student from using sex-separate restrooms or participating in single-sex classes consistent with their gender identity causes more than de minimis harm on the basis of sex—*i.e.*, is discrimination on the basis of sex—it is prohibited by the plain text of Title IX. *Id.* at 33,814.

2.     **Intervenors Do Not Show that the Department's Consideration of § 106.31(a)(2) Was Unreasonable, or Arbitrary and Capricious.**

Intervenors also contend that the Department's consideration of § 106.31(a)(2) was

otherwise unreasonable, and arbitrary and capricious. These arguments also lack merit.

*First*, Intervenors do not show that the Department was unreasonable in deciding to address athletics through a separate rulemaking, and in specifying that the de minimis harm rule in § 106.31(a)(2) does not apply to male and female athletic teams that a recipient offers under § 106.41(b). *See* 89 Fed. Reg. at 33,816. As Intervenors acknowledge, Intervenors Mem. 23, the Rule states expressly that it does not address the Department's regulations concerning separate male and female athletic teams, 89 Fed. Reg. at 33,816–17. As discussed *supra* in Part I.A, the Department issued a separate notice of proposed rulemaking regarding the athletics regulations, which will be finalized in a separate rulemaking. *See* Athletics NPRM, 88 Fed. Reg. 22,860. And the Department has made explicit that "[u]ntil that rule is finalized and issued, the current regulations on athletics continue to apply." 89 Fed. Reg. at 33,817.

Intervenors nonetheless insist that the Rule does not mean what it says on this point. Intervenors Mem. 23. Intervenors' argument appears to hinge on the fact that § 106.31(a)(2) specifies that it applies to the "limited circumstances in which Title IX or this part permits different treatment or separation on the basis of sex," except for certain specified statutory and regulatory provisions. *See* Intervenors Mem. 23. Those specified provisions include 34 C.F.R. § 106.41(b), which permits sex-separate athletic teams under some circumstances, but not 34 C.F.R. § 106.41(a), which is the general provision prohibiting discrimination on the basis of sex in athletics. Intervenors argue that the omission of § 106.41(a) shows that the Rule covertly applies to recipients' policies regarding separate male and female athletics teams. *Id*. The problem with this argument is that § 106.41(a) is not one of the "limited circumstances in which Title IX or this part *permits different treatment or separation on the basis of sex*," 89 Fed. Reg. 33,887 (to be codified at § 106.31(a)(2)). Rather, § 106.41(a) is a general nondiscrimination provision, and states

that "[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis." As such, it is simply not implicated by § 106.31(a)(2).

Contrary to Intervenors' suggestion, Intervenors Mem. 23, the Final Rule thoroughly and logically explains why the de minimis harm standard in § 106.31(a)(2) does not apply to the Department's regulation permitting sex-separate athletic teams, and why this is consistent with the Department's longstanding approach to athletics. 89 Fed. Reg. at 33,816–19. *See* Defs.' Opp'n 13. As noted in Defendants' Opposition to the States' motion, *see id.*, the decision to address athletics separately makes sense, given that Congress provided by statute that athletics is a special context, *see* 89 Fed. Reg. at 33,816; Education Amendments of 1974, Section 844, and the Department's athletics regulations have always tracked this statutory determination by recognizing that the unique circumstances of athletics merit a different approach, "governed by an overarching nondiscrimination mandate and obligation to provide equal athletic opportunities for students regardless of sex," 89 Fed. Reg. at 33,816 (citing 34 C.F.R. § 106.41(a), (c)).

*Second*, Intervenors argue in various ways that § 106.31(a)(2) is unreasonable because it treats cisgender individuals differently from individuals whose gender identities do not match their sex assigned at birth, and thereby conflicts with Title IX's prohibition on sex-based discrimination, as stated in § 106.10. Intervenors Mem. 14–15 (arguing that § 106.31(a)(2) "draw[s] distinctions forbidden by Title IX's general non-discrimination text"); *id.* at 16 (arguing that § 106.31(a)(2) is "illogical" because it recognizes that individuals whose gender identities do not match their sex assigned at birth, but not cisgender individuals, may be harmed by sex separation in certain

circumstances); *id.* (asserting that § 106.31(a)(2) "elevat[es] gender identity above Title IX's protections for sex"). This argument is meritless. The Department had no basis to conclude that excluding cisgender students and employees from sex-separate facilities inconsistent with their gender identity causes cognizable harm. 89 Fed. Reg. at 33,820. In contrast, as explained in the Final Rule, sex separation that prevents a person from participating in a program or activity consistent with the person's gender identity does cause such harm. *Id.* at 33,816.

While Intervenors object to the Rule's recognition of this distinction, Intervenors Mem. 16-17, they do not cite any evidence or authority contradicting the Department's determination regarding a general lack of harm to cisgender students and employees as a result of sex separation or differentiation in the limited contexts permitted by the regulations. Contrary to Intervenors' suggestion, *see id.*, the Department's determination regarding harm suffered by transgender individuals due to sex-based different or separate treatment did not rely on defining "sex" as "gender identity," nor did it constitute a decision that "gender identity trumps sex-based protections." Section 106.31(a)(2) does not violate Title IX's prohibition on sex discrimination because the provision merely articulates and applies the well-established principle that separation on the basis of sex is discriminatory—and thus unlawful—only if such separation causes cognizable harm.

*Third*, Intervenors argue that the Department failed to consider how the de minimis harm standard "hurts women and girls," Intervenors Mem. 17. Intervenors' argument appears not to be based on the Final Rule at all, but rather on their speculation about what the Department will say in its forthcoming rulemaking regarding the athletics regulations. *See id.* As explained above, the Rule does not address the Department's athletics regulations. Regardless, Intervenors identify no evidence that the de minimis harm standard in § 106.31(a)(2) "hurts women and girls," *id.*, let

alone show that the Department failed to adequately address such information in the Final Rule.

*Fourth*, despite Intervenors' allegation to the contrary, *see* Intervenors Mem. 23, the Department adequately addressed how § 106.31(a)(2) applies to individuals whose gender identity is nonbinary. The Department explained that "a recipient may, for example, coordinate with the student, and the student's parent or guardian as appropriate, to determine how to best provide the student with safe and nondiscriminatory access to facilities, as required by Title IX." 89 Fed. Reg. at 33,818. Intervenors do not acknowledge this explanation, let alone identify any way in which it is unreasonable.

*Fifth*, Intervenors argue that the de minimis harm provision is inconsistent with 34 C.F.R. § 106.33, which states that "[a] recipient may provide separate toilet, locker room, and shower facilities on the basis of sex." Intervenors Mem. 24. But the Department cogently explained why there is no conflict. The Final Rule states that 34 C.F.R. § 106.33 must be read to comply with the Title IX's nondiscrimination mandate—in short, funding recipients must operate sex-separate facilities addressed in § 106.33 in a manner that does not cause more than de minimis sex-based harm. Thus, as the Department further explained, "[r]ecipients continue to have discretion under these regulations to provide sex-separate facilities consistent with Title IX's nondiscrimination mandate; making Title IX's protections against sex-based harms explicit does not change that." 89 Fed. Reg. at 33,820. Rather, the de minimis harm provision at § 106.31(a)(2) addresses how to effectuate such sex separation, "simply prohibit[ing] a recipient from adopting a policy or engaging in a practice that prevents a person from participating in an education program or activity consistent with the person's gender identity when that person seeks to participate consistent with their gender identity." *Id.*

*Sixth*, contrary to Intervenors' suggestion, Intervenors Mem. 24, the Department addressed

commenters' concern that allowing individuals to use single-sex restrooms consistent with their gender identity poses a threat to privacy. As the Rule states, the Department "strongly agrees that recipients have a legitimate interest in protecting all students' safety and privacy." 89 Fed. Reg. at 33,820. The Department reasonably concluded, however, that there is no "evidence that transgender students pose a safety risk to cisgender students, or that the mere presence of a transgender person in a single-sex space compromises anyone's legitimate privacy interest." *Id*. The Final Rule notes, for example, that federal courts have rejected "unsubstantiated and generalized concerns that transgender persons' access to sex-separate spaces infringes on other students' privacy or safety." *Id.* (citing cases).

*Seventh*, the distinction § 106.31(a)(2) draws between restrooms or locker rooms and other "sex-specific spaces" such as living facilities and military schools is not "implausibl[e]," Intervenors Mem. 16, or "arbitrary and capricious," *id.* at 22. Rather, as set forth in Defendants' Opposition to the State Plaintiffs' Motion, Defs.' Opp'n 12, § 106.31(a)(2) faithfully implements both Title IX's prohibition on different or separate sex-based treatment that causes harm and Title IX's carve-out of certain contexts from its general prohibition on sex discrimination, such as membership practices of certain social fraternities or sororities, 20 U.S.C. § 1681(a)(6); institutions focused on military training, *id.* § 1681(a)(4); and an educational institution's maintenance of "separate living facilities for the different sexes," *id.* § 1686. As Congress did not except restrooms and locker rooms from the general prohibition on sex discrimination, the Department reasonably determined that recipients may engage in sex separation in such contexts consistent with Title IX—but only to the extent that any sex-based harm imposed is de minimis, *i.e.*, not discriminatory. 89 Fed. Reg. at 33,816; *see id.* at 33,821.

In sum, Intervenors do not show that, in its consideration of § 106.31(a)(2), the Department

"relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that r[an] counter to the evidence before the agency, or [was] so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Thus, the Department's consideration of § 106.31(a)(2) was neither unreasonable, nor arbitrary and capricious.

3.  **Intervenors Do Not Show that § 106.31(a)(2) Violates a Constitutional Right to Bodily Privacy.**

Intervenors also fail to show that § 106.31(a)(2) is facially unconstitutional on the ground that it violates their "right to bodily privacy"—specifically, their asserted interest in not sharing restrooms, showers, and locker rooms with transgender students and employees who use facilities consistent with their gender identity. Intervenors Mem. 21. Intervenors identify no case—let alone a Supreme Court decision—that has recognized any such fundamental right. To the contrary, all the constitutional cases on which Intervenors rely involved an asserted right to be free from invasive searches or surveillance by government actors, not a right to prevent other students and individuals from using facilities consistent with their gender identity. *See Brannum v. Overton County School Board*, 516 F.3d 489, 494-96 (6th Cir. 2008) (recognizing a right not to be videotaped in a school locker room by the government); *Kent v. Johnson*, 821 F.2d 1220, 1226 (6th Cir. 1987) (addressing claim that "surveillance by female prison guards of plaintiff's person in various states of undress" violated the Fourth Amendment); *Doe v. Luzerne County*, 660 F.3d 169, 175–76 & n.5 (3d Cir. 2011) (recognizing female deputy sheriff's right not to be videotaped while in a state of undress by another law enforcement officer and noting that "the contours of [this] right . . . appear[ed] to be the same" as those in *Brannum*). And indeed, more than one court has specifically rejected the assertion that there exists a "right to privacy that protects against any

risk of bodily exposure to a transgender student in school facilities." *Parents for Priv. v. Barr*, 949

F.3d 1210, 1225 (9th Cir. 2020) (rejecting claim under the Fourteenth Amendment's Due Process

Clause); *see also Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 531 (3d Cir.

2018) (rejecting claim that students' "constitutional right to privacy is necessarily violated because

they are forced to share bathrooms and locker rooms with transgender students whose gender

identities correspond with the sex-segregated space, but do not do not align with their birth sex").

Because Intervenors have failed to show that § 106.31(a)(2) violates any fundamental right, their

"bodily privacy" claim cannot succeed on the merits.

> **D.** **The Rule's Clarification of the Definition of Sex-Based Harassment Is Not Overbroad or Vague, and it Does Not Restrict or Compel Speech in Violation of the First Amendment.**

Intervenors seem to challenge the Rule's definition of hostile environment sex-based

harassment, and specifically the conclusion that sex stereotyping can constitute sex-based

harassment that creates a hostile environment. *Compare* Intervenors Mem. 19 *with* 89 Fed. Reg.

at 33,515–16. Intervenors further argue that the harassment standard is overbroad and vague, and

so both compels and suppresses speech in violation of the First Amendment. Intervenors Mem. 19.

*Id.* Intervenors make a facial challenge. A plaintiff bringing a facial challenge must "establish that

no set of circumstances exists under which the [Rule] would be valid." *United States v. Salerno*,

481 U.S. 739, 745 (1987). In certain First Amendment contexts, courts "have recognized a second

type of facial challenge, whereby a law may be invalidated as overbroad if a substantial number

of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."

*Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (citation omitted). Intervenors have

not met their burden under either standard.

As Defendants explained in their opposition to the States' motion, the Rule's definition of

hostile environment sex-based harassment is a lawful exercise of the Department's authority. *See*

Defs.' Opp'n 15–18. "By its own terms, the Final Rule "maintain[s] the language from . . . the 2020 amendments that nothing in the Title IX regulations requires a recipient to restrict any rights that would otherwise be protected from government action by the First Amendment." 89 Fed. Reg. at 33,503. The definition in the Final Rule is consistent with "relevant judicial precedent, and . . . with congressional intent and the Department's longstanding interpretation of Title IX and resulting enforcement practice prior to the 2020 amendments." *Id.* at 33,490. In addition, this language "closely tracks longstanding case law defining sexual harassment," *id.* at 33,494 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)), and aligns with the definition used by the EEOC. *Id.* at 33,516. *See* Defs.' Opp'n. 17.

Intervenors' reliance on *Janus* is misplaced. Intervenors Mem. 19–20. *Janus* presented the question of "speech subsidies in support of third parties." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 908 (2018). *Janus* specifically did not apply *Garcetti v. Ceballos,* 547 U.S. 410 (2006) and other public-employee-speech cases because *Janus*, "by contrast, involves a blanket requirement that all employees subsidize speech with which they may not agree." *Janus,* 585 U.S. at 907. "Of course, if the speech in question is part of an employee's official duties, the employer may insist that the employee deliver any lawful message." *Id*. at 908 (citing *Garcetti*, 547 U.S. at 421–22, 425–26).

Neither are intervenors correct to rely on *Kennedy v. Bremerton Sch. Dist*, 597 U.S. 507, 529–30 (2022). *See* Intervenors Mem. 19. The speech at issue was a football coach's post-game prayers. Applying *Garcetti* and other cases governing the speech of government employees, the Supreme Court determined that the coach's prayers were "private speech, not government speech." *Kennedy*, 597 U.S. at 529–30. The Court explained this was for several reasons, including: the speech was not "ordinarily within the scope" of the coach's duties; the coach "did not speak

pursuant to government policy;" and he "was not seeking to convey a government-created message." *Id*. (citing *Lane v. Franks*, 573 U.S. 228, 240 (2014), and contrasting *Garcetti*, 547 U.S. at 421). In *Kennedy*, the Court was not asked—and did not decide—the constitutionality of the hostile-environment standard in the education context. By contrast, the Supreme Court has routinely concluded that schools may constitutionally prohibit harassment when those prohibitions "are directed at speech that materially and substantially disrupts school activities[.]" 89 Fed. Reg. at 33,504 (citing *Tinker v. Des Moines Indep. Sch. Dist.,* 393 U.S. 503, 509 (1969)). Although public employees may speak on matters "of public concern," the government may also limit that speech where "necessary. . . to operate efficiently and effectively." *Garcetti v. Ceballos*, 547 U.S. 410, 419-20 (2006). *Accord Meriwether*, 992 F.3d 492, 508 (6th Cir 2021) (noting a coach may constitutionally be prohibited from "using racial epithets to motivate his players"). Intervenors also err in asserting that the Final Rule is overbroad. Intervenors Mem. 21 (citing *Speech First Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022)). As the Rule explains, the case Intervenors rely on for this point is inapposite. In *Speech First*, as that court described it, the university's policy defined "discriminatory harassment" to prohibit "a wide range of 'verbal, physical, electronic, and other' expression concerning any of (depending on how you count) some 25 or so characteristics." *Speech First*, 32 F.4th at 1125. The panel concluded that this definition "reache[d] not only a student's own speech, but also her conduct 'encouraging,' 'condoning,' or 'failing to intervene' to stop another student's speech." *Id.* "The policy, in short, [was] staggeringly broad," *id.*, and it was not "tailored to harms that have long been covered by hostile environment laws," 89 Fed. Reg. at 33,505 (discussing *Speech First*).

By contrast, the Final Rule reaches no more broadly than necessary. In response to concerns about the Rule's interaction with the First Amendment, the Department "revised the

definition to retain the 2020 amendments' reference to offensiveness," and so the definition "covers only sex-based conduct that is unwelcome, both subjectively and objectively offensive, and so severe or pervasive that it limits" a person's ability to participate in the recipient's education program or activity. 89 Fed. Reg. at 33,505. The Supreme Court has upheld Title VII's anti-harassment provisions that apply a similar standard "without acknowledging any First Amendment concern." *Id.* at 33,505 (citing *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993)). Further, the Final Rule "only prohibit[s] conduct that meets all the elements" set forth in the definition. *Id.* at 33,506. The Rule's "reference to the totality of the circumstances derives from these very specific and required elements and is meant to ensure that no element or relevant factual consideration is ignored." *Id.*

The Rule carefully adheres to longstanding caselaw defining hostile environment sex-based harassment. For these reasons, Intervenors are not likely to succeed on the merits of their argument that the Rule is overbroad or vague.

## II.     Intervenors Have Not Established Irreparable Harm.

Intervenors also fail to establish an imminent and irreparable harm justifying a preliminary injunction against any portion of the Rule. "Irreparable harm is an 'indispensable' requirement for a preliminary injunction, and 'even the strongest showing' on the other factors cannot justify a preliminary injunction if there is no 'imminent and irreparable injury.'" *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (citation omitted).

Intervenors claim that they will suffer irreparable harm to their right to "free speech" and "constitutional right to privacy." Intervenors Mem. 24–25. But this is just a conclusory repetition of Intervenors' meritless constitutional claims, *see supra* Part I.C.3, and does not come close to demonstrating injuries "both certain and immediate, rather than speculative or theoretical." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).

Notably, a substantial portion of the purported harm alleged by A.C. throughout her declaration and the Intervenors' Memorandum pertains to her purported "lost opportunity to participate in. . . athletics." *See* Intervenors Mem. 25 (citation omitted). But, as explained above, these alleged injuries do not flow from the Rule, nor could they because the Rule does not address athletics, *see supra* Part I.A; so, any purported harm stemming from those allegations is misplaced in this lawsuit. Rather, A.C.'s harms are attributable to an injunction in a separate litigation, *see B.P.J. v. W. Va. State Bd. of Educ.*, 98 F.4th 542 (4th Cir. 2024), that cannot be affected by any relief the Court may grant in this suit. The remainder of Intervenors' skeletal irreparable harm argument relies entirely on a handful of highly speculative statements from their declarants. *See, e.g.*, A.C. Decl. ¶ 64, ECF No. 21-5 ("I am hesitant to continue playing in the band because I am uncertain whether I will be forced to share a hotel room or be exposed to B.P.J. on these trips."); Taylor Decl. ¶ 48, ECF No. 21-12 ("Starting [August 1], I will not be as open to sharing my views on gender identity with my colleagues and with students who ask for my opinion because I fear I will be punished for violating the new rules."). Such "speculative [and] theoretical" allegations of harm do not satisfy the irreparable-harm requirement. *Mich. Coal. of Radioactive Material Users,* 945 F.2d at 154. Moreover, even if the hypothetical situations feared by Intervenors' declarants counted as cognizable injuries, Intervenors fail to show that any of such feared injuries are "immediate." *See Fischer v. Thomas*, 78 F.4th 864, 868 (6th Cir. 2023) (holding that the risk of "chill[ed]" speech during a future campaign was not "immediate" because there was no ongoing election nor any indication that one would occur before final judgment). "If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit." *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019).

**III.    The Equities and Public Interest Weigh Against Preliminary Relief.**

The balance of equities and the public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Intervenors rely exclusively on States' arguments regarding these two prongs of the preliminary-injunction inquiry for the proposition that "these factors weigh decisively in Intervenors' favor." Intervenors Mem. 25.

As Defendants explained in their Opposition, the Government has a significant interest in effectuating the statutory directive in Title IX to prevent sex discrimination in education programs and activities. *See* Defs.' Opp'n 23–24. When weighed against the Intervenors' speculative harms, *see supra* Part II, the Government's interest strongly counsels against issuing the requested preliminary relief.

**IV.    Any Relief Afforded by the Court Should Be Limited in Accordance with the Administrative Procedure Act and Equitable Principles.**

As Defendants outlined in their Opposition, any relief afforded must be appropriately limited. *See* Defs.' Opp'n 24–25. To summarize, this Court should not issue injunctions that provide relief to non-parties, or that enjoin more than is "necessary to remedy the harm at issue." *United States v. Miami Univ.*, 294 F.3d 797, 816 (6th Cir. 2002). As such, if this Court grants a preliminary injunction, it should limit that relief to the parties and specific portions of the Rule as to which the Court has found that Intervenors have established both a likelihood of success and the requisite threat of irreparable harm absent relief. *See, e.g. Kentucky v. Biden*, 571 F. Supp. 3d 715, 735 (E.D. Ky. 2021) (holding that "redressability in the present case is properly limited to the parties before the Court"), *aff'd as modified*, 57 F.4th 545 (6th Cir. 2023). Finally, the Final Rule is severable. *See* 89 Fed. Reg. at 33,848 ("[R]emov[ing] any 'doubt that it would have adopted the remaining provisions of the Final Rule' without any of the other provisions, should any of them be deemed unlawful."). Intervenors have challenged only certain provisions of the Rule as

discussed above; the remainder should be permitted to go into effect, as intended, on August 1, 2024. *See* Defs.' Opp'n. 25.

## CONCLUSION

For the foregoing reasons, the Court should deny Intervenors' motion for a § 705 stay and preliminary injunction.

Dated: June 6, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

*/s/ Hannah M. Solomon-Strauss*
ELIZABETH TULIS
REBECCA KOPPLIN
BENJAMIN TAKEMOTO
HANNAH SOLOMON-STRAUSS
PARDIS GHEIBI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: 202-616-8198
Fax: (202) 616-8470
E-mail: Hannah.M.Solomon-Strauss@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2024, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.

*/s/ Hannah M. Solomon-Strauss*