**Exhibit A**

Reply in Support of the States' Motion for a § 705 Stay and Preliminary Injunction

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# COVINGTON DIVISION

| | |
|---|---|
| STATE OF TENNESSEE, COMMONWEALTH OF KENTUCKY, STATE OF OHIO, STATE OF INDIANA, COMMONWEALTH OF VIRGINIA, and STATE OF WEST VIRGINIA, | ) ) ) ) ) ) |
| *Plaintiffs*, | ) ) |
| and | ) ) |
| CHRISTIAN EDUCATORS ASSOCIATION INTERNATIONAL, and A.C., by her next friend and mother, Abigail Cross, | ) ) ) ) ) |
| *Intervenor-Plaintiffs*, | ) ) |
| v. | ) Case No. 2:24-cv-00072-DCR-CJS ) District Judge Danny C. Reeves |
| MIGUEL CARDONA, in his official capacity as Secretary of Education, and UNITED STATES DEPARTMENT OF EDUCATION, | ) Magistrate Judge Candace J. Smith ) ) ) ) |
| *Defendants.* | ) |

## DECLARATION OF SHAUNDRAYA HERSEY

Pursuant to 28 U.S.C. § 1746, I, Shaundraya Hersey, duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this Declaration.

2. My name is Shaundraya Hersey, and I serve as the Assistant General Counsel for Civil Rights for the Tennessee Department of Education ("Department"). I have served in this

1

capacity since August 2022, and prior to that, I served as a staff attorney within the Department working primarily on civil rights matters. The Department's Office for Civil Rights ("TOCR") is comprised of the Assistant General Counsel for Civil Rights, two staff attorneys, and a paralegal. TOCR serves as the civil rights oversight division in the Department's Office of General Counsel and is responsible for ensuring civil rights compliance both within the Department and in educational programs receiving federal funds. Pursuant to 0520-01-21-.03 of the Tennessee State Board of Education's Rules ("SBE Rules"), TOCR's responsibilities include: ensuring LEA and charter school compliance with Title IX, providing Title IX training and technical assistance to LEAs and charter schools, investigating complaints arising under Title IX and filed with TOCR, developing and updating Title IX policies and procedures for Tennessee's State Special Schools[1], investigating Title IX complaints at the State Special Schools, completing an annual Title IX compliance report and implementation plan, and maintaining all Title IX investigation-related records.

3.  The Department provides Title IX trainings to LEAs and charter schools and provides guidance to those entities on the kind of training needed to comply with Title IX. Based on self-reported LEA data, there are more than 140,000 employees at these schools who would require some level of Title IX training under the U.S. Department of Education's recently finalized

---

[1] The State Special Schools are three public schools operated by the state of Tennessee. These schools include Alvin C. York Institute in Jamestown, the Tennessee School for the Blind in Nashville, and the Tennessee Schools for the Deaf which have locations in Jackson, Nashville, and Knoxville. The Department's Office of General Counsel serves as legal counsel for these schools, providing direct legal advice and support.

Title IX rule, 89 Fed. Reg. 33,474, 33,548 (Apr. 29, 2024) (the "Final Rule") (discussing 34 C.F.R. § 106.8(d)). The 2020 regulatory regime required only Title IX personnel at each school—typically a Title IX Coordinator, an investigator, a decision-maker, an appeals officer, and any other individuals involved in facilitating a school's informal resolution process—to receive training. Although the Department will ordinarily provide a general Title IX overview at an LEA's or charter school's request, many of these employees will need additional training on local school district policies pertaining to Title IX compliance. Additionally, because of the significant and increased complexity of Title IX regulations and the Final Rule's breadth, many LEAs or charter schools will need—or will choose—to hire an outside entity that specializes in Title IX regulatory compliance to provide training on the Final Rule's requirements to their teachers, administrators, and other staff.

4. For similar reasons, the Department has often contracted with outside groups to provide LEA trainings. In 2024, for instance, the Department paid an outside contractor to provide a three-hour virtual Title IX training to LEAs covering the requirements for school district training under the 2020 Title IX regulations and areas that were likely to change with the 2024 regulations. That training cost $7,500. The Department paid a different provider $3,792.40 in 2022 for five individuals from the Office of General Counsel to attend an outside Title IX investigator and report drafting training. The Department anticipates that it will need to undertake several other similar trainings and expenditures before the Final Rule's effective date to help LEAs comply with the Final Rule.

5. TOCR staff, including myself, have already attended four trainings on the Final Rule. Each of these lasted several hours. Although these trainings were free, they were offered as "preview" trainings that did not provide the level of detail required to fully understand the Final

3

Rule's requirements. Additional trainings beyond the preview cost between $500 and $800 per person, not including travel and lodging costs for in-person sessions, and although some of these trainings are fairly comprehensive, others charge upwards of $500 for sessions focused on a specific aspect of the Final Rule, such as Title IX Coordinator training. We have also started working on an implementation plan, which includes updating Title IX policies and procedures for the State Special Schools, developing trainings on the Final Rule for LEAs, and updating internal documents governing the Department's handling of Title IX investigations and the guidance the Department offers on Title IX compliance. TOCR estimates we spent at least 36 hours preparing for implementation of the 2020 Title IX regulations. This estimate includes time spent updating Title IX resources (*e.g.*, policies, procedures, and manuals). Based on this previous experience, we estimate preparing for implementation of the 2024 regulations will require a similar amount of time. Additionally, each school year, TOCR dedicates at least another 59 hours to training-related activities for LEAs and State Special Schools. TOCR anticipates a similar amount of time will be dedicated to training activities for the 2024 regulations.

6. Each LEA in the State is currently—or in the absence of a stay of the Final Rule's effective date, will need to—engage in similar activities to update Title IX policies and procedures and train teachers and staff before the August 1, 2024, effective date. The rollout of the 2020 Title IX regulations involved a three-month, summertime compliance window similar to the Final Rule's; many LEAs contacted the Department seeking guidance, resources, technical assistance, and training on implementation. This indicates the compliance burden LEAs will face will be challenging and in some cases particularly difficult depending on the LEA's circumstance. Unlike the Department, which employs four full-time legal staff members, Tennessee school boards are often advised by one attorney—many of whom advise the school board on a part-time basis or in

4

conjunction with duties as a city attorney or other governmental attorney. Many of these attorneys may seek training on the Final Rule by an outside entity before they can effectively advise their clients. Additionally, because LEA policies are set by local school boards at public meetings, each LEA will have to present any new policies required by the Final Rule for approval to the local school board—a process that requires the school board to comply with various State-law notice and public participation requirements. Even if new policies are approved in time, each district will have to schedule trainings of teachers and staff on the new, Final-Rule-compliant policies before the effective date, yet the majority of Tennessee public-school employees are on ten- or eleven-month contracts that end in late spring. If an LEA hosts training before the August 1, 2024, effective date, the LEA may have to require its employees to complete this training outside the terms of their employment contracts.

7. The Department also anticipates that the Final Rule will increase its own costs arising from investigation of Title IX complaints filed against LEAs. Currently, when the Department receives Title IX complaints related to gender-identity-based harassment involving an LEA, the Department does not investigate, and complainants are directed back to their LEAs when they present allegations of bullying. The Final Rule's expansion of sexual harassment to cover gender-identity discrimination and other "sex-based" harassment will likely increase the number of Title IX complaints raising such issues and requiring investigation by more than the Final Rule's estimated ten percent, *see* 89 Fed. Reg. at 33,851. At a minimum, this will require the Department to dedicate resources to investigating such complaints that it does not at present.

8. The resources required to undertake investigation of a Title IX complaint are significant. Investigation comprises a multi-tier process, and two members of TOCR are involved

in every investigation. Pursuant to SBE Rule 0520-01-21-.04, TOCR's Title IX investigation and resolution process includes the following steps:

> Step 1: TOCR receives a complaint alleging discriminatory action.
>
> Step 2: TOCR determines whether it has the authority to investigate the Complaint. If TOCR possesses jurisdiction, TOCR will send letters informing the involved parties of the investigation.
>
> Step 3: The recipient of federal funds who allegedly acted in a discriminatory way will submit a reply to TOCR responding to the Complaint's allegations.
>
> Step 4: TOCR will review information collected from the parties and determine if there was a violation of federal civil rights law. If necessary, TOCR will request additional information from both parties and interview individuals to investigate the alleged discrimination.
>
> Step 5: TOCR will issue an Investigative Summary and Findings report and send copies of this report to both parties.

9. The LEA named in the complaint also has certain responsibilities associated with an investigation, including preparing a response to the allegations raised in the complaint and making available all relevant records, information, documents, personnel, students, and other evidence needed to resolve the investigation. *See* SBE Rule 0520-01-21-.04.

10. TOCR estimates that investigating a typical complaint made against an LEA requires about 22.25 hours of TOCR's time alone, not including hours expended by other participants like school personnel. Even dismissing a typical complaint requires about 2.25 hours of TOCR staff time. Thus, any increase in the number of complaints that TOCR must investigate will require a significant increase in the number of hours TOCR devotes to Title IX investigations and may require transitioning staff and resources from other tasks to ensure investigations are prioritized or even hiring additional team members to keep up with the increased number of complaints.

11. TOCR is also involved in the processing and, if appropriate, investigation of all Title IX reports arising at State Special Schools. The investigation process includes steps required to comply with the 2020 regulations, and TOCR becomes involved before an official Title IX complaint is filed. State Special Schools administrators are required to contact the Department within 24 hours of receiving a Title IX report, and TOCR's Assistant General Counsel and the Assistant General Counsel for Schools then determine if TOCR should investigate or whether a school administrator should investigate under a different policy. The typical Title IX investigation in a State Special Schools case consumes about 33 hours and involves five personnel, including the State Special Schools Administrator and Title IX Coordinator, an investigator and decision-maker from TOCR, and the Department's General Counsel as an appeals officer. Discussions about student supports and discipline can require two additional hours and may involve seven personnel, including those listed above, as well as TOCR's Assistant General Counsel and the Assistant General Counsel for Schools. While implementing the grievance process required by the 2024 regulations may reduce the number of personnel involved in these investigations and their resolution, TOCR anticipates that the number of Title IX investigations at the State Special Schools—and TOCR's and the State Special Schools' attendant costs—will increase significantly as a result of the Final Rule's changes to the definition of sex discrimination and sexual harassment and complaints about such conduct can no longer be resolved under other school grievance processes.

12. I declare under penalty of perjury that the foregoing is true and correct.

_____
Shaundraya Hersey

Dated: ____6/7/2024____, 2024