**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

STATE OF TENNESSEE, *et al.*,

        Plaintiffs,

    v.

MIGUEL CARDONA, in his official capacity
as Secretary of Education, and UNITED
STATES DEPARTMENT OF EDUCATION,

        Defendants.

Case No. 2:24-cv-00072-DCR-CJS
Chief District Judge Danny C. Reeves
Magistrate Judge Candace J. Smith

**DEFENDANTS' MOTION FOR A PARTIAL STAY PENDING APPEAL**

Defendants respectfully request that this Court issue a partial stay, pending appeal, of this Court's June 17, 2024, Memorandum Opinion and Order, ECF No. 100 ("Mem. Op."), which enjoined the Department of Education from enforcing its April 29, 2024, Final Rule in the plaintiff States. The Court enjoined the Rule in full, yet Plaintiffs' and Plaintiff-Intervenors' (collectively, "Plaintiffs'") requests for preliminary relief challenged only a handful of provisions of the Final Rule, all relating to the Rule's application of Title IX's prohibition against sex discrimination to transgender or non-cisgender individuals. Even then, the allegations of harm underpinning Plaintiffs' claims concerned only the application of two discrete provisions—34 C.F.R. § 106.31(a)(2) and the definition of "hostile environment harassment" within 34 C.F.R. § 106.2— that govern particular factual contexts in which recipients may differentiate students based on sex, such as by providing sex-separated bathrooms and using sex-specific pronouns. Importantly, no Plaintiff asserts any harm stemming from the Rule's basic nondiscrimination requirement in 34 C.F.R. § 106.10, which precludes recipients from denying students educational opportunities

1

"simply for being . . . transgender." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 651 (2020). As such, Defendants request that this Court stay the injunction insofar as it extends beyond the following provisions of the 2024 Rule: 34 C.F.R. § 106.31(a)(2), and the hostile environment harassment definition in 34 C.F.R. § 106.2 as applied to discrimination on the basis of gender identity.

## LEGAL STANDARD

In determining whether to grant a stay pending appeal, a court considers (1) likelihood of success on appeal; (2) whether the applicant will suffer irreparable injury; (3) the balance of hardships to other parties interested in the proceeding; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see Ohio State Conf. of NAACP v. Husted*, 769 F.3d 385, 387 (6th Cir. 2014). Each of these factors weighs in favor of partially staying the Court's injunction pending appeal.

## ARGUMENT

### I.   Defendants Have a Strong Likelihood of Success in Establishing that the Injunction Is Overbroad.

The injunction in this case is overbroad, at minimum, because it reaches provisions of the Rule that were not challenged by Plaintiffs and that did not form the basis for any alleged irreparable injury underlying their request for preliminary relief. On appeal, Defendants will show that the Court's injunction cannot be squared with Title IX's plain text and Supreme Court precedent. Defendants recognize that this Court has rejected their arguments. Accordingly, Defendants refrain from reiterating each of their arguments in detail here, and instead incorporate their previously filed memoranda in opposition to the preliminary injunction motions by reference. *See* Defs.' Opp'n to Pls.' Mot. for § 705 Stay & Prelim. Inj., ECF No. 73 ("Defs.' Opp'n"); Defs.' Opp'n to Intervenor-Pls.' Mot. for § 705 Stay & Prelim. Inj., ECF No. 91. But even apart from Defendants' argument on the merits of their defense of all parts of the Rule, they have a strong

2

likelihood of succeeding in establishing at minimum that the injunction this Court entered was overbroad, based on well-established remedial principles and the Rule's express severability provisions.  In this stay motion, Defendants seek only narrower relief, asking that this Court stay the injunction to the extent it sweeps broader than necessary to "redress the plaintiff[s'] particular injur[ies]" asserted here, *Gill v. Whitford*, 585 U.S. 48, 73 (2018)—that is, to the extent it extends beyond the following provisions of the 2024 Rule: (i) 34 C.F.R. § 106.31(a)(2), and (ii) the hostile environment harassment definition in 34 C.F.R. § 106.2, as applied to discrimination on the basis of gender identity.

### A.  The Injunction Is Overbroad Because It Reaches Provisions of the Rule Not Challenged by Plaintiffs.

As Plaintiffs' filings make clear, their claims—and the purported harms underlying those claims—are grounded in objections to the Rule's treatment of gender identity. States' Mot. for a § 705 Stay & Prelim. Inj. 9, ECF No. 19-1 ("States Mot.") (seeking preliminary relief from the Rule's "gender-identity mandate"); Intervenor-Pls.' Mem. in Supp. of Their Mot. for Stay & Prelim. Inj. 3, ECF No. 63-1 ("Intervenors Mot.") (claiming "[t]he new rules impose a gender-identity mandate"). In particular, Plaintiffs' challenges concern applications of three specific provisions of the Rule: the scope of prohibited discrimination in § 106.10; the de minimis harm standard in § 106.31(a)(2); and the definition of hostile environment sex-based harassment in § 106.2. *See* States Mot. 3-4; Intervenors Mot. 4-7. The Court likewise focused on these provisions in enjoining the Rule. Mem. Op. 88-91.

However, the Rule promulgates many amendments to Title IX's existing regulations beyond those challenged by Plaintiffs, most of which have nothing to do with gender identity. These include, for example, provisions regarding the role of Title IX coordinators, 89 Fed. Reg. at 33,885 (34 C.F.R. § 106.8(a)); recipients' notice and record-keeping obligations, *id.* at 33,885-86

3

(34 C.F.R. § 106.8(c), (f)); access to lactation spaces, *id.* at 33,888 (34 C.F.R. § 106.40(b)(3)(v)); a recipient's response to sex discrimination, *id.* at 33,888-91 (34 C.F.R. § 106.44); and grievance procedures for claims of sex discrimination, *id.* at 33,891-95 (34 C.F.R. §§ 106.45, 106.46). Plaintiffs did not challenge any of these provisions in their requests for preliminary injunctive relief, and did not identify any harm, irreparable or otherwise, that they stand to suffer as a result of these aspects of the Rule. Thus, the Court's injunction was overbroad insofar as it reached these other portions of the Rule.

The Court's suggestion that the inclusion of gender identity "permeates the remaining regulations," Mem. Op. 90, cannot be squared with the actual content of these unchallenged provisions of the Rule, which have nothing to do with gender identity. Nor does anything in the Rule suggest that the Department's decision to adopt those provisions turned on its conclusions about gender identity discrimination. As the Court acknowledged, "[e]ach subsection in which [the challenged] provisions appear contains a severability clause," *id.*, which provides that "[i]f any provision of this subpart or its application to any person, act, or practice is held invalid, the remainder of the subpart or the application of its provisions to any person, act, or practice shall not be affected thereby." *Id.* (quoting 34 C.F.R. §§ 106.9, 106.16, 106.48). The severability determination resolves any doubt that the Department would have adopted the Rule's unchallenged provisions addressing grievance procedures, lactation accommodations, and other issues not related to gender identity on their own. *See Am. Fuel & Petrochemical Mfrs. v. EPA*, 3 F.4th 373, 384 (D.C. Cir. 2021) (explaining that severability of regulations "depends on the issuing agency's intent," and whether the "agency would have adopted the severed portion on its own" to "operate[] independently" (citations omitted)), *cert. denied sub nom. Growth Energy v. Am. Fuel & Petrochemical Mfrs.*, 142 S. Ct. 759 (2022).

**B.  Even as to the Challenged Provisions, the Injunction Is Overbroad.**

The Court's injunction also is overbroad even as to the handful of provisions Plaintiffs challenged. Most notably, the injunction is overbroad in extending to § 106.10. Title IX prohibits discrimination "on the basis of sex," 20 U.S.C. § 1681(a), and § 106.10 sets out the scope of that general prohibition, explaining that "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity," 89 Fed. Reg. at 33,886. Plaintiffs allege no harm from the Rule's recognition that prohibited discrimination includes discrimination on the bases of such factors as pregnancy or sexual orientation; indeed, Plaintiffs nowhere suggest that they intend to engage in discrimination against students for being pregnant or gay at all. Plaintiffs thus offer no reason to enjoin these aspects of § 106.10.

Even as to § 106.10's inclusion of gender identity, Plaintiffs do not suggest that an injunction is necessary because they intend to treat transgender students worse for being transgender. They do not, for instance, claim that they will be irreparably harmed if they cannot bar transgender students from participating in the science fair or a theatrical production simply for being transgender, forms of sex discrimination that the Department's Title IX regulations would not expressly bar if § 106.10's definition were to be enjoined. Rather, Plaintiffs object to the Rule's provisions regarding gender identity as applied to sex-separate facilities like bathrooms and the use of pronouns when addressing transgender students. *See* States Mot. 8-10; Intervenors Mot. 3. But § 106.10 is not the cause of Plaintiffs' claimed harms in those respects, which flow from the provisions of § 106.31(a)(2) regarding permissible sex-separation and § 106.2's definition of hostile environment sex-based harassment. *See, e.g.*, Defs.' Opp'n 9-10.

Section 106.10, like *Bostock*, simply recognizes that discrimination on the basis of gender identity is necessarily a form of prohibited sex discrimination, without "purport[ing] to address bathrooms, locker rooms," 590 U.S. at 681, or other contexts in which different treatment or separation on the basis of sex may be permitted under Title IX.  Accordingly, Plaintiffs offer no rationale that could support enjoining § 106.10, which the Department also specifically explained should operate independently if other provisions of the Rule were invalidated. *See* 89 Fed. Reg. at 33,848 (identifying § 106.10 in its severability discussion as an example of a provision "intended to operate independently" of other provisions in the Rule, and in particular noting that it is "distinct" from the Rule's definition of "sex-based harassment . . . and the prevention of participation consistent with gender identity, which are addressed in §§ 106.2 and 106.31(a)").

The injunction is also overbroad insofar as it bars all applications of § 106.2's definition of hostile environment harassment. Plaintiffs object to the application of the 2024 Rule's hostile environment harassment standard as applied to gender identity discrimination. States Mot. 16-17; Intervenors Mot. 16-17; *see also* Mem. Op. 42, 49. But § 106.2's hostile environment standard applies beyond that limited context. Indeed, it protects all students from "[u]nwelcome sex-based conduct." 89 Fed. Reg. at 33,884. Plaintiffs did not identify any way in which they face irreparable harm from § 106.2's applications outside the context of discrimination on the basis of gender identity. Thus, there is no basis for enjoining those applications, which are not an asserted cause of Plaintiffs' claimed injuries.

## II.      The Balance of Harms and the Public Interest Favor a Partial Stay.

The remaining stay factors tilt decisively toward the Department. Every time the federal government "is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012)

(Roberts, C.J., in chambers) (citation omitted). The harm is particularly pronounced here because the Rule effectuates Title IX's twin goals of "avoid[ing] the use of federal resources to support discriminatory practices [and] provid[ing] individual citizens effective protection against those practices." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 704 (1979). No one disputes that preventing discrimination serves a compelling public interest. *See, e.g.*, *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1359 (6th Cir. 1975) ("[T]he eradication of discrimination by race and sex promotes public interests and transcends private interests."). Moreover, the overbroad injunction could prematurely impair the rights of individuals with respect to the Rule's provisions that are entirely unrelated to Plaintiffs' claims by precluding the Department from taking steps to ensure that, *inter alia*, breastfeeding and pumping students have access to lactation spaces or that students are not being punished for being pregnant, gay, or transgender.

By contrast, Plaintiffs suffer no harm from the Department's limited stay request. As discussed above, Plaintiffs plainly suffer no harm from the many provisions of the Rule that they did not challenge. As to the limited provisions Plaintiffs have challenged, the allegations of harm underpinning Plaintiffs' claims concerned only the application of two discrete provisions—34 C.F.R. § 106.31(a)(2) and the definition of hostile environment harassment within 34 C.F.R. § 106.2—governing factual contexts in which recipients may differentiate students based on sex, such as by providing sex-separated bathrooms and using sex-specific pronouns. Accordingly, the harms that formed the basis for the Court's issuance of preliminary relief are not implicated here, and, in any event, do not outweigh the harm to the Department from an overbroad injunction.

## CONCLUSION

The Court should stay the preliminary injunction to the extent it extends beyond the following provisions of the 2024 Rule: 34 C.F.R. § 106.31(a)(2), and the "hostile environment harassment" definition in 34 C.F.R. § 106.2 as applied to gender identity discrimination.

Under Rule 8 of the Federal Rules of Appellate Procedure, a party seeking to stay an injunction pending appeal ordinarily must first seek such relief in the district court. Accordingly, Defendants respectfully request that the Court rule on this motion by 12:00 noon on July 1, 2024, after which Defendants plan to seek relief in the Court of Appeals should the Court fail to grant this motion.

Dated: June 24, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

/s/ *Pardis Gheibi*

ELIZABETH TULIS
REBECCA KOPPLIN
BENJAMIN TAKEMOTO
HANNAH SOLOMON-STRAUSS
PARDIS GHEIBI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-3246
Fax: (202) 616-8470
E-mail: Pardis.Gheibi@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF CONFERENCE

I certify that on June 21, 2024, I conferred via e-mail with counsel for the Plaintiff States and counsel for Plaintiff-Intervenors about this motion. By email on June 21, 2024, Whitney Hermandorfer of the Office of the Tennessee Attorney General informed me that the Plaintiff States "oppose the forthcoming motion for a partial stay of the preliminary injunction." Ms. Hermandorfer further stated that the Plaintiff States "intend to file a response." By email on June 21, 2024, Jonathan Scruggs, counsel for Plaintiff-Intervenors, informed me that Plaintiff-Intervenors also oppose Defendants' motion for a partial stay.

/s/ *Pardis Gheibi*

## CERTIFICATE OF SERVICE

I certify that on June 24, 2024, the above document was filed with the CM/ECF filing system.

/s/ *Pardis Gheibi*