IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| STATE OF TENNESSEE, COMMONWEALTH OF KENTUCKY, STATE OF OHIO, STATE OF INDIANA, COMMONWEALTH OF VIRGINIA, and STATE OF WEST VIRGINIA, <br><br> *Plaintiffs*, <br><br> and <br><br> CHRISTIAN EDUCATORS ASSOCIATION INTERNATIONAL, and A.C., by her next friend and mother, Abigail Cross, <br><br> *Intervenor-Plaintiffs*, <br><br> v. <br><br> MIGUEL CARDONA, in his official capacity as Secretary of Education, and UNITED STATES DEPARTMENT OF EDUCATION, <br><br> *Defendants*. | Case No. 2:24-cv-00072-DCR-CJS <br> District Judge Danny C. Reeves <br> Magistrate Judge Candace J. Smith |

**THE STATES' OPPOSITION TO DEFENDANTS' MOTION
FOR A PARTIAL STAY PENDING APPEAL**

# INTRODUCTION

Defendants pushed forward to promulgate a sweeping Final Rule that prolifically misinterpreted Title IX. This Court called Defendants' legal failings to account in a thorough, 93-page opinion. And it issued preliminary and geographically tailored relief to preserve the decades' long, pre-rule status quo and the rights of the Plaintiff States, their schools, and their citizens pending review.

Now, Defendants seek a "partial stay" of the Court's order granting preliminary relief to the six Plaintiff States—an ask Defendants cast as "narrow[]." Stay Mot. 3. But in reality, Defendants' proposal would preserve the faulty *Bostock*-based rewrite of Title IX that this Court rejected and that would upend Title IX's protections for women. On top of that, partially staying the Court's relief pending review would saddle the States and schools with a confusing and costly compliance scramble to implement a partial rule whose proper reach remains in flux. Live hearing testimony this Court credited confirms as much. This Court sensibly reasoned that the upshot of the States' prevailing at the preliminary phase should be to stave off their imminent compliance harms, not double those harms with duplicative obligations to train hundreds of thousands of school employees both now and later.

The scope of this Court's preliminary relief makes eminent sense in view of the proper reading of Title IX, administrative-law principles, and the equities and facts of this case. Defendants do not carry their "heavy burden" to justify their proposed "intrusion into the ordinary processes of administration and judicial review." *Kentucky v. Biden*, 23 F.4th 585, 593 (6th Cir. 2022) (citation omitted). Their "partial stay" motion should be denied.

# LEGAL STANDARD

Under Federal Rule of Civil Procedure 62, whether to stay an injunction pending appeal lies within this Court's "judicial discretion" and depends "upon the circumstances of the particular case."

1

*Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted) (cited at Stay Mot. 2). This Court assesses the same four factors that govern the preliminary injunction and 5 U.S.C. § 705 inquiry. To obtain relief, Defendants must carry the "heavy burden of demonstrating that a stay is warranted," including by making a "*strong* showing that [they are] likely to succeed on the merits." *Ohio State Conf. of NAACP v. Husted*, 769 F.3d 385, 389 (6th Cir. 2014) (alteration in original) (quoting *Nken*, 556 U.S. at 434) (denying stay) (cited at Stay Mot. 2).

## ARGUMENT

Defendants' stay motion (at 3, 8) asks this Court to permit the Final Rule to take effect August 1, save only for two exceptions. *First*, Defendants do not contest continued injunction of the so-called "de minimis harm" regulation—*i.e.*, the provision specifying that it is gender-identity discrimination to divide intimate spaces by sex rather than gender identity. *See* Stay Mot. 3, 8. *Second*, Defendants likewise accede to the Court's relief against any application of the sexual harassment provision to gender identity. *See id.* None of the stay factors—merits, harms, or equities—favor Defendants' proposed partial stay and the confusing compliance fallout that would result.

**I.     The Scope of the Injunction Reflects the Final Rule's Pervasive Legal Problems.**

Defendants' merits argument centers on their view that this Court can readily cabin defective provisions of the Final Rule and permit the remainder to take effect now. Indeed, Defendants go so far as to insist that the core provision implementing its *Bostock*-based reading that sex discrimination includes gender identity discrimination—34 C.F.R. § 106.10—should stay in place despite this Court's preliminary relief. Defendants' merits arguments do not work.

**A.     Remedial Principles Support Preliminarily Enjoining the Entire Rule.**

Defendants (at 3-4) assert that the vast majority of the Final Rule's provisions have "nothing to do with gender identity." Those unrelated provisions, Defendants assert, should take effect on August 1 by virtue of the Final Rule's severability clauses. This argument has at least three problems.

2

*First*, Defendants offer no authority for the proposition that a court must perform a roving severability analysis through hundreds of discrete regulatory requirements at the preliminary injunction phase. *American Fuel & Petrochemical Manufacturers v. EPA*, 3 F.4th 373 (D.C. Cir. 2021) (cited at Stay Mot. 4), involved severance at final judgment. By contrast, at this preliminary stage, the Court enjoys "wide latitude when crafting the scope of … temporary relief to fit the equities of a case." *Doster v. Kendall*, 54 F.4th 398, 442 (6th Cir. 2022) (citing *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579) (2017)), *vacated on mootness grounds*, 114 S. Ct. 481 (2023) (Mem.); *accord Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 382 (6th Cir. 2023). And "[c]ourts have recognized that this status-quo relief might look broader than the ultimate relief." *Doster*, 54 F.4th at 442; *see also Balow v. Mich. State Univ.*, 24 F.4th 1051, 1061 (6th Cir. 2022). Here, the Court's injunction appropriately reflects the confusing and unduly expensive compliance obligations a partial rule rollout would place on regulated parties. *See infra* p. 8. That dual-track compliance problem persists even accepting that certain provisions could later be severed. Defendants give no good reason why courts must ignore the realities of what compliance entails and embark on a premature severability analysis that determines parties' obligations in a manner that may change over the course of the case.

*Second*, and as this Court explained (Mem. Op. 90), Defendants err by suggesting (at 4) that it is simple to disentangle Defendants' flawed Title IX interpretation from the hundreds of "remaining regulations" and requirements. As for hostile-environment harassment, this Court enjoined the definition as unlawful based on problems, like vagueness, that extend beyond its application to gender-identity discrimination. Mem. Op. 50-56. Nor have Defendants adequately addressed how to go about parsing the prohibition on gender-identity discrimination from other provisions at this stage. In contrast to cases (like *American Fuel*) involving entirely "separate actions" by an agency rule that

3

"operate[] independently from the other," 3 F.4th at 384 (citation omitted), the Final Rule's flawed conception of "sex" discrimination is embedded within a swath of schools' remaining obligations.

Consider just a few of the examples Defendants (at 3-4) say are unrelated to gender-identity issues. Recipients' "notice and record-keeping obligations" require them to keep, for seven years, any records relating to the outcome of investigations for "each complaint of sex discrimination"; recipients also must maintain any notice to a Title IX coordinator of "information about conduct that reasonably may constitute sex discrimination." 34 C.F.R. § 106.8(f) (cited at Stay Mot. 3-4). Each obligation turns on the meaning of "sex discrimination"—the disputed issue. That meaning likewise critically affects provisions about recipients' proper "response to sex discrimination" or "grievance procedures for claims of sex discrimination." Stay Mot. 4 (citing 34 C.F.R. §§ 106.44-46). Asking educational staff to immediately implement these obligations regarding "sex discrimination," without advising them what "sex discrimination" lawfully entails under Title IX, would not result in a regime that "function[s] sensibly." *MD/DC/DE Broads. Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001).

*Third*, Defendants have not made a "strong" showing that any severability exercise, even if required now, would in fact come out their way. *Ohio State Conf. of NAACP*, 769 F.3d at 389 (quoting *Nken*, 556 U.S. at 434). Defendants (at 4) rest exclusively on the Final Rule's brief and boilerplate severability discussion and provisions. But a "severability provision" cannot "solve[] the agency's problem" when a rule's remainder would function in an arbitrary and capricious or ill-explained manner. *Ohio v. EPA*, No. 23A349, 603 U.S. ---, 2024 WL 3187768, at *8 (U.S. June 27, 2024). And here, the Final Rule justifies its significant costs in great part by referencing the benefits it claims from the broad gender-identity mandates. 89 Fed. Reg. at 33,861-62. The Final Rule does not meaningfully "address" how that cost-benefit calculus could work without most of the discrimination provisions in place. *Ohio*, 2024 WL 3187768, at *8. If anything, given the Final Rule's focus on implementing the

Administration's cross-cutting view of what *Bostock* requires, there is "substantial doubt" the Department would have adopted the rule's remaining portions "without the prohibition[]" on gender-identity discrimination. *Mayor of Baltimore v. Azar*, 973 F.3d 258, 292 (4th Cir. 2020) (citation omitted). After all, "effectuat[ing] Title IX's sex discrimination prohibition" is the Final Rule's principal reason for being. 89 Fed. Reg. at 33,476.

### B. The *Bostock* Regulation Is Unlawful and Harms the States.

Defendants (at 5-6) next argue that this Court should permit the *Bostock* provision (34 C.F.R. § 106.10) to take effect as planned. That is so, they continue, because § 106.10 is "not the cause" of the States' alleged harms. Stay Mot. at 5. This makes no sense.

Section 106.10 is the lead provision that implements Defendants' importation of *Bostock* into the Title IX context: It instructs that "discrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." That is the core Final Rule flaw—deeming "discrimination on the basis of gender identity" and other "sex characteristics" as "a form of prohibited sex discrimination," Stay Mot. 6—the States challenged and this Court rejected. *See* Mem. Op. 16-28. Indeed, Defendants elsewhere acknowledge as much: They note that the States' challenge "concern[ed] applications of … the scope of prohibited discrimination *in § 106.10*." Stay Mot. 3 (emphasis added). Relief permitting Defendants' unlawful rewrite of Title IX's "sex" discrimination provision would be no relief at all.

Defendants' response (at 5) that the States do not "intend to engage in discrimination against students" for "simply … being transgender," "pregnant," or "gay" is right but irrelevant given Defendants' settled view about what "discrimination" means. For years, federal officials have advanced the position—across a number of avenues—that Title IX's reference to "sex" discrimination *itself*

means schools must treat students in line with their gender identities rather than sex, including when it comes to use of sex-separated facilities and pronouns. A small sampling[1]:

- **2016 Department of Education Dear Colleague Letter:** Schools must allow transgender students to access restrooms, locker rooms, shower facilities, housing, and athletic teams consistent with their gender identity.

- **2021 Department of Education Fact Sheet:** Discrimination based on "gender identity is a form of sex discrimination prohibited by federal law" and includes preventing "a transgender high school girl" from using "the girls' restroom" or failing to use a transgender student's preferred name or pronouns.

- **2021 DOJ Amicus Brief:** A school accommodation that would allow teachers to refer to students only by last names in order to avoid "refer[ring] to transgender students [consistent] with their gender identity" increased risk of liability under Title IX.

- **2023 DOJ Statement of Interest:** State law prohibiting students from using restrooms and changing facilities consistent with their gender identity violated Title IX.

- **2023 Department of Education Arlington Community Schools (TN) Investigation:** Investigating school district for Title IX violations where student was not permitted to use restroom facilities matching student's gender identity and where school did not use student's new gender-preferred name in official school records.

- **2024 DOJ Amicus Brief:** A state statute requiring athletes to compete on teams corresponding to biological sex violates Title IX's ban on discrimination "on the basis of sex."

This track record leaves no doubt that preserving § 106.10's general gender-identity provision would require the States, their schools, and their citizens to submit to the same gender-identity mandates this Court deemed plainly invalid. Because those mandates "flow" directly from Defendants' distorted

---

[1] *See* U.S. Dep't of Educ., Off. for Civ. Rights, *Dear Colleague Letter on Transgender Students* 3-4 (May 13, 2016), https://perma.cc/G5VG-ZNV9; U.S. Dep't of Justice and U.S. Dep't of Educ., Civ. Rights Div. & Off. for Civ. Rights, *Confronting Anti-LGBTQI+ Harassment in Schools: A Resource for Students and Families (Fact Sheet)* (June 23, 2021), https://perma.cc/F644-8GBC; U.S. Dep't of Justice, Civ. Rights Div., Amicus Brief, *Kluge v. Brownsburg Comty. Sch. Corp.,* Case No. 21-2475, at 31 (7th Cir. Nov. 8, 2021), https://perma.cc/K46S-LLVA; U.S. Dep't of Justice, Statement of Interest, *Roe v. Critchfield*, Case No. 1:23-cv-315, ECF No. 41 at 3 (D. Idaho Aug. 8, 2023); U.S. Dep't of Educ., Off. for Civ. Rights Letter (May 16, 2023), Reply Ex. C, Doc. # 92-3; U.S. Dep't of Justice, Civ. Rights Div., Amicus Brief, *B.P.J. ex rel. Jackson v. West Virginia*, Case Nos. 23-1078, 23-1130, ECF No. 33-1 at 21-29 (4th Cir. Apr. 3, 2024).

view of what discrimination means under Title IX, exclusively enjoining § 106.31(a)(2)'s "permissible sex-separation" regulation and § 106.2's definition of hostile-environment harassment (Stay Mot. 5) would be a half measure easily evaded.

## II. The Scope of the Injunction Appropriately Addresses the States' Irreparable Harm and the Equities.

As this Court recognized, the balance of harms and the equities tilt decisively in the States' favor. Mem. Op. 88. On one hand, the States have established that they would suffer immense irreparable injuries in the absence of preliminary relief, *id.* at 79-88, and "the public interest lies in a correct application" of the law," *id.* at 88 (quoting *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006)). On the other, given that Title IX has been read the States' way "unchanged for approximately 50 years," maintaining the status quo pending the ultimate disposition of this lawsuit—which the States are seeking expeditiously, *see, e.g.*, Doc. # 106 at 1-2—will be of "relatively little harm to others." Mem. Op. 88.

Defendants' stay motion does not discuss the Court's findings that the States established several irreparable injuries, including "extraordinary" compliance costs. *Id.* at 82; *see also id.* at 79-88. Instead, Defendants (at 7) argue that those harms don't support enjoining the entire Final Rule, including § 106.10's directive that sex discrimination includes gender identity discrimination. But as discussed *supra* p. 5, the States challenged—and established harm flowing from—the Department's redefinition of sex discrimination and associated harassment provision, including the *application* of that unlawful definition to bathrooms, locker rooms, and other facilities. *See, e.g.*, Mem. Op. 79-82 (discussing compliance costs related to developing and adopting new policies, training, and increased Title IX complaints resulting, at least in part, from this definition); *id.* at 86-87 (discussing conflicts between the Final Rule and State laws); *see also* Compl. ¶¶ 187-220. And the States would continue to suffer the same harm should this regulation stay on the books. *See supra* p. 6.

Defendants (at 7) are also wrong that enjoining the Final Rule's implementation on a piecemeal basis would not harm the States. The testimony the States adduced at the preliminary injunction hearing was clear: Forcing schools to implement the Final Rule at different times would require "more time and more money spent training" and "could be incredibly confusing to districts." Doc. # 109 at 22:5-7 (testimony of Christy Ballard, General Counsel, Tennessee Department of Education). The challenges would be greater still if it was not "very clear" what parts of the Rule districts would need to "implement[]" and "train[] on." *Id.* at 3-5. Yet Defendants apparently see no problem with requiring States to train (partially) and then re-train (fully) hundreds of thousands of employees on their Title IX obligations—all at the States' unrecoverable expense. Or with asking untold hundreds of school districts to adjust affected policies back and forth following public meetings, Mem. Op. 80—perhaps mid-school year.

Defendants nonetheless fail to account for the obvious and exorbitantly costly compliance problems their partial stay would create. Those considerations are reason enough to reject the partial-stay motion on the equities. *Cf. Ohio State Conf. of NAACP*, 769 F.3d at 389-90 (declining to issue a stay when doing so would "add to the confusion" among affected parties and potentially put regulated officials in a "position of trying to communicate" multiple, conflicting instructions over the course of the case). Defendants point to no authority indicating that a court abuses its "wide latitude" to craft preliminary relief by maintaining the pre-rule status quo to preserve a regulated party's rights, *Doster*, 54 F.4th at 442—let alone when a rule's unlawful requirements are intertwined with the rest of the rule and when the party's harm rests in part on extensive compliance obligations that will increase in number, expense, and complexity if the rule takes effect in pieces.

## CONCLUSION

This Court should deny Defendants' motion for a partial stay of the injunction.

8

<div style="display: flex;">

<div>

Dated: June 28, 2024

**RUSSELL COLEMAN**
  Attorney General

*/s/ Justin D. Clark*
JUSTIN D. CLARK
  Civil Chief
VICTOR B. MADDOX
  Counsel for Special Litigation
LINDSEY R. KEISER
  Assistant Attorney General
**Kentucky Office of the Attorney General**
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
victor.maddox@ky.gov
justind.clark@ky.gov
lindsey.keiser@ky.gov

*Counsel for the Commonwealth of Kentucky*


**THEODORE E. ROKITA**
  Attorney General

*/s/ James A. Barta*
JAMES A. BARTA*
  Solicitor General
CORRINE L. YOUNGS*
  Policy Director and Legislative Counsel
JOSHUA DAVID*
  Deputy Attorney General - Policy
**Indiana Attorney General's Office**
IGCS – 5th Floor
302 W. Washington St.
Indianapolis, IN 46204
(317) 232-0709

</div>

<div>

Respectfully Submitted,

**JONATHAN SKRMETTI**
  Attorney General and Reporter

*/s/ Whitney D. Hermandorfer*
J. MATTHEW RICE*
  Solicitor General
WHITNEY D. HERMANDORFER*
  Director of Strategic Litigation
STEVEN J. GRIFFIN*
  Senior Counsel for Strategic Litigation &
Assistant Solicitor General
VIRGINIA N. ADAMSON*
  Counsel for Strategic Litigation &
Assistant Solicitor General
BRIAN DANIEL MOUNCE*
  Counsel for Strategic Litigation &
Assistant Solicitor General
**Office of the Tennessee Attorney General**
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-3491
matt.rice@ag.tn.gov
whitney.hermandorfer@ag.tn.gov
steven.griffin@ag.tn.gov
jenna.adamson@ag.tn.gov
brian.mounce@ag.tn.gov

*Counsel for the State of Tennessee*


**DAVE YOST**
  Attorney General

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER*
  Solicitor General
MATHURA SRIDHARAN*
  Deputy Solicitor General
**Office of the Ohio Attorney General**
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
(614) 466-8980
thomas.gaiser@ohioago.gov
mathura.sridharan@ohioago.gov

*Counsel for the State of Ohio*

</div>
</div>

9

james.barta@atg.in.gov
corrine.youngs@atg.in.gov
joshua.david@atg.in.gov

*Counsel for the State of Indiana*

| | |
|---|---|
| **JASON S. MIYARES**<br>  Attorney General | **PATRICK MORRISEY**<br>  Attorney General |
| */s/ Kevin M. Gallagher*<br>KEVIN M. GALLAGHER*<br>  Principal Deputy Solicitor General<br>BRENDAN T. CHESTNUT*<br>  Deputy Solicitor General<br>**Virginia Attorney General's Office**<br>202 North 9th Street<br>Richmond, Virginia 23219<br>(804) 786-2071<br>kgallagher@oag.state.va.us<br>bchestnut@oag.state.va.us<br><br>*Counsel for the Commonwealth of Virginia* | */s/ Michael R. Williams*<br>MICHAEL R. WILLIAMS*<br>  Solicitor General<br>**Office of the West Virginia Attorney General**<br>State Capitol, Bldg. 1, Room E-26<br>1900 Kanawha Blvd. E.<br>Charleston, West Virginia 25305<br>304-558-2021<br>michael.r.williams@wvago.gov<br><br>*Counsel for the State of West Virginia* |

*\*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I certify that on June 28, 2024, the above document was filed with the CM/ECF filing system, which provided copies of the foregoing to all counsel of record.

*/s/ Whitney D. Hermandorfer*
WHITNEY D. HERMANDORFER