UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| **State of Tennessee**; **Commonwealth of Kentucky**; **State of Ohio**; **State of Indiana**; **Commonwealth of Virginia**; and **State of West Virginia**, <br><br>*Plaintiffs,* <br><br>and <br><br>**Christian Educators Association International**; **A.C.**, by her next friend and mother, Abigail Cross, <br><br>*Intervenor-Plaintiffs,* <br><br>v. <br><br>**Miguel Cardona**, in his official capacity as Secretary of Education; and **United States Department of Education**, <br><br>*Defendants.* | Case No. 2:24-cv-00072-DCR-CJS <br><br> District Court Judge Danny C. Reeves <br> Magistrate Judge Candace J. Smith |

**INTERVENOR-PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL STAY PENDING APPEAL**

# INTRODUCTION

Rather than try to vindicate the Rule's de-minimis-harm provision and new "sex-based harassment" standard, Defendants ask this Court to stay its injunction against all other parts of the Rule. But this Court got it right the first time. It should keep its entire injunction in place to ensure clarity and avoid confusion that would harm Intervenors and countless others across the Plaintiff States.

As this Court correctly concluded, *see* Memorandum Opinion and Order, ECF No. 100 at 88 ("Mem. Op."), the Rule's new definition of "sex-based discrimination" in § 106.10 is unlawful and harmful even apart from the Rule's de-minimis-harm provision for gender identity. And Intervenors object to the Rule's new harassment regime for reasons beyond gender identity. The Rule jettisons the proper *Davis* standard on any topic, and it is unlawful on other topics. Meanwhile, the Rule goes into effect on August 1, 2024, and the requested stay would require schools to comply with and train their teachers and students on the Rule quickly and partially. That would sow confusion and waste resources. It is better and less burdensome to let schools update their policies and practices and re-train their staff just once, if at all, when this litigation ends.

Setting aside the burden from piecemeal compliance, this Court should deny the requested stay because the challenged provisions are the heart of the Rule. Severing them would leave an incoherent collection of stray regulations. Again, compelling immediate and piecemeal compliance by August 1 would cause uncertainty and waste resources—the very harms that justified the injunction initially. And even if some provisions could be severed, Defendants forfeited that argument. They failed to brief it earlier. Even now, Defendants fail to show severability. They cannot explain how the Rule can stand on its own minus the enjoined provisions. The Court should deny Defendants' Motion for Partial Stay.

1

## LEGAL STANDARD

A stay pending appeal depends on the same factors considered for a preliminary injunction, but in reverse: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). In this posture, the movant's burden is to "demonstrate … that there is a likelihood of reversal." *Id.*

## ARGUMENT

Just as all factors favored granting a preliminary injunction, *see* Mem. Op. 88–92, all factors counsel against staying that injunction. The Court has already issued the least burdensome form of relief that could remedy Intervenor-Plaintiffs' injuries. And because the challenged provisions are central to the Final Rule, the Rule is not functionally operative without them. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987). Severing various provisions would require the Court to impermissibly assume a rulemaking role. Even then, Defendants forfeited any argument for severability by failing to timely brief it.

## I. Requiring partial compliance by August 1 would itself cause irreparable harm.

Schools must comply with the Rule's many new provisions by August 1, 2024. The Court's order (ECF No. 100 at 92) properly delays that compliance date entirely, meaning schools can avoid wholesale changes to their policies and practices until the conclusion of this litigation, sparing teachers and students the confusion and headache of trying to internalize and comply with shifting policies and requirements. Defendants would have them make massive changes not only once, but at least twice—this summer, and again whenever this litigation ends.

2

And Defendants never explain how schools can comply with § 106.10 if it goes into effect. Specifically, how can schools prevent discrimination based on gender identity under § 106.10 *and* prevent discrimination based on sex in circumstances where they cannot do both. Putting teachers to the impossible task of enforcing such contradictory requirements will mire them in regulatory concerns and impede their ability to engage their students. The least burdensome approach is to delay the Rule's effective date in its entirety—and enjoin its enforcement entirely—until litigation ends.

## II. Defendants have not shown severability—at least at this preliminary stage.

As the Court recognized, "the impermissible definition of 'discrimination on the basis of sex' in 34 C.F.R. § 106.10 permeates" the entire Rule. Mem. Op. 90. Defendants object that Plaintiffs and Intervenors did not individually challenge every Rule provision. But this upends severability analysis. The relevant inquiry is whether the provisions not individually challenged are severable. Here, Defendants have not made the necessary showing.

### A. The Final Rule operates as a whole, so the challenged provisions cannot be severed.

Defendants argue that the Rule should not be enjoined in its entirety because Plaintiffs did not challenge every individual provision. That ignores 5 U.S.C. § 705, which directs the Court to delay "the effective date," and this Rule has but one effective date. And in any event, severability is not determined by what was challenged; rather, severability considers whether the removal of the unlawful provisions will "impair the function of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988). The severability analysis for administrative rules closely tracks that of statutes. *Id.* (applying *Alaska Airlines*' severability analysis in the regulatory context). While the presence of a severability clause, like

3

the one in the Rule, is informative, "the ultimate determination of severability will rarely turn on the presence or absence of such a clause." *United States v. Jackson*, 390 U.S. 570, 585 n.27 (1968).

Here, the challenged provisions are so central to the Final Rule that it cannot fully operate without them. The challenged portions go to the redefinition of "sex discrimination" in 34 C.F.R. § 106.10, the novel de-minimis-harm standard in 34 C.F.R. § 106.31(a)(2), and the definition of hostile environment harassment in 34 C.F.R. § 106.2. These provisions—particularly the redefinition of sex discrimination—inform and pervade the remainder of the Rule. Because these provisions are foundational, the Rule cannot function coherently in their absence. That overcomes the severability presumption. *See Alaska Airlines*, 480 U.S. at 686.

## B. Severance would require the Court to engage in inappropriate rulemaking.

Courts should not seek to sever when doing so would "entail quintessentially" executive work. *Cf. Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 329 (2006). Requiring courts to craft such judicial remedies "would inflict enormous costs on both courts and litigants … whenever a single application of a law might be valid." *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 625 (2016), *as revised* (June 27, 2016), *abrogated by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). Granting a partial stay would require this Court to go through the Rule with a fine-tooth comb in search of any portion that could potentially operate independently of the challenged provisions. Such an in-depth analysis essentially conscripts the Court into executive rulemaking, which falls well outside of the proper judicial role. *See* Mem. Op. 90.

4

      **C.    Even Defendants' examples rely on the challenged provisions, underscoring that severance would be inappropriate.**

Defendants cite various parts of the Rule to argue for severability, but even these examples depend upon the challenged portions. Defendants point (ECF No. 104 at 3–4) to the "role of Title IX Coordinators" at 34 C.F.R. § 106.8(a), but these coordinators are tasked with "ensur[ing] the recipient's consistent compliance with its responsibilities under Title IX and this part." Take away the challenged provisions and the Coordinators' responsibilities to ensure compliance with "this part" become unclear. Indeed, if Defendants had their wish and § 106.10's definition of sex-based harassment took effect, Title IX Coordinators would be left to wonder whether it is gender identity, sex, or something else that takes precedence when it comes to the many sex-based distinctions recognized by Title IX and its longstanding regulations.

Similarly, the regulations on lactation spaces at 34 C.F.R. § 106.40(b)(3)(v) require "actions … to promptly and effectively prevent sex discrimination and ensure equal access." If the de-minimis-harm provision (§ 106.31(a)(2)) is cut out—and Defendants do not ask for a stay as to that provision—the result is unclear. For example, if § 106.10 were allowed to go into effect, would schools have to allow males access to these private spaces, just as the Rule requires for restrooms, showers, and locker rooms? Because it's unclear how the new "gender identity" and "sex stereotypes" provisions coexist with existing law, women may be put in harm's way just to avoid accusations of discrimination.

Defendants' also point to the sections on recipients' notice and record-keeping obligations, 34 C.F.R. § 106.8(c), (f); a recipient's response to sex discrimination, *id.* at § 106.44; and grievance procedures for claims of sex discrimination, *id.* at §§ 106.45, 106.46. But executing these provisions turns on the contested definition of sex discrimination and the de-minimis-harm provision.

5

Moreover, these new requirements on teachers and staff exacerbate the First Amendment harm caused by the new and broader definitions of sex discrimination and sex-based harassment. And if § 106.10 were allowed to take effect, as Defendants request (at 5–6), each of these provisions would impose uncertain duties for addressing allegations of discrimination.

### III. Defendants forfeited their severance argument.

Even if some Rule provisions were severable, Defendants forfeited that argument. They didn't brief it timely or meaningfully. *Am. Meat Inst. v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984). To preserve an argument, a party must do more than cursorily mention it. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (cleaned up); *see also Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017) ("[I]t is not for the court to search the record and construct arguments. Parties must do that for themselves."). While Defendants reference "severability" in the last two sentences of their preliminary-injunction opposition (ECF No. 91 at 28), this meager mention does not preserve the argument. Defendants failed to brief the issue or put forth any meaningful "effort at developed argumentation." *McPherson*, 125 F.3d at 995. Instead, they now invite the Court to do the rulemaking for them. The Court must decline this invitation.

### CONCLUSION

The Court properly enjoined the Final Rule in its entirety because it cannot stand without the two core provisions for which Defendants do not even seek a stay—much less without any of the challenged provisions. And Defendants forfeited any severability argument by failing to timely present it to the Court. Intervenors respectfully request that the Motion for Partial Stay Pending Appeal be denied.

6

Respectfully submitted this 28th day of June, 2024.

|  |  |
|---|---|
| Edward L. Metzger III<br>Kentucky Bar No. 94138<br>OMEGA LAW PLLC<br>P.O. Box 559<br>Union, KY 41091<br>(859) 898-2140<br>Lee@nkylaw.net | */s/ Natalie D. Thompson*<br>Jonathan A. Scruggs\*<br>Arizona Bar No. 030505<br>Henry W. Frampton, IV\*<br>South Carolina Bar No. 75314<br>**Alliance Defending Freedom**<br>15100 N. 90th Street<br>Scottsdale, Arizona 85260<br>(480) 444-0020<br>(480) 444-0028 Fax<br>jscruggs@ADFlegal.org<br>hframpton@ADFlegal.org<br><br>Rachel A. Rouleau\*<br>Virginia Bar No. 97783<br>**Alliance Defending Freedom**<br>44180 Riverside Parkway<br>Lansdowne, Virginia 20176<br>(571) 707-2119<br>(571) 707-4790 Fax<br>rrouleau@ADFlegal.org<br><br>Natalie D. Thompson\*\*<br>TX Bar No. 24088529<br>**Alliance Defending Freedom**<br>440 First Street NW, Suite 600<br>Washington, DC 20001<br>(202) 393-8690<br>(202) 347-3622 Fax<br>nthompson@ADFlegal.org |

*Counsel for Intervenor-Plaintiffs*

\* *Admitted pro hac vice*

\*\* *Admitted pro hac vice; practice supervised by one or more D.C. Bar members while D.C. Bar application is pending.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2024, a copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system. I further certify that the foregoing document was served using the CM/ECF system on all counsel of record.

*/s/ Natalie D. Thompson*
Natalie D. Thompson
TX Bar No. 24088529
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax
nthompson@ADFlegal.org
