# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# COVINGTON DIVISION

| | |
|---|---|
| **State of Tennessee**; **Commonwealth of Kentucky**; **State of Ohio**; **State of Indiana**; **Commonwealth of Virginia**; and **State of West Virginia**, <br><br> *Plaintiffs,* <br><br> *and* <br><br> **Christian Educators Association International**; **A.C.**, by her next friend and mother, Abigail Cross, <br><br> *Intervenor-Plaintiffs,* <br><br> v. <br><br> **Miguel Cardona**, in his official capacity as Secretary of Education; and **United States Department of Education**, <br><br> *Defendants.* | **Case No.** 2:24-cv-00072-DCR-CJS <br><br> District Court Judge Danny C. Reeves <br> Magistrate Judge Candace J. Smith |

**DECLARATION OF TE'ANDRA PARKER**

1

**Intervenor-Pls. MSJ 076**

I, Te'Andra Parker, under penalty of perjury, declare as follows:

1. I am a resident of Vine Grove, Kentucky, in Marshall County, and have personal knowledge of the information below.

2. I am a Christian, a public-school assistant principal, and a member of the Christian Educator's Association Internation. I have been a member of Christian Educators for the last two years.

3. I joined Christian Educators because I wanted to protect my First Amendment rights. I value being a member of an organization whose mission and beliefs align with my own. Christian Educators represent me and my values well.

4. My faith impacts how I do my job within my school. I always say that I am a Christian first. Everything I do in my job is guided by that view. I treat all my children well, with dignity and respect. It does not matter to me if students disagree with my beliefs. I love and cherish every student I encounter at my job. I want my students to remember that Ms. Parker loved them.

5. I was hired by North Hardin High School in Radcliff, Kentucky, last year as an assistant principal. This will be my second year as part of the administration. North Hardin has approximately 1,600 students.

6. I was previously a social studies teacher at North Middle School in Radcliff, Kentucky for eight years.

7. Before each school year begins, our school will hold a Title IX training for all the teachers and administration at the school. Our administration makes it clear that the school employees must abide by Title IX.

8. Employees at North Hardin are expected to report any Title IX violations to the school. School administrators make it clear that they expect all teachers and employees to comply with Title IX.

9. Our school does not have a policy about how to refer to students who identify as the opposite sex or who ask to be referred to by pronouns that do not

Intervenor-Pls. MSJ 077

align with their sex. As part of the school administration, other administrators and I have discussed the trend of students wanting to be referred to by other names or pronouns that do not align with their sex. The administration has said that it will not promote or encourage teachers to use these different names or pronouns. Our administration does not require school personnel to use a student's preferred name or pronoun that does not align with their sex.

10. Each teacher is allowed to refer to their students how they prefer.

11. At North Middle School, where I was a middle school social studies teacher, several students asked me to use pronouns and names that did not align with their sex. I declined to use these names and instead referred to the students by using last names only, and I attempted never to use pronouns.

12. At an open house at the beginning of the school year, one student's sister told me that the student used a different name and pronoun that did not align with the student's sex. I told the sister that I would be using the last names of all the students.

13. Later in the year, another student wrote me a note asking me to use a different pronoun and name. Again, I told this student I would only use the last names of students in my classes.

14. My old school did not have a policy about using pronouns, and teachers could refer to their students according to their individual beliefs.

15. As an assistant principal at my current school, I have extensive interactions with the students.

16. My role is assistant principal of the ninth-grade class. I supervise the ninth-grade teachers and oversee their operations. I pop into various classes throughout the day and throughout the semester to see how the teachers are using the curriculum, communicating with their students, and running each class.

Intervenor-Pls. MSJ 078

17. I also discipline the ninth-grade students. If there are any behavior or absence issues, the students will see me. I also deal with investigations into different situations with ninth-grade students. Throughout the year, students can find themselves in different disciplinary situations. Whether it is a student who skips class, talks back to a teacher, bullies other students, gets into physical altercations, or even sexually assaults or harasses other students, I am involved in the investigation process with these students.

18. I also have hallway duty and lunch duty. I try to make myself available to the students in the school.

19. There are multiple kids in the ninth-grade class and throughout the whole school who identify as a gender that does not align with their sex. Many different students use different names or pronouns that do not match their sex.

20. Over the last year, I have interacted with students who use names and pronouns that do not align with their sex. In those situations, I have continued to use the students' last names and avoided using any pronouns.

21. If the Title IX rule changes are allowed to go into effect in Kentucky, and at our school., I would be very concerned with future situations with students. I interact with students daily and routinely in different situations, mainly outside of the classroom. I could easily see a situation where one of the students would ask me to use a different name or pronoun to refer to them.

22. I am also involved in student disciplinary investigations, where I need to know the student's birth name and sex. However, it is difficult to ask these questions without violating the proposed Title IX rule changes. I would have to ask a student what their birth name is, what sex they were born as, and what nicknames they use with their friends.

23. I understand that this type of speech could be seen as harassment, or the student could claim that these questions cause harm.

4

Intervenor-Pls. MSJ 079

24. If a student insists that I use a pronoun that does not align with the student's biological sex, I will not be able to use that pronoun.

25. I also regularly discuss these issues with my colleagues. I have spoken with colleagues about the unfair nature of men who identify as women being permitted to play on women's sports teams. We have talked about these issues and how the Title IX rule change could impact our profession.

26. We have these conversations in the staff areas, such as the breakroom, or in faculty offices in the administration buildings.

27. We have also discussed how it would be dangerous for a male to use the girls' restroom or locker room and vice versa.

28. I want to continue having conversations about these relatively controversial issues. But I fear that if the Title IX rule changes were permitted to go into effect, I would not be able to speak according to my beliefs.

29. At my job, I usually use the single-use staff restrooms. But I will occasionally use the students' restrooms if the staff restrooms are in use. The girls' restrooms have multiple stalls for many girls to use at the same time. I would feel uncomfortable if a male student who identifies as a female would use the restroom at the same time as me.

30. I would also feel very uncomfortable if a male staff member who identified as a female would use the girls' restroom at the same time as me. I only want to use the restrooms with other women and girls.

31. This coming year, I am traveling with the staff to Europe for a work trip. I will be sharing a hotel room with one other female employee from North Hardin. I would feel incredibly uncomfortable if I were forced to share a hotel room with a male who identifies as a female.

32. I also want to continue to express my beliefs about gender and sexuality if the topic comes up while I am on my Europe trip.

Intervenor-Pls. MSJ 080

33. I also have traveled with the school on day trips to other states. I have traveled with our high school seniors to King's Island amusement park in Ohio, and Holiday World in Indiana.

34. I will occasionally post my thoughts about different topics on social media. For example, in July, Christian Educators held its yearly summit where they support and train teachers. After the summit, I posted on my Facebook page that I was looking forward to the upcoming school year and that I feel more prepared to be a missionary in my school because I have the support of Christian Educators and others who share my beliefs.

35. I interact with other people's content on Facebook, and I worry that if the Title IX changes go into effect, I could be punished for posting something that could offend someone else on Facebook. I also worry that "liking" other people's posts if they are relatively controversial could be an issue under the Title IX rule changes, as someone could see that I "liked" a post that someone disagreed with.

36. I am worried about how my career and my livelihood could be challenged if the Title IX rule changes are permitted to go into effect. I will not speak in a way that violates my beliefs.

37. If the Title IX rule is allowed to go into effect, I would be much more hesitant to express my views at school and I may even have to cut back on expressing my views on the topic of gender identity.

Intervenor-Pls. MSJ 081

## DECLARATION UNDER PENALTY OF PERJURY

I, Te'Andra Parker, a citizen of the United States and a resident of the State of Kentucky, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 25 day of July, 2024 at Vine Grove Kentucky.

*[signature]*

Te'Andra Parker

Intervenor-Pls. MSJ 082