# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| **State of Tennessee**; **Commonwealth of Kentucky**; **State of Ohio**; **State of Indiana**; **Commonwealth of Virginia**; and **State of West Virginia**, <br><br>*Plaintiffs,*<br><br>and<br><br>**Christian Educators Association International**; **A.C.**, by her next friend and mother, Abigail Cross,<br><br>*Intervenor-Plaintiffs,*<br><br>v.<br><br>**Miguel Cardona**, in his official capacity as Secretary of Education; and **United States Department of Education**,<br><br>*Defendants.* | **Case No.** 2:24-cv-00072-DCR-CJS<br><br>District Court Judge Danny C. Reeves<br>Magistrate Judge Candace J. Smith |

**SUPPLEMENTAL DECLARATION OF DAVID SCHMUS, EXECUTIVE DIRECTOR OF CHRISTIAN EDUCATORS ASSOCIATION INTERNATIONAL**

1

I, David Schmus, under penalty of perjury, declare as follows:

1. I am over the age of 18, of sound mind, and otherwise competent to sign this declaration. I have personal knowledge of the information below.

2. As I noted in my prior declaration submitted in this case, I am the Executive Director of Christian Educators and I have active and general supervision over the association.

3. Christian Educators is an educational association that primarily serves members who teach and support public schools. The mission of our organization is to support, connect, and protect Christians serving in public education.

4. Christian Educators has members in all fifty states, with approximately 15,000 members, and approximately 8,000 of those members are paying members whose dues fund the ministry. The majority of these paying members are professionals who are W-2 employees of an educational institution. Christian Educators has professional members in all fifty states.

5. There are 19 professional members in Alaska, and 18 of them are members employed at public schools.

6. There are 345 professional members in Alabama, and 308 of them are members employed at public schools.

7. There are 20 professional members in Arkansas, and 18 of them are members employed at public schools.

8. There are 62 professional members in Arizona, and 48 of them are members employed at public schools.

9. There are 887 professional members in California, and 866 of them are members employed at public schools.

10. There are 120 professional members in Colorado, and 112 of them are members employed at public schools.

11.     There are 71 professional members in Connecticut, and 68 of them are members employed at public schools.

12.     There are 19 professional members in Delaware, and 17 of them are members employed at public schools.

13.     There are 127 professional members in Florida, and 115 of them are members employed at public schools.

14.     There are 67 professional members in Georgia, and 57 of them are members employed at public schools.

15.     There is 1 professional member in Hawaii, and that member is employed at a public school.

16.     There are 76 professional members in Iowa, and 69 of them are members employed at public schools.

17.     There are 35 professional members in Idaho, and 35 of them are members employed at public schools.

18.     There are 125 professional members in Illinois, and 121 of them are members employed at public schools.

19.     There are 123 professional members in Indiana, and 120 of them are members employed at public schools.

20.     There are 171 professional members in Kansas, and 164 of them are members employed at public schools.

21.     There are 450 professional members in Kentucky, and 440 of them are members employed at public schools.

22.     There are 18 professional members in Louisiana, and 17 of them are members employed at public schools.

23.     There are 11 professional members in Massachusetts, and 11 of them are members employed at public schools.

24. There are 55 professional members in Maryland, and 52 of them are members employed at public schools.

25. There are 15 professional members in Maine, and 14 of them are members employed at public schools.

26. There are 124 professional members in Michigan, and 122 of them are members employed at public schools.

27. There are 415 professional members in Minnesota, and 412 of them are members employed at public schools.

28. There are 114 professional members in Missouri, and 108 of them are members employed at public schools.

29. There are 32 professional members in Mississippi, and 25 of them are members employed at public schools.

30. There are 21 professional members in Montana, and 20 of them are members employed at public schools.

31. There are 56 professional members in North Carolina, and 53 of them are members employed at public schools.

32. There are 73 professional members in North Dakota, and 73 of them are members employed at public schools.

33. There are 280 professional members in Nebraska, and 274 of them are members employed at public schools.

34. There are 14 professional members in New Hampshire, and 14 of them are members employed at public schools.

35. There are 41 professional members in New Jersey, and 38 of them are members employed at public schools.

36. There are 26 professional members in New Mexico, and 26 of them are members employed at public schools.

37. There are 53 professional members in Nevada, and 53 of them are members employed at public schools.

38. There are 31 professional members in New York, and 29 of them are members employed at public schools.

39. There are 308 professional members in Ohio, and 298 of them are members employed at public schools.

40. There are 52 professional members in Oklahoma, and 51 of them are members employed at public schools.

41. There are 85 professional members in Oregon, and 83 of them are members employed at public schools.

42. There are 387 professional members in Pennsylvania, and 380 of them are members employed at public schools.

43. There are 2 professional members in Rhode Island, and 2 of them are members employed at public schools.

44. There are 23 professional members in South Carolina, and 17 of them are members employed at public schools.

45. There are 30 professional members in South Dakota, and 29 of them are members employed at public schools.

46. There are 501 professional members in Tennessee, and 484 of them are members employed at public schools.

47. There are 142 professional members in Texas, and 132 of them are members employed at public schools.

48. There are 5 professional members in Utah, and 5 of them are members employed at public schools.

49. There are 190 professional members in Virginia, and 166 of them are members employed at public schools.

50. There are 7 professional members in Vermont, and 6 of them are members employed at public schools.

51. There are 130 professional members in Washington, and 116 of them are members employed at public schools.

52. There are 48 professional members in Wisconsin, and 46 of them are members employed at public schools.

53. There are 59 professional members in West Virginia, and 57 of them are members employed at public schools.

54. There are 19 professional members in Wyoming, and 18 of them are members employed at public schools.

55. Christian Educators has over 6,000 professional members located in all fifty states.

56. We provide many services to our members, including hosting events and webinars to keep members up to date on their rights and how they can live out their faith in their professions.

57. My description of Christian Educators' membership is based on actions I see and that I am personally involved in. At our events and activities, I observe our members' actions and statements, our members' stated motivations, our members' intent to observe Christian Educators' positions in their educational settings, and our members' activities and plans.

58. In my experience, our members joined Christian Educators because they share our positions. We cannot accept a new member to Christian Educators unless the prospective member adheres to our faith.

59. I know that each of our identified members in this litigation are members in good standing with Christian Educators.

60. Christian Educators seeks relief from the Title IX rule on behalf of itself as well as its current and future members. Seeking such relief is part of

6

Christian Educators' mission to advocate and protect members in the educational workplace, in accordance with Christian Educators' positions.

61. Christian Educators joined this suit to ensure that the organization can focus on its primary mission of supporting and encouraging Christian teachers—instead of diverting its attention and limited resources in response to Defendants' unlawful changes to the Title IX rule.

62. Christian Educators members reach out to the organization regularly with various questions about their legal rights and different circumstances occurring in their schools. In response to the Defendants' actions, Christian Educators will need to divert its focus from supporting teachers to educating the members on how the Title IX changes could impact members across the country.

63. Thankfully, the court has granted an injunction for Christian Educator members in the Sixth Circuit. But Christian Educators members in states not protected under an injunction could face these Title IX rule changes in their schools.

64. The Title IX rule causes Christian Educators to face increased insurance utilization and thus risk increased insurance costs from members facing adverse employment actions caused by the rule. Our members generally (and our named members in particular) intend to use Christian Educators' resources and insurance coverage if they face an investigation or adverse employment action related to the rule. Our members have often used these resources when faced with similar investigations and actions in the past.

65. Every time a member contacts us with a possible issue at their school, our staff attorney will work with the member to find a local attorney to represent the member who will take payment from our insurance coverage. Often, this process can be very tedious, especially if the member does not work near a major

metropolitan area. It is common for us to struggle to find representation for our more remote members.

66. If our members' schools implement the new Title IX rule changes and our members are forced to comply, we could be faced with situations where we would have to devote significant additional staff hours to finding attorneys for our members. Or we may be forced to discontinue the service of finding attorneys for our members and simply leave them on their own to find an attorney to be paid by Christian Educators' policy. This would result in reputational harm and lower our membership retention and growth.

67. The Title IX rule changes could increase the number of issues at their schools, increasing the need for us to find attorneys for our members in remote areas.

68. When the number of insurance claims rise, our insurance carriers raise our premiums or potentially seek to remove the job action benefit from our coverage because the dollar amount of claims is typically low, but the administrative costs are high. If our teachers are forced to comply with the Title IX rule changes and file insurance claims, we could see a substantial increase in insurance claims.

69. Increased insurance claims would also strain our ability to serve our members at a high level and could conceivably damage our reputation, as we would have to ramp up our services to meet the need.

70. And increasing insurance claims would also mean we would be forced to ramp up our staff to process member service cases, provide consultation through our educational and legal consultants, start the claims processes when a job action ensues, find attorneys, and track the entire process. We would have to meet all these needs while also not experiencing increased revenue through our membership growth, and it would put a severe financial strain upon our small,

8

non-profit organization with a budget under $2 million and a paid staff of 20 people.

Case: 2:24-cv-00072-DCR-CJS   Doc #: 136-3   Filed: 09/04/24   Page: 10 of 11 - Page ID#: 5259

## DECLARATION UNDER PENALTY OF PERJURY

I, David Schmus, a citizen of the United States and a resident of the State of California, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this __3__ day of September, 2024 at __Placentia__, California.

_/s/ David Schmus_
David Schmus