# EXHIBIT 6

```
                    IN THE UNITED STATES DISTRICT COURT

                   FOR THE NORTHERN DISTRICT OF TEXAS

                          FORT WORTH DIVISION

CARROLL INDEPENDENT        )
SCHOOL DISTRICT,           )
                           ) CASE NO. 4:24-CV-00461-O
     Plaintiff,            )
                           ) FORT WORTH, TEXAS
VS.                        )
                           ) JULY 8, 2024
UNITED STATES DEPARTMENT   )
OF EDUCATION; MIGUEL       )
CARDONA, IN HIS OFFICIAL   )
CAPACITY AS SECRETARY OF   )
THE UNITED STATES          )
DEPARTMENT OF EDUCATION;   )
CATHERINE E. LHAMON, IN    )
HER OFFICIAL CAPACITY AS   )
ASSISTANT SECRETARY FOR    )
CIVIL RIGHTS AT THE UNITED )
STATES DEPARTMENT OF       )
EDUCATION; UNITED STATES   )
DEPARTMENT OF JUSTICE;     )
MERRICK B. GARLAND, IN HIS )
OFFICIAL CAPACITY AS       )
ATTORNEY GENERAL OF THE    )
UNITED STATES; AND KRISTEN )
CLARKE, IN HER OFFICIAL    )
CAPACITY AS ASSISTANT      )
ATTORNEY GENERAL FOR THE   )
CIVIL RIGHTS DIVISION OF   )
THE UNITED STATES          )
DEPARTMENT OF JUSTICE,     )
                           )
     Defendants.           )


                              9:00 A.M.
                           VOLUME 1 OF 1
                   TRANSCRIPT OF MOTIONS HEARING
                BEFORE THE HONORABLE REED C. O'CONNOR
                 UNITED STATES DISTRICT COURT JUDGE
```

Zoie Williams, RMR, RDR, FCRR
United States District Court
(817)850-6630

```
 1   A P P E A R A N C E S:

 2   FOR THE PLAINTIFF:  MS. ALLISON ALLMAN
                         MR. TIMOTHY DAVIS
 3                       JACKSON WALKER, LLP
                         777 Main Street, Suite 2100
 4                       Fort Worth, Texas 76102
                         Telephone:  817.334.7200
 5
                         MR. MATHEW HOFFMANN
 6                       ALLIANCE DEFENDING FREEDOM
                         44180 Riverside Parkway
 7                       Lansdowne, Virginia 20176
                         Telephone:  571.707.4708
 8
                         MS. NATALIE DEYO THOMPSON
 9                       ALLIANCE DEFENDING FREEDOM
                         440 First Street NW, Suite 600
10                       Washington, D.C.  20001
                         Telephone:  202.393.8690
11

12   FOR THE DEFENDANTS: MS. PARDIS GHEIBI
                         United States Department of Justice
13                       Civil Division, Federal Programs Branch
                         1100 L Street NW, Room 12406
14                       Washington, D.C. 20005
                         Telephone:  202.305.3246
15

16

17

18

19

20

21

22

23

24

25
```

```
 1

 2   COURT REPORTER:      ZOIE M. WILLIAMS, RMR, RDR, FCRR
                          United States District Court Reporter
 3                        501 W. 10th Street
                          Fort Worth, Texas  76102
 4                        zwilliams.rmr@gmail.com
                          817.850.6630
 5

 6

 7

 8        The above styled and numbered cause was reported by

 9   computerized stenography and produced by computer.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2  Arguments –

3  By Ms. Thompson.......................................06

4  By Mr. Hoffmann.......................................13

5  By Ms. Gheibi.........................................20

6  Discussion with the Court.............................43

7  Reporter's Certificate...............................116

8  Word Index...........................................117

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  to the parent, but schools can if they want to.
2          THE COURT: Now, let me ask you this. Let's say
3  that you have an elementary school-aged boy who is
4  uncomfortable using the urinals in the boys' bathroom. And
5  so, and uncomfortable using the stalls in the boys'
6  bathroom.
7          And so, that boy would prefer to use a bathroom
8  where everyone uses a stall with a door, and that is the
9  elementary school girls' bathroom.
10         Could Southlake prevent -- and he's stigmatized
11 because he wants to use a stall, and a bunch of bullies in
12 there stigmatize him, he's uncomfortable, he's disturbed by
13 it, and so, he wants to use the biological girls' bathroom.
14         Could Southlake prevent him from doing that?
15         MS. GHEIBI: The short answer is yes.
16         I think what's key here is that the Department of
17 Education looked at the sort of, this concern which
18 plaintiffs also raised, is cisgender students are also being
19 excluded from using the bathroom, yes.
20         THE COURT: Cisgender students? You use cisgender
21 students --
22         MS. GHEIBI: Cisgender, yes.
23         THE COURT: -- and you use biological sex; are
24 those the same things?
25         MS. GHEIBI: Well, a cisgender student is somebody

1  who identifies -- whose gender identity is the same as their
2  biological identity.
3          So a biological boy can be a cisgender boy, if he
4  also identifies as a boy, but a biological boy could also be
5  a trans girl, if the biological boy identifies as a trans
6  girl.  So cisgender is not the same as biological.
7          THE COURT:  Okay.
8          MS. GHEIBI:  So the Department of Education looked
9  at the evidence that the cisgender students are also being
10 excluded on the basis of sex, just as your hypothetical
11 points out, but it said on the whole, there is no harm to
12 them.
13         This sort of hypothetical of a boy who doesn't
14 want to use the girls' -- sorry, the boys' urinal, and would
15 rather use the bathroom with the girls, just has no basis in
16 reality.
17         There aren't students who feel that way.  That
18 concern wasn't really raised.  So there's no harm, which
19 means that's why the exclusion.  The exclusion is still on
20 the basis of sex.  You're correct.
21         The exclusion is on the basis of sex, because had
22 that biological boy been born a biological girl, he would be
23 allowed to use the girls' restroom.  So there is exclusion,
24 but it's not discrimination because there's no harm.
25         THE COURT:  How do you determine there's no harm

1   if he's deeply disturbed and stigmatized in the same manner
2   that a trans person would be disturbed and stigmatized?
3            How do you distinguish between the harm?
4            MS. GHEIBI:  Well, I think the Department of
5   Education looked at the evidence.  Looked at, you know, the
6   concerns people were raising.  And that just wasn't present.
7   That there weren't cisgender students who were claiming that
8   they're deeply disturbed and stigmatized by being forced to
9   use the restroom of their biological sex.  It's just a
10  hypothetical; it's not real.
11           THE COURT:  Okay.  So it's not real.
12           You're not saying that it doesn't exist?  You just
13  don't know.  There's no evidence that it does?
14           MS. GHEIBI:  Well, the Department of Education
15  looked at the evidence that was presented to it.
16           THE COURT:  Right.
17           MS. GHEIBI:  It found that evidence didn't support
18  the conclusion that cisgender students face the harm.
19           Could there be a student somewhere out there who
20  feels that way?  Perhaps.
21           THE COURT:  Yeah.  And if there is that person and
22  that person did suffer harm, would Southlake's policy
23  violate Title IX?
24           MS. GHEIBI:  No, it wouldn't.
25           Again, I want to emphasize that rules and

1  regulations are not going to capture every single person in
2  every single instance.  That's the nature of rules and
3  regulations.
4          The question is really, you know, again, goes to
5  the question of, like, what is a threshold and which
6  regulation is appropriate?
7          To the extent that student exists, they may very
8  well exist, but the Department of Education is not going to
9  promulgate rules that are going to sort of capture those one
10 or two outliers.
11         Again, the Department of Education looked at the
12 evidence, and it promulgated the rule based on the evidence.
13         THE COURT:  Right.  And so, what you're telling me
14 is that, and what you just said is, that the Department
15 would believe that that is discrimination on the basis of
16 sex?
17         And if that person was harmed by it, similar to a
18 trans person, you would not conclude that Southlake, Carroll
19 ISD, violated Title IX, correct?
20         MS. GHEIBI:  I want to make one point clear.
21         THE COURT:  Let me just ask you.  Hold on a
22 second.  Let's just say that that student exists, and that
23 student is harmed --
24         MS. GHEIBI:  Yeah.
25         THE COURT:  -- and started seeing a counselor

1 because of it.  He reads about this, he reads this

2 transcript here today, and says, well that's me; I am

3 harmed, and their policy discriminates against me on the

4 basis of sex, according to the government, and they file a

5 claim.

6           The Department of Education would not take action

7 against Carroll ISD?

8           MS. GHEIBI:  No.

9           THE COURT:  Okay.

10          MS. GHEIBI:  And let me clarify that the reason

11 for that is because it wouldn't be discrimination under

12 106.31(a)(2).  106.31(a)(2) provides that, if a student is

13 being denied access, that the sex-based exclusion amounts to

14 being denied access on the basis -- because they're sort of

15 denied access for a facility or program that doesn't align

16 with their gender identity, that's not what this student is

17 facing.

18          THE COURT:  Right.

19          MS. GHEIBI:  So it wouldn't be discrimination

20 under Title IX.

21          THE COURT:  Why?  Why wouldn't it be

22 discrimination?

23          Other people of the same biology as this student

24 are allowed to go into the bathroom that has only stalls or

25 doors on it, why wouldn't it be discrimination?

```
 1                 He's being treated worse, isn't he?
 2                 MS. GHEIBI:  Like I said, the rule and regulation
 3   attempts to promulgate --
 4                 THE COURT:  No, I understand.  You say it's not
 5   discrimination.  I'm just trying to understand why it is not
 6   discrimination, in your view, or in the Department's view?
 7                 MS. GHEIBI:  Because it doesn't fall within the
 8   scope of the regulation.  Again --
 9                 THE COURT:  Is it discrimination though?
10                 Is he being treated worse?
11                 MS. GHEIBI:  No.
12                 THE COURT:  He's not?  Why?
13                 MS. GHEIBI:  It wouldn't be discrimination under
14   Title IX.
15                 THE COURT:  Right.  Would it be discrimination on
16   the basis of sex?
17                 MS. GHEIBI:  It would be exclusion on the basis
18   of -- I mean, it would be -- the student would be excluded
19   on the basis of sex, but it wouldn't amount to
20   discrimination on the basis of sex.
21                 Because again, Title IX -- and I think this goes
22   back to the point, the regulation rules, as is the case with
23   statutes, are not going to capture every instance.
24                 THE COURT:  Well, but Title IX, the statute Title
25   IX, uses the word "exclusion."  To be excluded from.
```

| | |
|---|---|
| 1 | So why wouldn't this be a Title IX violation? |
| 2 | MS. GHEIBI: Because the -- |
| 3 | THE COURT: On the basis of sex, this student is |
| 4 | being excluded from using the facilities of that person's |
| 5 | choice. |
| 6 | MS. GHEIBI: That's because of regulation 106.33. |
| 7 | That's the regulation that the Department of Education said |
| 8 | you can have sex-separate bathrooms. |
| 9 | So, I mean, that's a sort of recognition by both |
| 10 | the government and Congress, because it enacted exclusion, |
| 11 | that there will be instances where there are sex-separate -- |
| 12 | sex-separate facilities and sex-based exclusions that are |
| 13 | not going to fall under Title IX. |
| 14 | So this student, the Southlake, or the school's, |
| 15 | or Carroll ISD's conduct here, would be protected by 106.33, |
| 16 | because it's excluding the student because of sex, and the |
| 17 | exclusion is not based on gender identity. |
| 18 | So 106.31(a)(2) wouldn't kick in, if I'm |
| 19 | explaining that correctly. |
| 20 | THE COURT: Okay. |
| 21 | MS. GHEIBI: So it would have to be based on |
| 22 | gender identity for the provision to kick in.  The fact that |
| 23 | this is just comfort-level based, it doesn't actually |
| 24 | trigger 106.31(a)(2).  It would just fall within the scope |
| 25 | of 106.33.  So the school's conduct would be protected by |

1   that provision.
2             THE COURT: Let me ask you this. What do you
3   believe the difference is between conduct associated with
4   sex and status -- sex status?
5             Homosexuality, transgenderism? Help me understand
6   the difference between those two.
7             MS. GHEIBI: Do you mind clarifying that question
8   for me?
9             THE COURT: Yeah. So Bostock basically says,
10  we're not making sexual orientation a protected class,
11  transgender a protected class, but if you wear certain
12  clothes that are not traditionally aligned with how we view
13  people of a certain sex looking, or otherwise engage in acts
14  that are different from that, then it's based on sex.
15            And so, what is the difference then between sexual
16  orientation, transgender, what I'm calling status, maybe
17  that's the wrong word, I don't know all of these
18  definitions?
19            What's the difference between that and this sort
20  of conduct-based viewpoint?
21            MS. GHEIBI: Right. So I think that the
22  regulation here sort of, as you said, much like Bostock,
23  it's not creating a category. It's not saying we are
24  creating all these protections for transgender students or
25  students that are gay or lesbian.

REPORTER'S CERTIFICATE

I, ZOIE WILLIAMS, RMR, RDR, FCRR, certify that the foregoing is a true and correct transcript from the record of proceedings in the foregoing entitled matter to the best of my ability to hear.

Further, due to the COVID-19 pandemic, some participants are wearing masks, and/or appeared via videoconferencing, so proceedings were transcribed to the best of my ability.

I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.

Signed this 11th day of July, 2024.


                         ___/s/ Zoie Williams_____
                         Zoie Williams, RMR, RDR, FCRR
                            Official Court Reporter
                          Northern District of Texas
                             Fort Worth Division

Business Address:    501 W. 10th Street
                     Fort Worth, Texas 76102
                     zwilliams.rmr@gmail.com
                     817.850.6630