UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| STATE OF TENNESSEE, et al., | ) |
| Plaintiffs, | ) Civil Action No. 2: 24-072-DCR |
| V. | ) |
| MIGUEL CARDONA, in his Official Capacity as Secretary of Education, et al., | ) **MEMORANDUM OPINION** <br> ) **AND ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

As discussed in prior opinions of this Court, this case concerns the United States Department of Education's attempt to bypass the legislative process and completely transform Title IX of the Education Amendments of 1972 through sweeping new regulations. On June 17, 2024, this Court granted the plaintiff-States and Intervenor plaintiffs' motions for a preliminary injunction and stay, which prevented the challenged Final Rule from going into effect with respect to the plaintiffs as planned on August 1, 2024. Now, the Court considers the plaintiffs' and the Department's competing motions for summary judgment.

Because the Final Rule and its corresponding regulations exceed the Department's authority under Title IX, violate the Constitution, and are the result of arbitrary and capricious agency action, the plaintiffs' motions for summary judgment will be granted and the Department's motion for summary judgment will be denied.

**I.**

The Court recited the factual background of this matter at length in its June 17, 2024, and July 10, 2024, Memorandum Opinions; therefore, only the basic facts will be repeated

here.  [*See* Record Nos. 100, 117.]  On April 29, 2024, the United States Department of Education (the "Department") issued a Final Rule entitled "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance" (the "Final Rule").  89 Fed. Reg. 33474 (Apr. 29, 2024).  The Final Rule would bring significant changes to the regulations that implement Title IX, three of which are specifically challenged in this action.  To begin, for the first time in 50 years, the Final Rule "clarified" that for purposes of Title IX, "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity."  34 C.F.R. § 106.10; *see* 89 Fed. Reg. 33476.  The Department indicates that this list is not exhaustive and that Title IX covers "any discrimination that depends in part on consideration of a person's sex."  89 Fed. Reg. 33803.

The next provision being challenged by the plaintiffs is commonly referred to as the "de minimis harm" standard, which provides as follows:

> In the limited circumstances in which Title IX . . . permits different treatment or separation on the basis of sex, a recipient must not carry out such different treatment or separation in a manner that discriminates on the basis of sex by subjecting a person to more than de minimis harm, except as permitted by 20 U.S.C. § 1681(a)(1) through (9) and the corresponding regulations §§ 106.12 through 106.15, 20 U.S.C. § 1686 and its corresponding regulation § 106.32(b)(1), or § 106.41(b). Adopting a policy or engaging in a practice that prevents a person from participating in an education program or activity consistent with the person's gender identity subjects a person to more than de minimis harm on the basis of sex.

34 C.F.R. § 106.31(a)(2); 89 Fed. Reg. 33814-26.  While the regulations do not include a specific definition of "gender identity," the Department understands the term to "describe an individual's *sense* of their gender, which may or may not be different from their sex assigned at birth."  89 Fed. Reg. 33809.

Finally, prior to August 1, 2024, "sexual harassment" under Title IX was defined in relevant part as "conduct on the basis of sex" that is "[u]nwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity." 34 C.F.R. 106.30 (effective Aug. 14, 2020). The Final Rule redefines this term as "sex-based harassment," which means "sexual harassment and other harassment on the basis of sex, including on the bases described in [34 C.F.R.] § 106.10 . . . ." 34 C.F.R. 106.2. It includes "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is *subjectively* and objectively offensive and is so severe or pervasive that it *limits* or denies a person's ability to participate in or benefit from the recipient's education program or activity. . . ." 34 C.F.R. § 106.2 (emphasis added); 89 Fed. Reg. 33498. Under the new standard, harassment is not limited to speech occuring on school campuses and may capture conduct that occurs on social media or "other platforms." 89 Fed. Reg. 33535.

The plaintiffs include the States of Tennessee, Ohio, Indiana, and West Virginia, and the Commonwealths of Kentucky and Virginia. Christian Educators Association International ("Christian Educators") and A.C., a 15-year-old female student athlete, also were permitted to intervene as plaintiffs. These parties (collectively, the "plaintiffs") argue that the Final Rule and its corresponding regulations are invalid because the Department exceeded its lawful authority in implementing them and because they are otherwise contrary to law. The Department and Secretary Cardona (collectively, the "Department") maintain that the Final Rule and its corresponding regulations constitute a valid exercise of rulemaking authority and do not violate any provision of law.

II.

The Administrative Procedure Act ("APA") directs a reviewing court to hold unlawful and set aside an agency action when it finds such action to be "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right . . . ." 5 U.S.C. § 706(2). When a district court rules on a motion for summary judgment under the APA, "it must apply the proper standard of review outlined in the APA, and its review must be based on the administrative record." *Norton v. Beasley*, 564 F. Supp. 3d 547, 569 (E.D. Ky. 2021), *vacated on other grounds*, No. 21-6053, 2022 WL 17348385 (6th Cir. Dec. 1, 2022). *See also FreshWater Accountability Project v. United States Army Corps of Engineers*, 629 F. Supp. 3d 761, 770 (S.D. Ohio 2022) (observing that "[s]ummary judgment is the appropriate 'mechanism' for adjudicating claims arising under the [Administrative Procedure Act].'").

III.

A. The Department exceeded its statutory authority.

Congress gave the Department authority to issue rules, regulations, and orders to effectuate Title IX's prohibition on sex discrimination consistent with the objectives of the statute. *See* 20 U.S.C. § 1682. However, the Department exceeded that authority in issuing the Final Rule and the text of Title IX shows why. Put simply, there is *nothing* in the text or statutory design of Title IX to suggest that discrimination "on the basis of sex" means anything other than it has since Title IX's inception—that recipients of federal funds under Title IX may not treat a person worse than another similarly-situated individual on the basis of the person's

sex, i.e., male or female. *See Texas v. Cardona*, –F.Supp.3d–, 2024 WL 3658767, at *31 (N.D. Tex. Aug. 5, 2024).

The Department's support for the Final Rule lies primarily in the Supreme Court's decision in *Bostock v. Clayton County, Ga.*, 590 U.S. 644 (2020), which involved claims of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. There, the Supreme Court determined that an employer's decision to terminate an employee because of her transgender status violated Title VII's prohibition on sex discrimination. The Court observed that Title VII prohibits employers from taking certain actions "because of" sex and "[s]o long as the plaintiff's sex was one but-for cause of [the employer's] decision, that is enough to trigger the law." *Id.* at 656. Reasoning that "transgender status [is] inextricably bound up with sex," the Court concluded, "to discriminate on these grounds requires an employer to intentionally treat the individual differently because of their sex" and therefore, violates Title VII. *Id.* at 656, 660-61.

The Department reads *Bostock* far too broadly by importing its holding into the context of Title IX. The Court in *Bostock* expressly limited its holding to Title VII and, even in that restricted context "[did] not purport to address bathrooms, locker rooms, or anything else of the kind." 590 U.S. at 681. And as this Court previously observed, the Sixth Circuit has repeatedly acknowledged the limited nature of *Bostock*'s holding. *See Tennessee v. Cardona*, –F.3d–, 2024 WL 3019146, at *11-12 (E.D. Ky. June 17, 2024) (collecting cases). More recently, the Sixth Circuit stated:

> As many jurists have explained, Title VII's definition of discrimination, together with the employment specific defenses that come with it, do not neatly map onto other areas of discrimination. Title VII's definition of sex discrimination under *Bostock* simply does not mean the same thing for other

> anti-discrimination mandates, whether under the Equal Protection Clause, Title VI, or Title IX.
>
> As to the relationship between Title VII and Title IX, the statutes use materially different language: discrimination "because of" sex in Title VII and discrimination "on the basis of sex" in Title IX. In addition, the two statutes serve different goals and have distinct defenses. For these reasons, it does not follow that principles announced in the Title VII context automatically apply in the Title IX context. No less importantly, Congress enacted Title IX as an exercise of its Spending Clause Power, which means that Congress must speak with a clear voice before it imposes new mandates on the states. The same is not true of Title VII. All of this explains why we have been skeptical of attempts to export Title VII's expansive meaning of sex discrimination to other settings.

*Cardona*, 2024 WL 3453880, at *2-3 (internal citations and quotation marks omitted).

The plain language of a statute "is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear." *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) ("Statutory construction must begin with language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."). *Bostock* looked not just to the meaning of "sex" which the parties agree is the "status as either male or female as determined by reproductive biology." *See* 590 U.S. at 655 (alteration omitted). *See also* 89 Fed. Reg. at 33802 (defining "sex" as the "physiological" or "biological distinctions between male and female"). But the decision in *Bostock* turned on "what Title VII says about it." *Id.* at 656. This Court makes the same inquiry here. And when Title IX is viewed in its entirety, it is abundantly clear that discrimination on the basis of sex means discrimination on the basis of being a male or female. *See Keen v Helson*, 930 F.3d 799, 803 (6th Cir. 2019) (observing that "the structure and wording of other parts of a statute can help clarify the meaning of an isolated term").

As this Court and others have explained, expanding the meaning of "on the basis of sex" to include "gender identity" turns Title IX on its head. While Title IX sought to level the playing field between men and women, it is rife with exceptions that allow males and females to be separated based on the enduring physical differences between the sexes. *See e.g.,* 20 U.S.C. §§ 1681(a)(3)-(9), 1686. For example, institutions that receive federal funds may permit separation of the sexes for purposes of living facilities, boys and girls conferences, and social sororities and fraternities. *See* 20 U.S.C. §§ 1681(a)(6)-(a)(7), 1686. And these are just a few examples. The Department compares these provisions to Title VII's exceptions that permit "discrimination" when "religion, sex, or national origin is a bona fide occupational qualification." [*See* Record No. 134, p. 21-22 (citing 42 U.S.C. § 2000e-2(e)(1)).] However, this argument is hardly convincing, considering the fundamental difference between Title VII and Title IX. Title VII prohibits discrimination in the workplace generally and, thus, the exceptions for bona fide occupational qualifications do not have the potential to swallow the entire statute. Conversely, the *entire point* of Title IX is to prevent discrimination based on sex—throwing gender identity into the mix eviscerates the statute and renders it largely meaningless.

The Final Rule would leave 20 U.S.C. §§ 1681(a)(1)-(9) and 1686 intact while adding regulations that mandate access to showers, locker rooms, and sexual education classes, among others, consistent with an individual's gender identity. *See* 34 C.F.R. §§ 106.31, 106.33. But this approach simply does not make sense. Confirming the arbitrary nature of these new regulations, the Department has offered no rational explanation for the stark inconsistencies that will result if the Final Rule is allowed to go forward. *See, e.g.,* 89 Fed. Reg. 33, 818 (simply stating that the statute "created exceptions" to the general prohibition on discrimination in 20 U.S.C. §

1681(a)(1)-(9), 20 U.S.C. § 1686, and that "the unique circumstances of athletics merit[s] a different approach to addressing sex discrimination").

The Court exercises its independent judgment in interpreting Title IX and determining whether the Department acted within its statutory authority. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024). And while the Department maintains that the challenged provisions are "not contrary" to Title IX, this Court is tasked with "identify[ing] the statute's 'single, best meaning' rather than a merely permissible one." *See Tennessee v. Becerra*, 117 F.4th 348, 371 (6th Cir. 2024) (J. Kethledge, dissenting, in part, and concurring, in part) (quoting *Loper Bright Enters.*, 604 U.S. at 400). Accordingly, 34 C.F.R. § 106.10, which impermissibly redefines discrimination on the basis of sex for purposes of Title IX, must be set aside.

### B.     The Final Rule violates the Constitution.

The Final Rule also suffers significant constitutional infirmities. The Court remains persuaded that the Final Rule offends the First Amendment for the reasons explained in its prior Memorandum Opinions and Orders. [*See* Record Nos. 100, 117.] To recap briefly, the Final Rule's definitions of sex discrimination and sex-based harassment, combined with the de minimis harm standard, require Title IX recipients, including teachers, to use names and pronouns associated with a student's asserted gender identity. While the Department insists that this is not necessarily the case (*see* Record No. 134, p. 39), the new subjective harassment standard that need only "limit" participation in an educational program or activity, quite clearly compels this result. *See* 89 Fed. Reg. 33516 (stating that "whether verbal conduct constitutes sex-based harassment is necessarily fact-specific" and acknowledging that "*a* stray remark, such as *a* misuse of language," would not constitute harassment) (emphasis added).

As the Sixth Circuit recognized in *Meriwether v. Hartop*, 992 F.3d 492, 508 (6th Cir. 2021), "[p]ronouns can and do convey a powerful message implicating a sensitive topic of public concern." The plaintiffs reasonably fear that teachers' (and others') speech concerning gender issues or their failure to use gender-identity-based pronouns would constitute harassment under the Final Rule. Put simply, the First Amendment does not permit the government to chill speech or compel affirmance of a belief with which the speaker disagrees in this manner. *See id. See also Wooley v. Maynard*, 430 U.S. 705, 714 (1977).

The Final Rule also is vague and overbroad. In *Davis v. Monroe Cnty. Bd. of Education*, 526 U.S. 629, 633 (1999), the Supreme Court held that a private cause of action under Title IX will lie "only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." The new regulation goes far beyond this standard and prohibits "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is *subjectively* and objectively offensive and is so severe or pervasive that it *limits* or denies a person's ability to participate in or benefit from the recipient's education program or activity. . . ." 34 C.F.R. § 106.2 (emphasis added); 89 Fed. Reg. 33498. As the Court explained previously, several of the terms used in this regulation are so vague that recipients of Title IX funds have no way of predicting what conduct will violate the law. *See Miller v. City of Cincinnati*, 622 F.3d 524, 539 (6th Cir. 2024) (observing that "[t]he void-for-vagueness doctrine not only ensures that laws provide fair warning of proscribed conduct, but also protects citizens against the impermissible delegation of basic policy matters for resolution on an *ad hoc* basis, with the attendant dangers of arbitrary and discriminatory application") (internal citations and quotation marks omitted).

The Final Rule also violates the Spending Clause of the United States Constitution. *See* U.S. CONS. ART. I, § 8, cl. 1. The Spending Clause allows Congress to "attach conditions on the receipt of federal funds . . . to further broad policy objectives." *S. Dakota v. Dole*, 483 U.S. 203, 206-07 (1987). *See also Davis.*, 526 U.S. at 640 (observing that Title IX was enacted pursuant to Congress' authority under the Spending Clause). This spending power functions in the nature of a contract—"in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Legislation that conditions the receipt of federal funds (1) must be in pursuit of the general welfare; (2) impose unambiguous conditions; (3) the conditions must relate to federal interests in the program; and (4) the conditions must not induce unconstitutional action. *Dole*, 483 U.S. at 207-08.

The Final Rule fails the fourth prong for the reasons already discussed. Further, Title IX does not unambiguously condition the receipt of funds on the prohibition of gender identity discrimination. *See Kansas v. U.S. Dep't of Educ.*, –F.Supp.3d–, 2024 3273285, at *12-13 (D. Kan. July, 2, 2024). When a state accepts a federal grant, it must do so knowingly and voluntarily. *Pennhurst*, 451 U.S. at 17. This means that *Congress* must provide "clear notice" of the obligations a spending law entails. *Kentucky v. Yellen*, 54 F.4th 325, 348 (6th Cir. 2022) (emphasis added) (citing *Pennhurst*, 451 U.S. at 25). Here, the Department expands Title IX to encompass entirely new subject matter that is not contemplated by the text of the statute. Further, the Department "has not had regulations regarding gender identity discrimination on the books for several years and, just a few short years ago, took a position contrary to the one being advanced today." *Id.* at *13. In the absence of a clear statement from Congress, particularly when the extensive consequences of the Final Rule are considered, the Final Rule cannot stand.

### C.      The Final Rule is arbitrary and capricious.

The Court remains persuaded that the Final Rule is arbitrary and capricious. [*See* Record Nos. 100, 117.] The Department does not provide a reasoned explanation for departing from its longstanding interpretation of Title IX. Although it relies primarily on *Bostock*, the Supreme Court was clear that the decision was limited to the context of Title VII and did not purport to address "bathrooms, locker rooms, or anything else of the kind." *See Bostock*, 590 U.S. at 681. Given the Court's express disclaimer and the striking differences between Title VII and Title IX, *Bostock* is a very shaky place for the Department to hang its hat.

Further, the Department fails to account for the glaring inconsistencies that the Final Rule creates within Title IX. It acknowledges that Congress has deemed sex separation (and thus, more than de minimis harm) permissible in various circumstances such as social fraternities and sororities and living facilities. *See* 20 U.S.C. §§ 1681(a)(6), 1686. Yet, the new regulations say that recipients cannot separate the sexes (thus inflicting more than de minimis harm) for purposes of other "living facilities" such as bathrooms, toilets, or showers. *See* 34 C.F.R. §§ 106.31, 106.33. In support, the Department cites "case law, research, testimony and comments from stakeholders, and evidence from schools' many years of practical experience" indicating "that preventing a person from participating in a program or accessing a sex-separate facility consistent with their gender identity subjects them to harm." [Record No. 133, p. 25 (citing 89 Fed. Reg. 33818-19).] Assuming this is true, doesn't it also subject such persons to harm when they are prevented from participating in the social fraternity or sorority consistent with their gender identity? Or when they are prevented from residing in a living facility consistent with their gender identity? It seems clear that the answer is "yes," which indicates that Title IX does not encompass the issue of gender identity at all.

**IV.**

Having determined that the challenged portions of the Final Rule are invalid, the Court considers the appropriate remedy. While the Department argues in favor of severance, the Court remains persuaded that the three challenged provisions fatally taint the entire rule. As the Court has explained, the definition of discrimination "on the basis of sex" lies at the heart of Title IX and permeates virtually every provision of the law.

While not directly challenged in this proceeding, the Final Rule brings new requirements for handling grievances, training, recordkeeping, and processing complaints. But these regulations refer to and incorporate provisions the Court deems invalid, which necessitates jettisoning these regulations as well. *See* 34 C.F.R. §§ 106.44 (Recipient's response to sex discrimination (including multiple references to sex-based harassment)); 106.45 (Grievance procedures for the prompt and equitable resolution of complaints of sex discrimination (relying on § 106.2's definition of sex-based harassment)); 106.46 (Grievance procedures for the prompt and equitable resolution of complaints of sex-based harassment involving student complainants or student respondents at postsecondary institutions (same)). While there appears to be at least one provision that is not directly impacted by the plaintiffs' challenge, *see* 34 C.F.R. § 106.40 (Aug. 1, 2024) ("Parental, family or marital status; pregnancy or related conditions), it simply is not proper for the Court to rewrite the regulations by excising the offending material, particularly when rulemaking is the exclusive duty of the Executive Branch. *See Ayotte v. Planned Parenthood of N. New England,* 546 U.S. 320 (2006). Thus, the undersigned concludes that the entire Final Rule and corresponding regulations are invalid and must be set aside.

"[W]hen a reviewing court declares that the challenged action of an administrative agency violates the law, vacatur is the 'normal remedy.'" *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 50

(D.D.C. 2020) (quoting *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014)); *Kentucky. v. Fed. Hwy. Admin.*, 728 F. Supp. 3d 501, 522 (2024) (observing that vacatur is the ordinary remedy for a violation of the APA). In essence, a vacatur order "takes the unlawful agency action 'off the books'"—"an entirely appropriate response when a plaintiff successfully establishes that the agency's conduct violates the law." *Kiakomba*, 746 F. Supp. 3d at 50 (citations omitted). Vacatur operates on the rule itself and prevents the rule's "application to all who would otherwise be subject to its operation." *See Kentucky*, 728 F. Supp. 3d at 522 (quoting *East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 987 (9th Cir. 2020)).

Although the Court has discretion to craft a different remedy, there is no reason to do so here. "In general, whether vacatur is appropriate depends 'on the seriousness of the agency error and the disruptive consequences of vacatur.'" *Sierra Club v. EPA*, 60 F.4th 1008, 1022 (6th Cir. 2023) (quoting *Long Island Power Auth. v. Fed. Energy Reg. Comm'n*, 27 F.4th 705, 717 (D.C. Cir. 2022)). The seriousness of the error weighs heavily in favor of vacating the Final Rule, as it is unlawful on numerous fronts. *See id.* (observing that "the seriousness of the agency's error depends on how likely it is the agency will be able to justify its decision on remand") (cleaned up). In other words, the Department could not adopt the same rule on remand by "offer[ing] better reasoning" or "complying with procedural rules." *See id*. (quoting *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015)).

Additionally, vacatur of the Final Rule is not likely to have a disruptive effect. As far as this Court is aware, every court presented with a challenge to the Final Rule has indicated that it is unlawful. *See Alabama v. U.S. Sec. of Educ.*, No. 24-12444, 2024 WL 3981994 (11th Cir. Aug. 22, 2024); *Oklahoma v. Cardona*, No. CIV-24-00461-JD, 2024 WL 3609109 (W.D. Okla. July 31, 2024); *Arkansas v. Dept. of Educ.*, No. 4:24-CV-636-RWS, 2024 WL 3518588 (E.D. Mo. July 24,

2024); *Texas v. United States*, No. 2:24-CV-86-Z, 2024 WL 3405342 (N.D. Tex. July 11, 2024); *Kansas v. Dept of Educ.*, No. 24-4041-JWB, 2024 WL 3273285 (D. Kan. July 2, 2024); *Louisiana v. Dept. of Educ.*, No. 3:24-CV-00563, 2024 WL 2978786 (W.D. La. June 13, 2024). Further, vacatur of the Final Rule would simply "cause a return to the status quo" that existed for more than 50 years prior to its effective date. *See Sierra Club*, 60 F.4th at 1023 (concluding that returning to the regulatory regime that had been in place for almost 50 years would not have a disruptive effect).

Vacatur of the Final Rule effectively moots the plaintiffs' request for permanent injunctive relief. However, Rule 57 of the Federal Rules of Civil Procedure provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." *See also* 28 U.S.C. § 2201 (providing that a court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"). The plaintiffs seek declaratory relief stating that: (1) the Final Rule is unlawful because Title IX's prohibition on "sex" discrimination does not include the bases or conduct covered by § 106.02's hostile-environment harassment definition, § 106.10, or § 106.31(a)'s regulation of sex-segregated facilities and programs; (2) the Final Rule is unlawful because it violates the Spending Clause and the First Amendment; (3) the Final Rule is unlawful because it is arbitrary and capricious; and (4) Plaintiff States, their political subdivisions, and their recipient schools are entitled to funding irrespective of compliance with the Rule.

The plaintiffs' requested declaratory relief is substantially consistent with the Court's decision and will be granted. However, the Court will modify the fourth request slightly, as it goes too far to affirmatively conclude that the plaintiff-States "are entitled to funding irrespective of their compliance with the Rule." After all, the plaintiff-States potentially could violate Title IX in ways unrelated to the Final Rule, which might render them ineligible for federal funding.

Accordingly, a more accurate way to characterize this declaratory relief is that the Plaintiff States, their political subdivisions, and their recipient schools need not comply with the Rule to receive federal funding.

**V.**

Based on the foregoing analysis, and incorporating the Court's June 17, 2024 and July 10, 2024 Memorandum Opinions and Orders [Record Nos. 100, 117] by reference, it is hereby

**ORDERED** as follows:

1. The motion for summary judgment filed by Plaintiffs Commonwealth of Kentucky, Commonwealth of Virginia, State of Indiana, State of Tennessee, and State of West Virginia [Record No. 126] is **GRANTED**.

2. The motion for summary judgment filed Intervenor Plaintiffs Christian Educators Association International and A.C. [Record No. 127] is **GRANTED**.

3. The cross-motion for summary judgment filed by Miguel Cardona and the United States Department of Education [Record No. 134] is **DENIED**.

Dated: January 9, 2025.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky