**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**(at Covington)**

STATE OF TENNESSEE, et al.,

        Plaintiffs,

    and

CHRISTIAN EDUCATORS ASSOCIATION
INTERNATIONAL, et al.,

        Intervenor-Plaintiffs,

    v.

DENISE CARTER, in her interim official
capacity as Secretary of Education, et al.,

        Defendants,

    and

A BETTER BALANCE,

    [Proposed] Intervenor-Defendant.

Case No. 2:24-072-DCR

**MEMORANDUM IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANT**
**A BETTER BALANCE'S MOTION TO INTERVENE**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

   I. A BETTER BALANCE ................................................................................................. 2

   II. THE RULE ................................................................................................................... 2

   III. THE RULE'S VACATUR .......................................................................................... 3

   IV. THE NEW ADMINISTRATION'S SIGNALS THAT IT WILL NOT
       DEFEND THE RULE ................................................................................................ 3

   V. ABB'S INTERESTS IN DEFENDING THE RULE ................................................. 5

ARGUMENT ............................................................................................................................. 7

   I. ABB IS ENTITLED TO INTERVENTION AS OF RIGHT .................................... 7

      A. ABB's Motion is Timely ..................................................................................... 8

      B. ABB Has Substantial Interests in Part of the Rule ........................................... 10

      C. ABB's Interests May Be Impaired if it Cannot Intervene ................................ 12

      D. Existing Parties May Not Adequately Protect ABB's Interests ........................ 13

   II. PERMISSIVE INTERVENTION IS ALSO WARRANTED ................................. 15

   III. ABB HAS STANDING ............................................................................................ 16

CONCLUSION ....................................................................................................................... 18

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Americans United for Separation of Church and State v. City of Grand Rapids*,
    922 F.2d 303 (6th Cir. 1990) ................................................................................. 13

*Buck v. Gordon*,
    959 F.3d 219 (6th Cir. 2020) ................................................................................. 15

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983) ................................................................................................. 7

*Diamond v. Charles*,
    476 U.S. 54 (1986) ................................................................................................. 16

*Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living, LLC*,
    124 F.4th 990 (6th Cir. 2025) ............................................................................... 17

*Food Marketing Inst. v. Argus Leader Media*,
    588 U.S. 427 (2019) .............................................................................................. 17

*Fund for Animals, Inc. v. Patton*,
    No. 98-CV-365, 1998 WL 34202233 (W.D. Ky. Sept. 25, 1998) .......................... 11

*Grutter v. Bollinger*,
    188 F.3d 394 (6th Cir. 1999) ................................................................... 10, 11, 13

*H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*,
    797 F.2d 85 (2d Cir. 1986) .................................................................................... 13

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) .............................................................................................. 17

*Jansen v. City of Cincinnati*,
    904 F.2d 336 (6th Cir. 1990) ............................................................................... 8, 9

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ................................................................................. 11

*League of Women Voters of Mich. v. Johnson*,
    902 F.3d 572 (6th Cir. 2018) ................................................................................ 16

*Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of the Interior*,
    66 F.4th 282 (D.C. Cir. 2023) ............................................................................... 14

*Marino v. Ortiz*,
  484 U.S. 301 (1988)......................................................................................................... 7

*Meriwether v. Trs. of Shawnee State Univ.*,
  No. 18-cv-753, 2019 WL 2052110 (S.D. Ohio May 9, 2019).................................. 11

*Mich. State AFL-CIO v. Miller*,
  103 F.3d 1240 (6th Cir. 1997) .............................................................. 8, 10, 12, 13

*Midwest Realty Mgmt. Co. v. City of Beavercreek*,
  93 F. App'x 782 (6th Cir. 2004) ........................................................................... 9

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010)....................................................................................................... 17

*NAACP v. New York*,
  413 U.S. 345 (1973)......................................................................................................... 8

*Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*,
  558 F.2d 861 (8th Cir. 1977) .............................................................................. 12

*Providence Baptist Church v. Hillandale Comm., Ltd.*,
  425 F.3d 309 (6th Cir. 2005) .............................................................................. 10

*Pub. Int. Legal Found., Inc. v. Winfrey*,
  463 F. Supp. 3d 795 (E.D. Mich. 2020).......................................................... 15

*Purnell v. Akron*,
  925 F.2d 941 (6th Cir. 1991) ................................................................ 8, 12, 16

*Roe v. Town of Highland*,
  909 F.2d 1097 (7th Cir. 1990) .......................................................................... 15

*Smuck v. Hobson*,
  408 F.2d 175 (D.C. Cir. 1969) .......................................................................... 13

*Stupak-Thrall v. Glickman*,
  226 F.3d 467 (6th Cir. 2000) ........................................................................ 8, 14

*Triax Co. v. TRW, Inc.*,
  724 F.2d 1224 (6th Cir. 1984) ...................................................................... 9, 14

*U.S. Postal Serv. v. Brennan*,
  579 F.2d 188 (2d Cir. 1978)................................................................................ 16

*United Airlines, Inc. v. McDonald*,
  432 U.S. 385 (1977)....................................................................... 7, 8, 9, 16

iii

*United States v. AT & T*,
   642 F.2d 1285 (D.C.Cir.1980) ................................................................. 13

*United States v. Michigan*,
   424 F.3d 438 (6th Cir. 2005) ................................................................. 15

*Wilkins v. Daniels*,
   No. 12-CV-1010, 2012 WL 6015884 (S.D. Ohio Dec. 3, 2012) ............................. 11

*Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*,
   41 F.4th 767 (6th Cir. 2022) ................................................................. 12

**Rules**

Fed. R. Civ. P. 24 ................................................................................. 1, 8

Fed. R. Civ. P. 24(a) ......................................................................... 1, 7, 10, 12

Fed. R. Civ. P. 24(a)(2) ............................................................................. 7

Fed. R. Civ. P. 24(b) ........................................................................... 1, 7, 15

**Regulations**

34 C.F.R. § 106 (2024) .............................................................................. 2

34 C.F.R. § 106.40 ................................................................................. 2

34 C.F.R. § 106.40(b) .............................................................................. 5

34 C.F.R. § 106.40(b)(2) ............................................................................ 3

34 C.F.R. § 106.40(b)(3)(ii) ........................................................................ 3, 6

34 C.F.R. §§ 106.40(b)(3)(ii), 106.40(b)(3)(v) ..................................................... 2, 6

**Other Authorities**

7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1908.2 (3d. ed.
   2022) ......................................................................................... 13

Proposed Intervenor A Better Balance respectfully submits this memorandum in support of their motion to intervene as a defendant pursuant to Federal Rule of Civil Procedure 24.

## INTRODUCTION

A Better Balance ("ABB") is a national nonprofit organization that advocates for pregnant and caregiving workers and students. It seeks to intervene in this action to defend portions of the U.S. Department of Education's 2024 Title IX Rule that protect pregnant and postpartum students. If they went into effect, these provisions would provide essential protections to the students that ABB serves and allow ABB to assist them more effectively and efficiently. Last month, however, this Court vacated the full Rule. And, following the change in administration, the government has indicated that it does not intend to continue to defend the Rule by appealing this Court's final judgment. As a result, ABB seeks to intervene for the limited purpose of appealing to argue that the Sixth Circuit should revive the portions of the Rule that protect pregnant and postpartum students.

ABB meets all the requirements for mandatory intervention under Rule 24(a). The motion is timely because ABB filed it before the deadline for a notice of appeal and soon after learning of the government's changed position. ABB has a substantial interest in the pregnancy-related portions of the Rule because it advocated for these protections, which would allow ABB to better pursue its mission using fewer resources. Absent intervention, the interests that ABB is seeking to protect may be impaired because the pregnancy-related parts of the Rule will be permanently vacated if Defendants do not appeal. And, because they appear unlikely to do so, Defendants may no longer adequately represent ABB's interests.

Permissive intervention under Rule 24(b) is also warranted. ABB's motion is timely and presents a question of law or fact common to the existing case. And ABB's motion will not prejudice any of the parties.

1

Finally, although unnecessary at this juncture, ABB has Article III standing sufficient to maintain a case or controversy on appeal. The Rule would allow ABB to more effectively and efficiently assist pregnant and postpartum students who call them seeking legal assistance. As a result, the absence of the Rule requires ABB to divert resources, interferes with one of ABB's core activities, and frustrates ABB's mission.

## FACTUAL BACKGROUND

### I.    A BETTER BALANCE

ABB is a national nonprofit legal advocacy organization dedicated to advocating for pregnant, parenting, and caregiving workers and students. Declaration of Katherine Greenberg ("Greenberg Decl.") ¶ 2. ABB works to protect the rights of "these workers and students through legislative advocacy, direct legal services, and strategic litigation, among other avenues." *Id*. ABB has played a leading role in advocating for laws and policies for pregnant and postpartum workers and students. *Id.* ¶ 3. "For a decade, [it] advocated for the federal Pregnant Workers Fairness Act, which passed with bipartisan support in 2022." *Id.* ABB "played a leading role in passing the federal PUMP For Nursing Mothers Act." *Id.* The organization has "helped pass a wealth of state and local policies," including in Tennessee. *Id.* Particularly relevant here, ABB advocated for the adoption of the protections for pregnant and postpartum students in the regulation at issue in this case. *Id*. ¶ 4. And "[a] significant portion of [ABB's] legal work consists of counseling workers and students who contact [the organization] through [its] free legal helpline." *Id.* ¶ 6.

### II.    THE RULE

On April 29, 2024, the Department of Education issued a regulation implementing Title IX. *See* 34 C.F.R. § 106 (2024). The Rule provides, among other things, protections for pregnant and postpartum students. *See* 34 C.F.R. § 106.40. These include a right to lactation spaces and breaks, 34 C.F.R. §§ 106.40(b)(3)(ii), 106.40(b)(3)(v), and a right to other "reasonable

2

modifications," such as larger desks, permission to eat, drink, or use the restroom; adjusted exam dates; remote access to classes; and excused absences for prenatal care, 34 C.F.R. § 106.40(b)(3)(ii). The regulations also require that, when students disclose their pregnancies, schools must provide them with information about their Title IX rights and the school's Title IX Coordinator, who can help them request and receive the support they need. 34 C.F.R. § 106.40(b)(2).

## III.    THE RULE'S VACATUR

After the Department promulgated the Rule, Tennessee and other states filed the present case against Defendants the U.S. Department of Education and the U.S. Secretary of Education. *See* Compl., ECF No. 1. The suit does not contend that the protections related to pregnant and postpartum students' rights are unlawful, instead challenging a handful of separate provisions. *See generally id.*

On January 9, 2025, this Court granted Plaintiffs' summary judgment motions and denied the government's cross-summary judgment motion on the grounds that "the Final Rule and its corresponding regulations exceed the Department's authority under Title IX, violate the Constitution, and are the result of arbitrary and capricious agency action." Mem. Op. & Order 1, ECF No. 143. The Court then vacated "the entire Rule and corresponding regulations," including the segments that protect pregnant and postpartum students. *Id.* at 12. The next day, the Court amended its judgment. *See* Order, ECF No. 145.

## IV.    THE NEW ADMINISTRATION'S SIGNALS THAT IT WILL NOT DEFEND THE RULE

Until recently, the federal government had vigorously defended the validity of the Rule in this Court as well as other venues. But the new Presidential administration has signaled that it does not intend to defend the Rule. On January 31, 2025, the Department of Education first indicated

that it would not appeal the Court's decision vacating the Rule. The Department issued a "Dear Colleague Letter" announcing that it would "enforce Title IX under the provisions of the 2020 Title IX Rule, rather than the recently invalidated 2024 Title IX Rule," citing this Court's January 9, 2025, order vacating the 2024 Title IX Rule. Off. for Civ. Rts., U.S. Dep't of Educ., Dear Colleague Letter 1 (Jan. 31, 2025), https://perma.cc/FEQ5-93Q4 ("Jan. 31 DCL"). The Department stated that this Court's decision "expressed the proper textual and original meaning of Title IX" and "correctly repudiated the 2024 Title IX Rule[]." *Id.*

On February 4, 2025, the Department issued a revised version of its earlier Dear Colleague Letter. *See* Off. for Civ. Rts., U.S. Dep't of Educ., Dear Colleague Letter (Feb. 4, 2025), https://perma.cc/Z4KJ-MCYN ("Feb. 4 DCL"). There, the Department acknowledged that "the United States Department of Justice is responsible for determining whether to appeal the United States District Court for the Eastern District of Kentucky's vacatur order," but reiterated that "that judgment was immediately effective and no portion of the 2024 Title IX Rule is now in effect in any jurisdiction." *Id.* at 1.

On February 6, 2025, the U.S. Department of Education filed an unopposed motion to postpone oral argument in a Tenth Circuit challenge to the Rule and to hold the case in abeyance. *See* Mot. to Postpone Oral Arg. & Hold Appeal in Abeyance, *Kansas v. U.S. Dep't of Educ.*, No. 24-3097 (10th Cir. Feb. 6, 2025), ECF No. 329. In its motion, the defendants explained that the "Department is under new leadership, which requires time to become familiar with the final rule and the issues presented by this litigation as well as to determine how they wish to proceed." *Id.* at 2. Soon after, the federal government reiterated the same point in motions to hold other challenges to the regulation in abeyance. *See* Mot. to Hold Appeal in Abeyance, *Arkansas v. U.S. Dep't of Educ.*, No. 24-2921 (8th Cir. Feb. 12, 2025); Mot. to Hold Appeal in Abeyance, *Oklahoma v. Carter*, No. 24-6205 (10th Cir. Feb. 11, 2025), ECF No. 39.

On February 17, 2025, federal defendants in a third challenge to the Rule filed a joint status report confirming that they may not appeal this Court's judgment. *See* Joint Status Report, *Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, No. 4:24-cv-00461 (N.D. Tex. Feb. 17, 2025), ECF No. 85. There, the defendants wrote that the "parties agree that this case remains a live controversy until either (1) the *Tennessee* judgment is affirmed on appeal and no further appellate review is available, or (2) *the deadline to appeal passes without Defendants noticing an appeal*." *Id.* at 2 (emphasis added).

## V.    ABB'S INTERESTS IN DEFENDING THE RULE

A core part of ABB's mission is providing policy and legal assistance for pregnant and parenting students. Greenberg Decl. ¶ 2. ABB represents students in pregnancy discrimination litigation, including under Title IX. *Id.* ¶ 5. The organization regularly receives calls to its free helpline from pregnant and postpartum students who are facing discrimination at school, to whom ABB provides legal information and other assistance. *Id.* ¶¶ 6-9. And ABB advocated for the protections for pregnant and postpartum students that were included in the 2024 Title IX Rule. *Id.* ¶ 4. The Rule incorporates recommendations from ABB's comment letters on the original proposed regulation, such as providing specific examples of reasonable modifications (often called "accommodations") available to pregnant and postpartum students. *Id.*

The Rule, if allowed to go into effect, would bolster the rights of pregnant and postpartum students like those ABB represents and otherwise assists. *Id.* ¶¶ 10-11. As explained above, these protections include, among others, rights to reasonable modifications, including lactation breaks, and required notices of students' pregnancy-related Title IX rights. *See* 34 C.F.R. § 106.40(b). Those provisions would offer "significant protections for pregnant and postpartum students," who otherwise may "miss out on significant class time, struggle academically, or even leave school

because their school will not provide them adequate accommodations for their pregnancy or the opportunity and space to lactate." *Id.* ¶¶ 8, 10.

"The protections for pregnant and postpartum students contained in the challenged regulation would allow A Better Balance to more efficiently and effectively counsel students who call [its] helpline, deploying fewer resources with better results." Greenberg Decl. ¶ 13. For instance, ABB receives many calls from students seeking accommodations—such as access to remote instruction or rescheduling an exam because of their pregnancies—that are explicitly identified by the Rule as "reasonable modifications." Greenberg Decl. ¶¶ 15-18; *see* 34 C.F.R. § 106.40(b)(3)(ii). ABB also assists students seeking time and space to express milk, the rights to which the Rule explicitly grants. Greenberg Decl. ¶¶ 20-25; *see* 34 C.F.R. §§ 106.40(b)(3)(ii), 106.40(b)(3)(v). If the Rule were in effect, ABB "could quickly point student callers directly to portions of the regulation that unambiguously protect them from the discrimination they call [ABB] about, which they could then use to better understand their rights or advocate for themselves." Greenberg Decl. ¶ 14; *see also id.* ¶¶ 15-25 (providing specific examples). Without the Rule, ABB instead has to engage in fact-specific inquiries, conduct legal research into state and local law, and develop creative theories to provide even basic assistance to these student-callers—all of which takes significant staff time and other resources. *Id.* ¶¶ 18, 24, 30. Moreover, without the Rule, ABB spends resources to provide basic information about Title IX and Title IX coordinators to pregnant and postpartum students, which the Rule, if effective, would require schools to do once students disclosed their pregnancies, reducing the need for ABB's assistance. *Id.* ¶¶ 26-29.

Without the Rule's pregnancy-related provisions, then, ABB "ha[s] to spend more time and other resources to counsel student callers." *Id.* ¶ 30. Those are resources ABB could otherwise devote to other efforts. *Id.* "For example, [ABB] could counsel more workers and students on a

greater variety of questions and in greater depth; [ABB] could provide full representation to more workers and students, rather than providing only basic counseling; and [ABB] could engage in more public education." *Id.*

In light of these interests, ABB now seeks to intervene in this case to argue on appeal that, even if the Court were right to strike down the challenged provisions, the provisions related to pregnant and postpartum students should go into effect.

## ARGUMENT

ABB meets all four requirements for mandatory intervention under Federal Rule of Civil Procedure 24(a) and should be allowed to intervene as a matter of right. Permissive intervention is also appropriate here under Federal Rule of Civil Procedure 24(b) because intervention is timely, ABB alleges common questions of law and facts with the existing action, and permitting ABB to step into the government's shoes would not prejudice the original parties. Finally, ABB has Article III standing sufficient to maintain a case or controversy on appeal.

## I.    ABB IS ENTITLED TO INTERVENTION AS OF RIGHT

Federal Rule of Civil Procedure 24(a) requires a district court to allow intervention where the party seeking to intervene "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). A non-party may intervene "for the purpose of appeal." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395 (1977); *see also Marino v. Ortiz*, 484 U.S. 301, 303-04 (1988) (per curiam) (recognizing that non-party may intervene for limited purpose of taking appeal); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 348 n.1 (1983) (same).

Proposed intervenors are entitled to mandatory intervention under Rule 24(a) if they meet each of four factors: (1) the application to intervene is timely; (2) the proposed intervenor has a

"substantial legal interest" in the case; (3) absent intervention, the outcome of the case may impair the proposed intervenor's ability to protect that interest; and (4) the proposed intervenor's interest will not be adequately represented by the existing parties. *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). The Sixth Circuit has held that "Rule 24 should be 'broadly construed in favor of potential intervenors.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (quoting *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991)).

ABB meets each of the four factors for mandatory intervention in this action.

### A.    ABB's Motion is Timely

Intervention is timely here because ABB has filed its motion to intervene for the purpose of appealing the final judgment before the deadline to appeal and soon after learning that the Defendants may no longer represent their interests. Whether a motion to intervene is timely is determined based on "all the circumstances" of a case. *NAACP v. New York*, 413 U.S. 345, 366 (1973). Courts evaluating timeliness consider:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990).

A motion to intervene is generally timely when the movant seeks to intervene for purposes of appealing and the motion is filed before the deadline to notice an appeal. *See McDonald*, 432 U.S. at 391-96. As the Supreme Court explained in *United Airlines, Inc. v. McDonald*, "[t]he critical inquiry" for determining the timeliness of such a motion "is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment." *Id.* at 395-96. In

8

this context, the proposed intervenor acts promptly if she files "her motion within the time period in which the named [parties] could have taken an appeal." *Id.* at 396; *see also Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1229 (6th Cir. 1984) (same).

That makes sense. When a proposed intervenor seeks to join a case to appeal a final judgment before the deadline to notice that appeal, the factors identified by the Sixth Circuit weigh in favor of timeliness: Because the "purpose" of the intervention is to appeal a final judgment, the time after that judgment and before the deadline to appeal is the natural "point" of the litigation at which to intervene, *Jansen*, 904 F.2d at 340. And, at that stage, the "original parties" are not "prejudice[d]" by the timing of the intervention. *Id.* As the Supreme Court has noted, where a proposed intervenor seeks to enter the litigation after the "entry of final judgment," a party "can hardly contend that its ability to litigate the issue was unfairly prejudiced simply because an appeal . . . was brought by [an intervenor], rather than by . . . the original named [adversary]." *McDonald*, 432 U.S. at 394.

Moreover, a motion to intervene filed during this post-judgment period is particularly timely when the movant only learns of his need to intervene when an existing party declines to appeal. In *Jansen v. City of Cincinnati*, for example, the Sixth Circuit reversed, as clearly erroneous, the district court's ruling that intervention was untimely where "the proposed intervenors filed their motion to intervene as soon as they realized that their interest was not protected." 904 F.2d at 341; *see Triax*, 724 F.2d at 1228 (similar); *see also Midwest Realty Mgmt. Co. v. City of Beavercreek*, 93 F. App'x 782, 787-88 (6th Cir. 2004) (explaining that motion to intervene was timely where filed shortly after movant learned "their interests were not being adequately represented," even if they "knew that th[e] litigation could affect their legal interests from the beginning"). The Court in *Jansen* did so even though the intervenor sought to join the case on the eve of summary judgment, and to brief new issues that had not yet been raised. 904

9

F.2d at 341. ABB's timeliness is even clearer, as the organization seeks only to appeal a part of the Court's final judgment.

ABB has filed its motion to intervene for purposes of an appeal nearly two weeks before the March 10, 2025, deadline to notice an appeal. And ABB has done so promptly after learning, through recent public statements, that Defendants may not appeal and continue to adequately represent ABB's interests. *See supra* pp. 4-5. Accordingly, ABB's motion to intervene is timely.

### B.    ABB Has Substantial Interests in Part of the Rule

ABB meets Rule 24(a)'s requirement because it has "substantial legal interest" in the litigation. *Miller*, 103 F.3d at 1245. Courts analyze this prong with "a rather expansive notion of the interest sufficient to invoke intervention of right." *Id.* Thus, the substantial interest requirement is less stringent than the test for Article III standing, *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005), and the inquiry is "necessarily fact-specific," *Miller*, 103 F.3d at 1245. The Sixth Circuit has recognized a presumption in favor of finding substantial interest, noting that even "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Id.* at 1247.

An organization may "have a substantial legal interest by virtue of its role in the political process that resulted in the adoption of the contested" law or policy. *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999). In *Michigan State AFL-CIO v. Miller*, the Sixth Circuit allowed the Michigan Chamber of Commerce to intervene as of right in a suit by labor unions challenging amendments to the state's campaign finance law whose enactment the Chamber had supported. 103 F.3d at 1248. In holding that the Chamber "ha[d] a substantial legal interest in this litigation," *Miller* noted that the Chamber was "a vital participant in the political process that resulted in legislative adoption of the [challenged] amendments in the first place" and "a repeat player in Campaign Finance Act litigation." *Id.* at 1246-47; *see also id.* at 1245 (citing with approval the

Ninth Circuit rule that "a public interest group that is involved in the process leading to adoption of legislation has a cognizable interest in defending that legislation"); *Wilkins v. Daniels*, No. 12-CV-1010, 2012 WL 6015884, at *3 (S.D. Ohio Dec. 3, 2012) (allowing a public interest organization to intervene in litigation challenging the validity of a statute based on its vital participation in the legislative process).

Moreover, as Intervenor-Plaintiffs previously explained, "[c]ourts commonly find that proposed intervenors have a substantial interest in upholding policies or rules that benefit them." Intervenor-Pls.' Mem. Supp. Mot. to Intervene 11, ECF No. 21-1 (first citing *Grutter*, 188 F.3d at 398-99; and then citing *Meriwether v. Trs. of Shawnee State Univ.*, No. 18-cv-753, 2019 WL 2052110, at *9 (S.D. Ohio May 9, 2019)). An organization may have such an interest when a law or policy helps it achieve its mission. In *Fund for Animals, Inc. v. Patton*, for instance, a district court granted intervention of a "national non-profit organization" that "is dedicated to protecting the heritage of hunting, trapping, and fishing in America" in a constitutional challenge to Kentucky's procedure for selecting nominees for its Department of Fish and Wildlife Resources Commission. *Fund for Animals, Inc. v. Patton*, No. 98-CV-365, 1998 WL 34202233, at *1-2 (W.D. Ky. Sept. 25, 1998). There, the intervenor organization had a substantial interest because, if the lawsuit succeeded, the organization would not be able to engage in that nominating process to promote its goal of preserving hunting and fishing rights. *See id.*; *see also Grutter*, 188 F.3d at 397-99 (holding organization dedicated to "preserv[ing] opportunities in higher education for African-American and Latino/a students in Michigan" had substantial interest in litigation challenging affirmative action policy at University of Michigan).

Conversely, an organization also has a substantial interest in a law or policy that requires it to "expend resources" to "carry out" its mission. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022). After all, "[i]nterests in property are the most elementary type of right

that Rule 24(a) is designed to protect." *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 772 (6th Cir. 2022) (quoting *Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 869 (8th Cir. 1977)).

Here, ABB has a strong interest in preserving the unchallenged provisions of the Rule that seek to protect students with "pregnancy or related conditions"—the population ABB advocates for and represents. Like the intervenor in *Miller*, ABB has a substantial interest in the case because it played a leading role in the adoption of the very protections for pregnant and postpartum students in the Rule, including by leading two comment letters that resulted in changes between the proposed regulation and final Rule. Greenberg Decl. ¶ 4. ABB also has a substantial interest in the pregnancy-related provisions of the Rule because, if they went into effect, they would benefit ABB. Those portions of the Rule would help ABB carry out its mission, which includes serving pregnant and postpartum students, because the assistance they provide students who call seeking their help would be more effective. Greenberg Decl. ¶¶ 6-30; *see supra* pp. 5-7. Moreover, the absence of the Rule is a strain on ABB's resources: Without it, ABB must spend more staff time and other resources to provide direct legal services to these student-callers, including those who seek lactation accommodations or other modifications expressly guaranteed by the Rule. Greenberg Decl. ¶¶ 6-30; *see supra* pp. 5-7.

### C.    ABB's Interests May Be Impaired if it Cannot Intervene

ABB "must show only that impairment of its substantial legal interest is possible if intervention is denied." *Miller*, 103 F.3d at 1247. ABB need not demonstrate that a "substantial impairment of their interest" will result from an unfavorable disposition, nor that impairment is inevitable—simply that it "may" occur. *Purnell*, 925 F.2d at 948. "This burden is minimal." *Miller*, 103 F.3d at 1247. "The rule is satisfied whenever disposition of the present action would put the movant at a practical disadvantage in protecting its interest." *Wineries of the Old Mission*

*Peninsula*, 41 F.4th at 774 (quoting 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1908.2 (3d. ed. 2022)).

Here, it is more than possible that ABB's interests will be impaired if the Court does not permit it to intervene. The Court has already entered a final judgment vacating "the entire [2024 Title IX] Rule and corresponding regulations," including the provisions that provide protections based on "pregnancy or related conditions." Mem. Op. & Order 12, ECF No. 143. If ABB is not permitted to intervene, it will have no way to try to restore those pregnancy-related provisions, in which ABB has substantial interests, *see supra* pp. 10-13. And Defendants appear unlikely to appeal. *See supra* pp. 4-5. As a result, if the Court denies ABB's motion to intervene, this proceeding will likely result in the permanent, nationwide vacatur of the Rule's pregnancy-related protections.

## D.    Existing Parties May Not Adequately Protect ABB's Interests

ABB carries only a "minimal" burden to show that its interests "may" not be adequately represented by the existing parties to this litigation; they are "not required to show that the representation will in fact be inadequate." *Miller*, 103 F.3d at 1247; *see Grutter*, 188 F.3d at 400 ("The proposed intervenors need show only that there is a *potential* for inadequate representation."). "[A] decision not to appeal by an original party can constitute inadequate representation of another party's interest." *Americans United for Separation of Church and State v. City of Grand Rapids*, 922 F.2d 303, 306 (6th Cir. 1990); *see, e.g.*, *Miller*, 103 F.3d at 1248 (explaining that defendant's decision not to appeal demonstrated that it did not represent the interests of the proposed intervenor-defendant who sought to appeal). That is especially clear when, by "fail[ing] to appeal," an "original defender . . . abandon[s] that role." *Americans United*, 922 F.2d at 306; *see H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 88 (2d Cir. 1986) (citing *United States v. AT & T*, 642 F.2d 1285, 1294 (D.C.Cir.1980)); *Smuck v. Hobson*,

408 F.2d 175, 181 (D.C. Cir. 1969)); *cf. Stupak-Thrall*, 226 F.3d at 477 (holding proposed intervenors could not demonstrate inadequate representation because, although they disagreed with litigation tactics, they could not "believe the Federal Defendants might abandon the litigation"); *Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of the Interior*, 66 F.4th 282, 285 (D.C. Cir. 2023) (explaining that decision of U.S. agency to become adversary of state's claims, after starting as an ally, was enough to show the agency did not represent the state's interests).

Here, as discussed above, recent statements strongly suggest Defendants will not appeal the Court's decision vacating the Rule. *See supra* pp. 4-5. Among other indications, on January 31, the Department of Education stated that this Court "correctly repudiated the 2024 Title IX Rule[]." Jan. 31 DCL. Absent ABB's intervention, Defendants' likely failure to appeal would allow the Court's final judgment to remain permanent and untouchable. The portions of the Rule in which ABB has an interest would be forever lost. Accordingly, because they are likely not to appeal, Defendants may no longer adequately protect ABB's interest in reviving the portions of the Rule that protect pregnant and postpartum students. *Cf. Triax,* 724 F.2d at 1228 (explaining that party's decision not to appeal rendered it an inadequate representative because the only way for the proposed intervenor to avoid a permanent injury was an appeal). Moreover, Defendants' decision not to appeal will not reflect a mere strategic litigation decision in defense of this suit. Instead, it will demonstrate that the Department of Education has abandoned its role as the Rule's defender due to its changed view of the regulation, which now aligns with Plaintiffs'. *See* Jan. 31 DCL (expressing that this Court "correctly repudiated the 2024 Title IX Rule"). If Defendants no longer support and defend the Rule, they can no longer adequately represent A Better Balance's interests in preserving parts of it.

If the Court is not satisfied that the federal government's public statements and filings demonstrate the Defendants may no longer adequately represent ABB's interest, it can defer

consideration of ABB's motion to intervene (and accompanying motion for an extension to notice an appeal) to see if Defendants do, in fact, notice an appeal by the March 10, 2025, deadline. If the Court chooses this course, ABB requests that the Court inform the parties so ABB knows it does not need to file a notice of appeal by that date to preserve its ability to intervene. *See Roe v. Town of Highland*, 909 F.2d 1097, 1099-100 (7th Cir. 1990) ("[I]f the motion to intervene has not been acted upon within the time to appeal, the putative [intervenor] should nonetheless file a timely notice of appeal. Although the filing of the notice would deprive the district court of power to act on the motion to intervene, the cause may be remanded for that purpose." (cleaned up)).

## II.    PERMISSIVE INTERVENTION IS ALSO WARRANTED

In the alternative, permissive intervention under Federal Rule of Civil Procedure 24(b) is appropriate here. Permissive intervention requires proposed intervenors to "establish that the motion for intervention is timely and alleges at least one common question of law or fact." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005). After these two requirements are met, a court must balance any undue delay and prejudice to the original parties, along with any other relevant factors. *Id.*; *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799 (E.D. Mich. 2020).

Permissive intervention is appropriate here. As discussed above, this motion is timely. *See supra* pp. 8-10. And ABB's motion identifies common questions of law or fact with the existing action. Plaintiffs have argued that the full Rule should be vacated. *See, e.g.*, Pl. Mot. Summ. J. 6-7, ECF No. 126 (arguing that "vacatur of the entire Final Rule is warranted"). ABB's position is that, even if the challenged provisions are struck down, the provisions related to pregnant and postpartum students should go into effect. *See supra* p. 7. "There can be only one winner in this clash . . . , so [ABB] ha[s] presented a common question of law . . . ." *Buck v. Gordon*, 959 F.3d 219, 223 (6th Cir. 2020). Indeed, the Court addressed the issue in its order because a version of

15

ABB's argument was previously advanced by Defendants. *See, e.g.*, Mem. at 12, ECF No. 143; Defs.' Opp. to Mot. Summ. J. and Cross Mot. for Summ. J. at 39-49, ECF No. 133. Because Defendants will likely no longer advance this position, *see supra* pp. 4-5, ABB's intervention will not be duplicative.

Lastly, there is no undue delay and prejudice to the original parties. ABB seeks to intervene for purposes of appeal in a matter in fully adjudicated matter at the district court. ABB's intervention would not require that the parties complete additional discovery, brief additional motions to this Court, or otherwise burden the Court and the parties with further proceedings at the district court level. *See League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 580 (6th Cir. 2018) (reversing denial of permissive intervention in part on grounds that intervention would not have created delays from discovery and motion practice). Further, the original parties "can hardly contend that [their] ability to litigate the issue was unfairly prejudiced simply because an appeal . . . was brought by [intervenor], rather than by one of the original named [defendants]." *McDonald*, 432 U.S. at 394.

## III.    ABB HAS STANDING

At this juncture, ABB does not need Article III standing. *See U.S. Postal Serv. v. Brennan,* 579 F.2d 188, 190 (2d Cir. 1978) (explaining that once a case or controversy has been established between plaintiff and defendant, there is no need to impose a standing requirement on an intervenor); *accord Purnell*, 925 F.2d at 948; Joint Status Report, *Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, No. 24-cv-00461 (N.D. Tex. Feb. 17, 2025), ECF No. 85 (explaining Defendants' view that, until it fails to notice an appeal in this case, a separate challenge to the Rule remains a case or controversy). However, if required to demonstrate that standing at a later point, *see Diamond v. Charles*, 476 U.S. 54, 62 (1986), it can do so. Where an organization seeks to intervene for the purpose of appealing a lower court judgment, it has standing if "it has suffered an actual or

imminent injury that is 'fairly traceable' to the judgment below and that could be 'redress[ed] by a favorable ruling.'" *Food Marketing Inst. v. Argus Leader Media*, 588 U.S. 427, 432-33 (2019) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149-50 (2010)).

Here, ABB easily meets this standard. First, ABB satisfies the injury requirement because in the absence of the Rule, ABB must expend more resources counseling pregnant and postpartum students who call the organization for assistance, and with worse results. Greenberg Decl. ¶¶ 6-30. For example, if the Rule were in effect, ABB could quickly point postpartum callers to the provision of the regulation that requires their schools to provide them time and space to express milk at school. *Id.* ¶ 25. Without the Rule, ABB must instead conduct research and craft individualized arguments for why these callers' schools should provide these lactation accommodations, "since no such right is clearly articulated in past Title IX regulations or law." *Id.* ¶ 24. Accordingly, ABB currently must expend "more time and other resources to counsel student callers"—resources that the organization could otherwise devote to other ends, such as serving more students or providing more comprehensive services. *Id.* ¶ 30. This diversion of resources, frustration of ABB's mission, and interference with one of its core activities is an injury-in-fact. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (holding that diversion of resources is sufficient to support organizational standing where the organization's mission was "perceptibly impaired"); *accord Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living, LLC*, 124 F.4th 990, 993 (6th Cir. 2025) ("If, for example, a defendant's actions interfered with the counseling and referral services that a housing organization provided, that conduct could suffice to establish standing.").

Second, ABB's injury is fairly traceable to the vacatur of the Rule's provisions that grant protections to pregnant and postpartum students. And, third, this injury would likely be redressed

by a favorable decision from the appellate court, since that decision would restore the relevant provisions.

## CONCLUSION

For the foregoing reasons, Proposed Intervenor A Better Balance respectfully requests that this Court grant its Motion to Intervene.


Dated: February 26, 2025                              Respectfully Submitted,

                                                     /s/ *Ned Pillersdorf*
                                                     Ned Pillersdorf
                                                     Janet Stumbo
                                                     PILLERSDORF LAW OFFICES
                                                     124 West Court Street
                                                     Prestonsburg, KY 41653
                                                     Phone: (606) 886-6090
                                                     pillersn@gmail.com
                                                     jstumbo@gmail.com

                                                     Matthew Borden*
                                                     Kory DeClark*
                                                     BRAUNHAGEY & BORDEN LLP
                                                     747 Front Street, 4th Floor
                                                     San Francisco, CA 94111
                                                     Telephone: (415) 599-0210
                                                     Facsimile: (415) 276-1808
                                                     borden@braunhagey.com
                                                     declark@braunhagey.com

                                                     Christman Rice*
                                                     Marissa R. Benavides*
                                                     Lily (Haeun) Kim*
                                                     BRAUNHAGEY & BORDEN LLP
                                                     118 W 22nd Street, 12th Floor
                                                     New York, NY 10011
                                                     Telephone: (646) 829-9403
                                                     Facsimile: (415) 276-1808
                                                     rice@braunhagey.com
                                                     benavides@braunhagey.com
                                                     kim@braunhagey.com

                                                     [Continued on next page]

18

Alexandra Z. Brodsky*
Sean Ouellette*
Adele P. Kimmel*
PUBLIC JUSTICE
1620 L Street NW
Suite 630
Washington, DC 20036
Phone: (202) 797-8600
abrodsky@publicjustice.net
souellette@publicjustice.net
akimmel@publicjustice.net

Leila Nasrolahi*
PUBLIC JUSTICE
475 14th Street
Unit 610
Oakland, CA 94612
Phone: (510) 622-8250
lnasrolahi@publicjustice.net

*Pro hac vice motions forthcoming

Counsel for Proposed Intervenor-Defendant

## CERTIFICATE OF SERVICE

I certify that on February 26, 2025, the above document was filed with the CM/ECF filing system, which electronically serves a copy to all counsel of record.

DATED: February 26, 2025

/s/ *Ned Pillersdorf*
Ned Pillersdorf