# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
### COVINGTON DIVISION

**State of Tennessee; Commonwealth of Kentucky; State of Ohio; State of Indiana; Commonwealth of Virginia; and State of West Virginia**,
*Plaintiffs*,

*and*

**Christian Educators Association International; A.C., by her next friend and mother, Abigail Cross**,
*Intervenor-Plaintiffs*,

v.

**Miguel Cardona, in his official capacity as Secretary of Education; and United States Department of Education**,
*Defendants*,

**A Better Balance**,
*[Proposed] Intervenor-Defendant*,

*and*

**Victim Rights Law Center and Jane Doe**,
*[Proposed] Intervenor-Defendants*

2:24-cv-00072-DCR-CJS
Judge Danny C. Reeves

# [PROPOSED] INTERVENOR-DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

# TABLE OF CONTENTS

INTRODUCTION........................................................................................1

ARGUMENT.............................................................................................4

I.    The vacatur of the 2024 Rule and reversion to the 2020 Rule are directly
harming VRLC and Jane Doe...........................................................5

    a.  Vacatur of the 2024 Rule and reversion to the 2020 Rule are harming
VRLC to such an extent as to give rise to Article III standing. ..............6

    b.  Vacatur of the 2024 Rule and reversion to the 2020 Rule are harming
Jane Doe greatly enough to give rise to Article III standing.................11

II.   VRLC and Jane Doe are entitled to intervene as of right to defend their
interests in this matter, which are likely now unrepresented. ......................14

    a.  VRLC and Jane Doe's motion to intervene is timely because they are
filing it within the timeframe to appeal. ..................................................14

    b.  VRLC and Jane Doe have substantial and legally protectable interests
that this litigation is impairing...............................................................19

    c.  VRLC and Jane Doe's interests are likely no longer protected. ...........21

III.  VRLC and Jane Doe satisfy the requirements to intervene by permission...22

CONCLUSION.......................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Auto. Parts Antitrust Litig., End-Payor Actions*,
    33 F.4th 894 (6th Cir. 2022) ..............................................................................16

*Benalcazar v. Genoa Twp.*,
    No. 2:18-CV-01805, 2020 WL 1853212 (S.D. Ohio Apr. 13, 2020).................18

*Buck v. Gordon*,
    959 F.3d 219 (6th Cir. 2020) .................................................................22, 23, 24

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
    595 U.S. 267 (2022).......................................................................15, 16, 18, 19

*Carroll Indep. School Dist. v. U.S. Dep't of Educ., et al.*,
    4:24-cv-00461-O, ECF No. 85 (N.D. Tex. Feb. 17, 2025) ................................17

*Cherry Hill Vineyards, LLC v. Lilly*,
    553 F.3d 423 (6th Cir. 2008) ................................................................................6

*Doe No. 1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*,
    No. 3:22-CV-337, 2023 WL 348272 (S.D. Ohio Jan. 20, 2023).......................20

*Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living, LLC*,
    124 F.4th 990 (6th Cir. 2025) ...........................................................................6, 7

*Grubbs v. Norris*,
    870 F.2d 343 (6th Cir. 1989) ..............................................................................21

*Grutter v. Bollinger*,
    188 F.3d 394 (6th Cir. 1999) .........................................................................19, 20

*Jansen v. City of Cincinnati*,
    904 F.2d 336 (6th Cir. 1990) .................................................................14, 15, 20

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..............................................................................................6

*Martin v. Corr. Corp. of Am.*,
    231 F.R.D. 532 (W.D. Tenn. 2005) .......................................................................4

*Meriwether v. Trs. of Shawnee State Univ.*,
No. 1:18-CV-753, 2019 WL 2052110 (S.D. Ohio May 9, 2019)........................19

*Michigan State AFL-CIO v. Miller*,
103 F.3d 1240 (6th Cir. 1997) .............................................................................21

*Midwest Realty Mgmt. Co. v. City of Beavercreek*,
93 F. App'x 782 (6th Cir. 2004) ...........................................................16, 17, 18

*Mote v. City of Chelsea*,
284 F. Supp. 3d 863 (E.D. Mich. 2018) ..............................................................11

*Pub. Int. Legal Found., Inc. v. Winfrey*,
463 F. Supp. 3d 795 (E.D. Mich. 2020) ..............................................................23

*SurvJustice Inc. v. DeVos*,
No. 18-CV-00535-JSC, 2018 WL 4770741 (N.D. Cal. Oct. 1,
2018), *order amended*, 2019 WL 1434144 (Mar. 29, 2019)......................7, 8, 10

*United Airlines, Inc. v. McDonald*,
432 U.S. 385 (1977).............................................................................15, 18, 19

*United States v. City of Detroit*,
712 F.3d 925 (6th Cir. 2013) .......................................................................15, 16

*Victim Rts. L. Ctr. v. Cardona*,
552 F. Supp. 3d 104 (D. Mass. 2021), *order clarified*, 2021 WL
3516475 (D. Mass. Aug. 10, 2021) ....................................................7, 8, 10, 12

*Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*,
41 F.4th 767 (6th Cir. 2022) .......................................................................20, 21

## Other Authorities

34 C.F.R. § 106.2 ..................................................................................................2

34 C.F.R. § 106.10 ............................................................................................1, 4

34 C.F.R. § 106.31(a)(2)....................................................................................2, 4

34 C.F.R. § 106.40 ...............................................................................................4

Nondiscrimination on the Basis of Sex in Education Programs or
Activities Receiving Federal Financial Assistance, 85 Fed. Reg.
30026 (May 19, 2020) ......................................................................1, 13

Nondiscrimination on the Basis of Sex in Education Programs or
Activities Receiving Federal Financial Assistance, 89 Fed. Reg.
33474 (Apr. 29, 2024)........................................................................1, 2

Fed. R. Civ. P. 24 ....................................................................5, 14, 20, 22

U.S. Dep't of Educ., Office for Civil Rights, *Dear Colleague Letter on
Title IX Enforcement* (Jan. 31, 2025) (amended Feb. 4, 2025) ...............2, 17, 21

# INTRODUCTION

The 2024 Title IX rule, which this Court vacated in its entirety, was desperately needed for student survivors of sex-based harassment, including sexual assault, dating violence, domestic violence, and stalking. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33474 (Apr. 29, 2024) (the "2024 Rule"). The 2024 Rule rolled back numerous harmful provisions of the previous rule issued in 2020, which had required schools to ignore many incidents of sex-based harassment and to use unfair and burdensome investigation procedures for sex-based harassment complaints that are not required for other investigations. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026 (May 19, 2020) (the "2020 Rule"). The 2024 Rule—in line with decades of prior U.S. Department of Education ("Department") policy—returned to vigorously enforcing Title IX's promise of education free of sex-based harassment.

Plaintiffs brought this challenge focused on three specific provisions of the 2024 Rule. The first challenged provision stated that for purposes of Title IX, discrimination on the basis of sex included discrimination on the basis of gender identity. 34 C.F.R. § 106.10; *see* 89 Fed. Reg. 33476. The second said that generally, where Title IX "permits different treatment or separation on the basis of

sex," a school could not "carry out such different treatment or separation in a manner that discriminates on the basis of sex by subjecting a person to more than de minimis harm." 34 C.F.R. § 106.31(a)(2); 89 Fed. Reg. 33814-26. The third reinstated almost verbatim a definition of hostile-environment sex-based harassment that the Department had enforced for decades before the 2020 Rule. *See* 34 C.F.R. § 106.2; 89 Fed. Reg. 33498. The Court held that those three challenged provisions were unlawful and "fatally taint the entire rule," and so vacated the entire 2024 Rule nationwide. Mem. Op. and Order, ECF No. 143 at 12 (Jan. 9, 2025).

Relying on this Court's vacatur ruling, the Department issued a guidance document announcing that it is again enforcing the 2020 Rule. *See* U.S. Dep't of Educ., Office for Civil Rights, *Dear Colleague Letter on Title IX Enforcement* (issued Jan. 31, 2025; amended Feb. 4, 2025) [hereinafter 2025 Guidance].[1] Reversion to the 2020 Rule once again removes protections against sex-based harassment and imposes disproportionate burdens on survivors. It reduces schools' responsibility to respond to sex-based harassment—in some cases requiring schools not to respond at all.

---

[1] https://www.ed.gov/media/document/title-ix-enforcement-directive-dcl-109477.pdf.

2

This change is already harming student survivors, and it will harm more. The 2020 Rule allows—and in many cases, requires—schools to dismiss many complaints of sex-based harassment and to use uniquely unfair, hostile, and retraumatizing procedures against student survivors in Title IX proceedings that are not required in other student or staff misconduct proceedings. *See* Exhibit A, Decl. of Stacy Malone ¶¶ 16-19, 23-36; Exhibit B, Decl. of Jane Doe ¶¶ 14-21. The return to the 2020 Rule is causing lower rates of reporting of sex-based harassment incidents, fewer investigations, more unfair and inaccurate investigation outcomes, more inadequate and harmful responses by schools, and fewer administrative complaints filed with the Department when students have experienced harassment. *See* Malone Decl. ¶¶ 10-12.

Proposed Intervenor-Defendants are Victim Rights Law Center (VRLC), a nonprofit advocacy organization that provides legal assistance to student survivors of sex-based harassment, and Jane Doe, a student who was raped and strangled by a classmate in fall 2024. VRLC and Jane Doe move to intervene to appeal the vacatur of the 2024 Rule's provisions that pertain to sex-based harassment, including the longstanding definition of hostile-environment sex-based harassment that the Department had enforced for decades before the 2020 Rule. They also intend to defend numerous protections for survivors in the 2024 Rule that Plaintiffs

and Intervenor-Plaintiffs did not specifically challenge.[2] *See* Malone Decl. ¶¶ 9-41; Doe Decl. ¶¶ 14-21.

## ARGUMENT

The vacatur of the 2024 Rule and consequent reversion to the 2020 Rule are directly harming VRLC because these changes frustrate VRLC's mission to redress and prevent sex-based harassment. They also require VRLC to divert significant resources from its education and advocacy programs to its legal assistance program. *See* Malone Decl. ¶¶ 9-14. They are harming Jane Doe, whose pending Title IX complaint was initiated under the 2024 Rule, because she is now required to submit to adversarial cross-examination in her upcoming Title IX hearing, which she reasonably fears will be a distressing and retraumatizing ordeal.[3] *See* Doe Decl. ¶¶ 4, 12-21.

---

[2] VRLC and Jane Doe do not, on this record, have standing to defend the provision of the 2024 Rule stating that discrimination on the basis of sex included discrimination on the basis of gender identity, 34 C.F.R. § 106.10, or the de minimis harm provision, § 106.31(a)(2). They also do not, on this record, have standing to defend § 106.40 ("Parental, family or marital status; pregnancy or related conditions"), which they understand Proposed Intervenor-Defendant A Better Balance seeks to defend. *See* Proposed Intervenor-Defendant A Better Balance's Motion to Intervene, ECF No. 152 (Feb. 26, 2025).

[3] In deciding a motion to intervene, "the court will accept as true all well-pleaded, nonconclusory allegations in the motion to intervene, in the proposed complaint or answer in intervention, and in declarations supporting the motion." *Martin v. Corr. Corp. of Am.*, 231 F.R.D. 532, 536 (W.D. Tenn. 2005) (quoting 6 James Wm. Moore, Moore's Federal Practice, § 24.03[1][a] (3d ed. 2005)).

4

VRLC and Jane Doe meet the standards for intervention by right and by permission. As this Court has correctly held, Rule 24 is construed "broadly . . . in favor of potential intervenors" by right or by permission. Order, ECF No. 50 at 1 (May 8, 2024) (quoting *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991)). VRLC and Jane Doe are entitled to intervene as of right because they are moving to intervene just weeks after this Court vacated the Rule, and because it appears Defendants will not appeal the Court's decision and therefore will not represent VRLC and Jane Doe's legal interests. Those interests are being harmed, and will continue to be harmed, absent intervention.

Alternatively, this Court should permit VRLC and Jane Doe to intervene because they are timely moving to intervene to protect their rights and they will not expand the scope of the issues before the Court. The questions they intend to argue on appeal are some of the same questions Defendants raised before this Court, including whether vacatur of the entire 2024 Rule was warranted, and whether severance would have been appropriate.

## I.    The vacatur of the 2024 Rule and reversion to the 2020 Rule are directly harming VRLC and Jane Doe.

The vacatur of the 2024 Rule and reversion to the 2020 Rule are inflicting direct and ongoing injuries on VRLC and Jane Doe. As a result, VRLC and Jane

Doe have Article III standing in this matter.[4] *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (standing requires injury in fact, traceability, and redressability). Among the numerous harms they are causing, vacatur of the 2024 Rule and reversion to the 2020 Rule are frustrating VRLC's mission by chilling students from requesting its services and from filing complaints and by requiring VRLC to spend more time and resources to assist students. *See* Malone Decl. ¶¶ 9-41. Likewise, Jane Doe is being harmed because the 2020 Rule, unlike the 2024 Rule, now requires her to submit to adversarial cross-examination in a live hearing, causing her tremendous fear and anxiety about whether to continue participating in her school's Title IX investigation. *See* Doe Decl. ¶¶ 14-21.

   a.  **Vacatur of the 2024 Rule and reversion to the 2020 Rule are harming VRLC to such an extent as to give rise to Article III standing.**

An organization like VRLC has standing where it can show "that the conduct challenged in the suit interfered with [its] 'core business activities.'" *Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living, LLC*, 124 F.4th 990, 993 (6th Cir. 2025) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024)). Specifically, an organization has standing where the challenged conduct

---

[4] Of course, Article III standing is not a prerequisite for intervention. *See Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 428 (6th Cir. 2008). It is, however, necessary to appeal where no original party is doing so. *See id.* As explained further below, VRLC and Jane Doe would thus be entitled to appeal as intervenor-defendants even if the original parties do not. *See id.*

"perceptibly impaired [its] ability to provide counseling and referral services" and created a "consequent drain on the organization's resources." *Id*. at 992 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). VRLC can show both impairment to its services and a drain on its resources.

First, the 2024 Rule's vacatur and resulting reinstatement of the 2020 Rule are impairing VRLC's ability to provide legal assistance to student survivors—as, in fact, another court already held when the 2020 Rule was previously in effect. *See Victim Rts. L. Ctr. v. Cardona*, 552 F. Supp. 3d 104, 126 (D. Mass. 2021), *order clarified*, 2021 WL 3516475 (D. Mass. Aug. 10, 2021). As that court held, VRLC "has experienced unwillingness and hesitancy from student victims to continue their Title IX complaints because of the [2020] Rule's cross-examination provisions," which "qualifies as a frustration of purpose" and a "direct impairment" because "[VRLC], an organization focused on assisting victims through the Title IX process, has experienced a reduction in requests for its services." *Id*.; *see also SurvJustice Inc. v. DeVos*, No. 18-CV-00535-JSC, 2018 WL 4770741, at *6 (N.D. Cal. Oct. 1, 2018), *order amended*, 2019 WL 1434144 (Mar. 29, 2019) (holding VRLC had standing to challenge the Department's 2017 Title IX guidance because it discouraged survivors from filing complaints, making it more difficult for VRLC to fulfill its mission).

Here, once again, VRLC can readily show that the 2024 Rule's vacatur and the Department's reversion to the 2020 Rule are impairing its mission to redress and prevent sex-based harassment because the change discourages students from requesting its services and filing Title IX complaints with schools. In just the first six weeks after this Court's decision, VRLC received 41% fewer requests for legal assistance compared to the first six weeks after the 2024 Rule became effective. Malone Decl. ¶¶ 11; *see also Victim Rts. L. Ctr. v. Cardona*, 552 F. Supp. 3d at 126; *SurvJustice*, 2018 WL 4770741, at *6.

VRLC's clients are now less willing to file or continue with a pending Title IX complaint of sex-based harassment for many reasons—not least because student survivors in higher education must now submit to adversarial, and often retraumatizing, cross-examination by their rapist or abuser's advisor in a live hearing. Malone Decl. ¶¶ 25-26. And during cross-examination, schools are now expressly prohibited from excluding unduly prejudicial or misleading questions or questions that assume facts not in evidence, which may include invasive and humiliating questions about a survivor's medical or family history. *Id.* ¶ 26. Furthermore, under the 2020 Rule, schools may now make broader use of the higher "clear and convincing evidence" standard in Title IX sex-based harassment investigations. *Id.* ¶ 31. This means student survivors who nevertheless choose to file or continue with a pending complaint are now less likely to achieve fair and

8

accurate outcomes in their investigations, making it less likely that named harassers will face consequences.

The 2024 Rule's vacatur and 2020 Rule's reinstatement further frustrate VRLC's mission of representing student survivors in school Title IX proceedings for several reasons. For example, schools are now required to dismiss Title IX complaints that: do not meet a narrow and stringent definition of "sexual harassment"; allege incidents occurring outside of a school program or activity or within a study abroad program, even when perpetrated against a student by a student or school employee; or are filed after the survivor has transferred, graduated, or been forced to drop out due to the harassment. *Id*. ¶ 16, 18. In addition, VRLC can no longer help clients file administrative complaints with the Department when an institution of higher education ignores sex-based harassment simply because it was reported to a lower-ranking school official, or when a school responds unreasonably, rather than with deliberate indifference, to a report of sex-based harassment. *Id.* ¶ 20, 23.

These are but a few of the many ways in which the reinstated 2020 Rule frustrates VRLC's mission to redress and prevent sex-based harassment. *See also id.* ¶ 16, 18, 20-23, 26, 28-40. Unless the vacatur is reversed, VRLC's clients will continue to receive more dismissals of Title IX complaints, obtain fewer fair and accurate investigation outcomes, file fewer administrative complaints with the

Department, and suffer decreased deterrence of sex-based harassment—just as VRLC saw when the 2020 Rule was previously in effect. *Id.* ¶ 10-12.

Second, as it did before in two previous cases, VRLC can show that its resources are being drained. *Victim Rts. L. Ctr.*, 552 F. Supp. 3d at 126 (holding "[VRLC] demonstrates that it has diverted resources" as a result of the 2020 Rule "in the form of reassignments, creating new material for clients, and spending more time advising clients"); *SurvJustice*, 2018 WL 4770741, at *6 (holding VRLC established diversion of resources because 2017 Title IX guidance required it "to spend additional staff time and resources that it has not had to spend in the past attempting to get school officials to respond [to its clients' complaints]"); *see also* Malone Decl. ¶ 14. For example, under the reinstated 2020 Rule, VRLC must now spend at least four times as long as it did before representing student survivors in higher education in grievance proceedings. This is because a hearing with cross-examination can take five to ten hours or even two days (requiring twelve to twenty-five hours of preparation), whereas a hearing without cross-examination can be completed in as little as an hour (requiring two to three hours of preparation). Malone Decl. ¶ 13, 27.

In addition, VRLC must now expend significantly more time and resources to provide legal assistance to its clients at all levels of education, including by: appealing wrongful dismissals of complaints, advocating for clients' rights to

10

supportive measures, petitioning school officials not to pursue an investigation or use confidential or impermissible evidence without a survivor's consent, preparing survivors in higher education for hostile and prejudicial cross-examination, appealing inaccurate investigation outcomes, educating Title IX officials about their Title IX obligations, protecting clients from an increased risk of retaliation, asserting clients' rights under other federal and state laws, and filing administrative complaints with state or local agencies instead of the Department. Malone Decl. ¶ 17, 19-22, 24, 27-31, 33-40.

Unless the vacatur is narrowed in scope, VRLC will be forced to continue diverting its resources toward its legal assistance program to meet its clients' increased needs. This will in turn reduce VRLC's ability to operate other programs—such as its education program, which trains survivor advocates and school administrators across the country, and its advocacy program, which promotes stronger state-level legislative protections for survivors. *Id.* ¶ 13; *see also Mote v. City of Chelsea*, 284 F. Supp. 3d 863, 887 (E.D. Mich. 2018) (holding plaintiff established diversion of resources by showing reduced capacity to provide other organizational services, including "education, counseling, and advocacy").

### b. Vacatur of the 2024 Rule and reversion to the 2020 Rule are harming Jane Doe greatly enough to give rise to Article III standing.

The reinstated 2020 Rule harms Jane Doe because it now requires her to be cross-examined by her rapist's advisor as a part of her Title IX investigation,

which she fears will be a retraumatizing experience that blames her for her own rape. *See* Doe Decl. ¶¶ 14-21. As a court held in a challenge to the 2020 Rule, a student has standing where she has an ongoing Title IX investigation, her university is applying the Rule, and the Rule is injuring her by, for example, requiring her to submit to adversarial cross-examination. *Victim Rts. L. Ctr.*, 552 F. Supp. 3d at 118, 123. Vacatur of the 2024 Rule and reversion to the 2020 Rule are similarly inflicting harms on Jane Doe that do more than enough to establish standing.

On October 14, 2024, while the 2024 Rule was in effect, Doe was raped and strangled by her classmate and neighbor in her on-campus residence. Doe Decl. ¶¶ 1-2. Days later, she reported the incident to her school's Title IX office, and her university initially launched a Title IX investigation under the 2024 Rule. *Id.* ¶¶ 4, 12-15. At that time, per the 2024 Rule, the university could choose to question her through one of two methods, neither of which would require her to be directly cross-examined by her rapist's advisor. *Id.* ¶¶ 14-15. After this Court's vacatur of the 2024 Rule, the university notified Doe that it would now address her complaint under the 2020 Rule, which requires her to submit to cross-examination by her rapist's advisor at an upcoming hearing in April 2025. *Id.* ¶¶ 16-17. And Doe will not just be subject to the kind of cross-examination she would face in court. The 2020 Rule requires schools to allow cross-examination questions that are unduly

12

prejudicial, misleading, and assume facts not in evidence. *See* 85 Fed. Reg. at 30248, 30361; Malone Decl. ¶¶ 26-27.

Doe is scared, anxious, and overwhelmed by the prospect of being cross-examined in a Title IX hearing. Doe Decl. ¶ 18. She worries that her rapist's advisor will use cross-examination to suggest that it was her fault that she was raped and strangled or that she deserved it. *Id*. This is hardly an idle concern, given that misleading and unduly prejudicial questions will be allowed. She feels that it is cruel to force her to go through a painful cross-examination after suffering the assault itself and summoning the courage to report. *See id*. Had she known the 2024 Rule would be vacated and the 2020 Rule would require her to be cross-examined, she would not have reported the incident at all. *Id.* ¶ 19. Faced with the current situation, she is now considering not participating in her upcoming Title IX hearing to avoid being retraumatized by cross-examination. *Id.* ¶ 20. This does not spare her from injury, however, as declining to be cross-examined will likely make her look less credible to the Title IX decision-maker, which in turn reduces her chances of holding her rapist accountable. *Id.* If this Court's vacatur is not limited, Doe will be forced to make a terrible choice between options that both produce harms she would not have to incur were the 2024 Rule still in place.

## II.    VRLC and Jane Doe are entitled to intervene as of right to defend their interests in this matter, which are likely now unrepresented.

A "court **must** permit anyone to intervene who" timely moves and "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a) (emphasis added). The Sixth Circuit enumerates four factors for intervention as of right: (1) timeliness; (2) the intervenors' "substantial legal interest"; (3) impairment of that interest absent intervention; and (4) existing parties' ability to adequately represent that interest. ECF No. 50 at 1 (quoting *Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999)). As this Court has observed, Rule 24(a)'s "general theme" is that the "burden is minimal" to intervene as of right. *Id*. at 1-2 (quoting *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 774 (6th Cir. 2022)). VRLC and Jane Doe easily meet that "minimal" burden. *Id*.

### a.  VRLC and Jane Doe's motion to intervene is timely because they are filing it within the timeframe to appeal.

Timeliness is "evaluated in the context of all relevant circumstances." *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990) (reversing district court and holding intervention was timely where intervenors moved weeks after learning defendants' summary judgment motion failed to raise important defenses

14

and would not adequately represent them). Whether a motion to intervene is timely depends on (1) the "point to which the suit has progressed"; (2) the "purpose for which intervention is sought"; (3) the "length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case"; (4) any "prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case"; and (5) any "unusual circumstances militating against or in favor of intervention." *Id*.

First, the point to which the suit has progressed does not cut against intervention. "[C]ourts often permit intervention even after final judgment, for the limited purpose of appeal." *United States v. City of Detroit*, 712 F.3d 925, 932 (6th Cir. 2013). An intervention motion can be timely where filed in the appeal period after final judgment, even many years into litigation, if filed soon after the intervenor learned the existing parties would not appeal. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 390 (1977). In fact, intervention can be timely after trial, final judgment, and a decision on appeal, if the existing parties decline to petition for rehearing en banc or a writ of certiorari. *Cameron v. EMW Women's Surgical Ctr., P.S.C.,* 595 U.S. 267, 280 (2022). Intervention can even be timely after the court has issued a conditional dismissal order, where the intervenors acted promptly after learning the parties likely no longer adequately represented their

15

interests. *Midwest Realty Mgmt. Co. v. City of Beavercreek*, 93 F. App'x 782, 786 (6th Cir. 2004). In sum, the point to which this suit has progressed poses no bar to intervention.

Second, the limited purpose for which intervention is sought—to appeal the vacatur of the 2024 Rule's protections for victims of sex-based harassment and to ensure that any remedy is appropriately tailored—strongly supports intervention. Vacatur of the 2024 Rule is directly harming VRLC and Jane Doe, who acted quickly after the grant of vacatur to intervene to appeal to alleviate those harms. *See* Malone Decl. ¶¶ 9-41; Doe Decl. ¶¶ 16-21; *In re Auto. Parts Antitrust Litig., End-Payor Actions*, 33 F.4th 894, 902 (6th Cir. 2022) (holding purposes-of-intervention prong may look at legitimacy of intervenors' interests and whether they acted "promptly in light of their stated purpose"). Intervention is "particularly appropriate" in a case like this that "implicates the public interest" and where the intervenor does not seek to expand the scope of issues before the court. *City of Detroit*, 712 F.3d at 932.

Third, the length of time preceding the application during which VRLC and Jane Doe knew of their interest in the case also strongly favors intervention. This prong addresses not how long the litigation has existed but whether the intervenor "sought to intervene as soon as it became clear that [its] interests would no longer be protected by the parties in the case." *Cameron*, 595 U.S. at 279-80; *see also*

16

*Midwest Realty*, 93 F. App'x at 787-88 (holding intervention was timely in final stage of case where intervenors "knew that this litigation could affect their legal interests from the beginning" but "it was not until there was reason to believe their interests were not being adequately represented by the City that they would have been alerted to the need to seek intervention").

VRLC and Jane Doe moved quickly after learning that this case affected their rights and that the Department would likely no longer protect their interests. VRLC did not know that the 2024 Rule would be fully vacated nationwide until January 9, 2025. Jane Doe did not learn of the vacatur and reversion to the 2020 Rule until her university's Title IX coordinator told her on January 27 and 29. *See* Doe Decl. ¶¶ 16-17. Following that, it remained uncertain whether the Department would defend the 2024 Rule. *See* 2025 Guidance (announcing resumed enforcement of 2020 Rule but noting the "Department of Justice is responsible for determining whether to appeal" this Court's vacatur order). Indeed, as recently as February 17, 2025, Defendants submitted a joint status report in another challenge to the 2024 Rule asserting that challenge was not moot because they had until March 10, 2025, to appeal this Court's judgment vacating the Rule. *See* Exhibit C, *Carroll Indep. School Dist. v. U.S. Dep't of Educ., et al.*, 4:24-cv-00461-O, ECF No. 85 at 1-2 (N.D. Tex. Feb. 17, 2025) [hereinafter *Carroll* Report].

In other words, VRLC and Jane Doe are moving to intervene just weeks after learning that this case would affect their rights, *even before* receiving confirmation that the Department will not appeal and so will not represent their interests. This is more than timely. *Midwest Realty Mgmt.*, 93 F. App'x at 787-88 (holding motion to intervene timely where filed "even before [intervenors'] suspicions of inadequate representation were confirmed"); *see also Benalcazar v. Genoa Twp.*, No. 2:18-CV-01805, 2020 WL 1853212, at *3 (S.D. Ohio Apr. 13, 2020) (motion to intervene timely where filed "within weeks" of learning, through publication of proposed consent decree, that defendant would not adequately represent intervenors' interests).

Fourth, a motion to intervene to timely appeal issues already raised in a case causes no prejudice to the original parties. *See McDonald*, 432 U.S. at 394-95 (holding existing party could "hardly contend that its ability to litigate the issue was unfairly prejudiced simply because [of] an appeal"). In *Cameron*, the Supreme Court held that the existing parties were not prejudiced by a motion to intervene to file petitions for rehearing en banc and certiorari, where the intervenor raised an issue that the defendant could have but failed to raise. 595 U.S. at 281-82. The Supreme Court faulted the lower court for failing to heed *McDonald*'s teaching that no prejudice flows from having to litigate an appeal that an existing party

could have taken but chose not to. *See id*. This motion to intervene for purposes of
appealing, like the one in *Cameron*, causes no prejudice to the existing parties.

Finally, unusual circumstances militate in favor of intervention. This Court's
vacatur of the 2024 Rule has adversely affected VRLC and Jane Doe's rights. *See
supra* Section I. Because the Court vacated the entire 2024 Rule and did not limit
the relief granted to the parties, it effectively adjudicated the rights and interests of
victims of sex-based harassment and the organizations that advocate for them, like
Jane Doe and VRLC. The Court did this without hearing from any such victims or
considering whether that harm was necessary to remedy Plaintiffs' and Intervenor-
Plaintiffs' alleged injuries. These unusual circumstances support allowing VRLC
and Jane Doe to defend the protections that the 2024 Rule provided them.

### b. VRLC and Jane Doe have substantial and legally protectable interests that this litigation is impairing.

VRLC and Jane Doe each have a "substantial legal interest" that is being
impaired "in the absence of intervention." *Grutter*, 188 F.3d at 398. The burden to
meet this element is "minimal," as the Sixth Circuit endorses a "rather expansive
notion of the interest sufficient" to intervene that sweeps beyond interests
sufficient to establish standing. *Grutter*, 188 F.3d at 398-99 (quotations omitted).
For example, students may intervene as of right to protect a "substantial legal
interest in educational opportunity," *id*. at 398, and in receiving protection from a
university's non-discrimination policy, *see Meriwether v. Trs. of Shawnee State*

19

*Univ.*, No. 1:18-CV-753, 2019 WL 2052110, at *9 (S.D. Ohio May 9, 2019). Even more broadly, "the possibility of adverse stare decisis effects" that would bind intervenors in other actions "provides intervenors with sufficient interest to join an action." *Jansen*, 904 F.2d at 342. As they meet the requirements for standing, *see supra* Section I, VRLC and Jane Doe have more than a sufficient interest in intervening to eliminate adverse stare decisis effects from this Court's vacatur of the 2024 Rule and to ensure Jane Doe and VRLC's clients' educational opportunity and non-discrimination protections under Title IX.

Disposition of this matter will impair VRLC and Jane Doe's ability to protect their rights. Fed. R. Civ. P. 24(a)(2). The "burden is minimal" to show impairment. *Wineries*, 41 F.4th at 774 (quotation omitted). The loss of Title IX protections for student survivors of sex-based harassment, including assault, is already impairing their access to educational opportunity. *See Grutter*, 188 F.3d at 399-400 (holding educational-opportunity interests of students, and organizations that advocated for them, would be diminished if plaintiffs prevailed in action challenging affirmative action, which was "more than sufficient to meet the minimal requirements of the impairment element"); *Doe No. 1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*, No. 3:22-CV-337, 2023 WL 348272, at *2 (S.D. Ohio Jan. 20, 2023) (student entitled to intervene as of right to defend school policy, where absent policy, she alleged she would suffer humiliation and harassment). And the

"potential stare decisis effects" of this Court's decision, which put both VRLC and Jane Doe at a "practical disadvantage in protecting [their] interest," also satisfy the impairment prong. *Wineries*, 41 F.4th at 774.

### c. VRLC and Jane Doe's interests are likely no longer protected.

It appears Defendants will likely not appeal, as the Department recently stated that "the binding regulatory framework for Title IX enforcement . . . excludes the vacated 2024 Title IX Rule," and that this is "consistent with" a recent executive order. 2025 Guidance. Therefore, it appears no existing party to this action protects VRLC and Jane Doe's interests. As the Supreme Court and Sixth Circuit have made clear, the burden of showing inadequate representation for purposes of intervention is "minimal"; the intervenor need only show that its interests "may be" inadequately represented. *Wineries*, 41 F.4th at 774 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). And a "decision not to appeal by an original party to the action can constitute inadequate representation of another party's interest." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997). Because VRLC and Jane Doe's rights will be impaired absent an appeal, and it appears no existing party will appeal, their interests are likely no longer represented *at all*. "An interest that is not represented at all is surely not 'adequately represented,' and intervention in that case must be allowed." *Grubbs v. Norris*, 870 F.2d 343, 347 (6th Cir. 1989).

21

### III. VRLC and Jane Doe satisfy the requirements to intervene by permission.

VRLC and Jane Doe also satisfy the even more lenient requirements for permissive intervention. A "court may permit anyone to intervene who" timely moves to intervene and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The court also considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*. at 24(b)(3).

VRLC and Jane Doe's motion is timely because, as explained *supra*, Section II.a, they moved to intervene just weeks after this Court vacated the 2024 Rule, impairing their interests, and shortly after it became apparent Defendants would likely not appeal and so would no longer represent their interests.

VRLC and Jane Doe have a defense that shares a common question of law with the main action. They seek to protect their rights under Title IX by defending the 2024 Rule's harassment provisions. Plaintiffs and Intervenor-Plaintiffs sought to vacate the entire 2024 Rule, undermining the protections it guaranteed to Jane Doe and VRLC's clients. "There can be only one winner in this clash" over whether the entire 2024 Rule should be vacated, so VRLC and Jane Doe "have presented a common question of law." *Buck v. Gordon*, 959 F.3d 219, 223 (6th Cir. 2020).

Intervention will not unduly delay or prejudice the existing parties' rights. In evaluating this prong, the Court must "weigh the benefits of resolving the common question of law presented by [Intervenors] against the risk of undue delay or prejudice to the original parties." *Id.* at 224. The benefits of allowing VRLC and Jane Doe to challenge the vacatur are significant—narrowing the relief granted in this matter would revive protections for student survivors of sex-based harassment, including sexual assault, domestic violence, dating violence, and stalking, nationwide. There is no undue delay or prejudice to the original parties, where VRLC and Jane Doe merely intend to notice an appeal that Defendants are entitled to take and will not expand the scope of the issues before the Court.

And "even if some prejudice may result, any complication of the case must be weighed against the value of resolving all competing legal positions within a single decisive lawsuit setting out the prevailing law for all parties to follow," which "weighs particularly heavily in favor of allowing intervention where, as here," there are "multiple lawsuits in various courts . . . raising essentially identical claims." *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 801-02 (E.D. Mich. 2020). Given that there are numerous similar lawsuits concerning the 2024 Rule, *see* ECF No. 126 at 9, all of which have the potential to adversely affect VRLC's clients' and Jane Doe's rights under Title IX, the "[s]trong interest in judicial economy and desire to avoid multiplicity of litigation wherever and

23

whenever possible . . . supports permissive intervention" to take an appeal to resolve the question of whether the 2024 Rule may be properly vacated in its entirety nationwide. *Buck*, 959 F.3d at 225.

## CONCLUSION

For the foregoing reasons, VRLC and Jane Doe respectfully ask this Court to grant their motion to intervene.

Dated: February 28, 2025

Respectfully submitted,

/s/ Jack S. Gatlin
Jack S. Gatlin
Gatlin Voelker PLLC
50 East Rivercenter, Suite 1275
Covington, KY 41011
Telephone: (859) 781-9100
jgatlin@gatlinvoelker.com

Shiwali Patel*
Rachel Smith*
Elizabeth Tang*
Elizabeth Theran*
National Women's Law Center
1350 I Street NW, Suite 700
Washington, DC 20005
Telephone: (202) 588-5180
spatel@nwlc.org
rsmith@nwlc.org
etang@nwlc.org
etheran@nwlc.org

Ellen Eardley*
Andrea Forsee*
Mehri & Skalet PLLC
2000 K Street NW, Suite 325

24

Washington, DC 20006
Telephone: (202) 822-5100
eeardley@findjustice.com
aforsee@findjustice.com

*Pro Hac Vice motions forthcoming
*Attorneys for Proposed Intervenor-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

_s/ Jack Gatlin_
Jack S. Gatlin (KBA 88899)