# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**

| | |
|---|---|
| **State of Tennessee; Commonwealth of Kentucky; State of Ohio; State of Indiana; Commonwealth of Virginia; and State of West Virginia**, *Plaintiffs*, | |
| *and* | |
| **Christian Educators Association International; A.C., by her next friend and mother, Abigail Cross**, *Intervenor-Plaintiffs*, | |
| v. | 2:24-cv-00072-DCR-CJS <br> Judge Danny C. Reeves |
| **Miguel Cardona, in his official capacity as Secretary of Education; and United States Department of Education**, *Defendants,* | |
| **A Better Balance**, *[Proposed] Intervenor-Defendant,* | |
| *and* | |
| **Victim Rights Law Center and Jane Doe**, *[Proposed] Intervenor-Defendant[s]* | |

## <u>DECLARATION OF STACY MALONE (VICTIM RIGHTS LAW CENTER)</u>

I, Stacy Malone, Executive Director, declare as follows:

1. I submit this declaration in support of the motion to intervene filed by Victim Rights Law Center ("VRLC") and Jane Doe in the above-captioned case for the purposes of appealing this Court's vacatur of the Title IX rule issued in 2024 entitled

*Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Funding Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024) ("2024 Rule"). Mem. Op. & Order (Jan. 9, 2025), ECF No. 143, *as amended* Order, ECF No. 145 (Jan. 10, 2025); *see also* J., ECF No. 144 (Jan. 9, 2025), *as amended* Am. J., ECF No. 146 (Jan. 10, 2025).

2.  As a result of this Court's vacatur of the 2024 Rule, the U.S. Department of Education ("Department") issued a guidance document clarifying that it has returned to enforcing the Title IX rule issued in 2020 entitled *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Funding Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020) ("2020 Rule"), which had previously been rescinded by the 2024 Rule. U.S. Dep't of Educ., Office for Civil Rights, Dear Colleague Letter (issued Jan. 31, 2025; revised Feb. 4, 2025), https://www.ed.gov/media/document/title-ix-enforcement-directive-dcl-109477.pdf.

3.  The vacated 2024 Rule strengthened and clarified protections for student survivors of sex-based harassment, among others. In contrast, the reinstated 2020 Rule weakens protections for student survivors of sex-based harassment, including sexual assault, dating violence, domestic violence, and stalking. VRLC moves to intervene specifically to appeal the vacatur of the 2024 Rule's provisions that pertain to sex-based harassment.

4.  I have compiled the information in the statements set forth below through personal knowledge. I have also familiarized myself with the 2024 Rule and 2020 Rule in order to understand the immediate impact of the vacatur of the 2024 Rule and resultant reinstatement of the 2020 Rule on VRLC. If I am called as a witness in these proceedings, I could and would testify competently to these facts.

5. I have been employed as VRLC's Executive Director since October 2010. In that position, I manage the strategic direction, operations, and development for VRLC's national programs and direct services. I also oversee the organization's management team, finance, fundraising and development, media relations, human resources, and project development. Consequently, I am familiar with and have participated in the organization's Title IX work as an attorney, mentor, and supervisor. I oversee VRLC's seven attorneys who manage the majority of its Title IX related cases in K-12 and higher education settings.

6. Founded in 2003, VRLC is a nonprofit organization headquartered in Massachusetts dedicated solely to serving the legal needs of victims of sex-based harassment, including survivors of sexual assault, dating violence, and stalking. VRLC's mission is to provide legal representation to such victims to help rebuild their lives and to promote a national movement committed to seeking justice for every victim.

7. VRLC provides legal services to help restore victims' lives after experiencing sex-based harassment. VRLC's services ensure that survivors can stay in school; protect their physical safety and academic needs; protect their privileged and confidential mental health, medical and education records; preserve their employment and/or scholarships; maintain their safe housing; secure their immigration status; and swiftly access victim compensation and other benefits.

8. As part of its work, VRLC provides legal services and/or facilitates the provision of legal services to students who have experienced sex-based harassment. Because almost half of VRLC's clients are under the age of 24, a substantial portion of its practice is providing education-related legal consultation and representation. VRLC attorneys represent

victims to communicate effectively with school administrators, acquire supportive measures to restore and preserve their education, prepare for and attend grievance proceedings, file appeals, and if necessary, file complaints against their schools with the Department.

***Overview of injuries to VRLC: vacatur of 2024 Rule §§ 106.2, 106.8, 106.11, 106.44, 106.45, and 106.46***

9. VRLC moves to intervene on its own behalf because it has been, and will continue to be, harmed by the vacatur of the 2024 Rule's provisions pertaining to sex-based harassment and resultant reinstatement of the 2020 Rule.

10. These changes concretely frustrate VRLC's mission of providing legal assistance to student survivors in their schools' Title IX proceedings. For example, as detailed further below, these changes chill many student survivors from reporting sex-based harassment to their schools, and, for many who do report, either foreclose investigation of their Title IX complaints entirely or decrease the likelihood of fair and accurate investigation outcomes for those that survive dismissal. The changes also reduce deterrence of sex-based harassment and bar many of VRLC's clients from filing administrative complaints against their schools with the Department.  In addition, the increased time and resources necessary to advise each client also means VRLC is able to help significantly fewer students, which in turn further exacerbates underreporting of sex-based harassment.

11. These injuries are not speculative. Because the reinstated 2020 Rule imposes procedures that are unfair and hostile to student survivors, VRLC clients are already more hesitant to continue their pending Title IX complaints that were initiated under the 2024 Rule or to file new Title IX complaints based on incidents of harassment that occurred while the

2024 Rule was in effect (August 1, 2024, to January 8, 2025).  In the first six weeks following the 2024 Rule's vacatur, VRLC received 41% fewer requests for legal assistance than in the first six weeks following the implementation of the 2024 Rule.

12. These injuries are also consistent with VRLC's previous experiences when the 2020 Rule was in effect from August 1, 2020, to July 31, 2024. At that time, there was an immediate decline in the number of victims willing to make a report, file a formal complaint, or continue a pending investigation. Consequently, VRLC received fewer requests from students for legal assistance with their school's Title IX proceedings or to file an administrative complaint against their school with the Department. Furthermore, due to unfair and unclear provisions in the 2020 Rule, VRLC spent more time and resources to assist each client, while also achieving fewer beneficial outcomes for them.

13. The 2024 Rule's vacatur and resultant reinstatement of the 2020 Rule have also diverted VRLC's resources. For example, VRLC now spends more time opposing dismissals of new complaints or pending complaints initiated under the 2024 Rule and spends at least four times as much time as before to prepare for a college or graduate student client's grievance process, reducing the overall number of survivors VRLC can represent. In addition, VRLC has been forced to devote fewer resources to its other programs and services; these include a nationwide education program providing training and support to legal advocates, attorneys, sexual assault nurse examiners, campus administrators, and other stakeholders about legal issues impacting survivors, as well as an advocacy program to educate policymakers on the best ways to protect student survivors beyond the federal Title IX requirements. *See*, *e.g.*, Mass. Gen. Laws Ann. ch. 6, §§ 168D, 168E (West).

14. Again, VRLC also experienced these injuries after the Department first issued the 2020 Rule. For example, in 2020, VRLC was forced to partially reassign an attorney from its education program to also take clients and supervise other staff attorneys in its direct client services program, as preparing for each Title IX proceeding required significantly more supervision, skill, and resources than before. As another example, one institution of higher education assured a VRLC client that her complaint was within the scope of the 2020 Rule, but after conducting an exhausting investigation, the institution suddenly announced that the complaint actually fell outside the scope of the 2020 Rule and summarily dismissed it—causing VRLC to expend more than a year of time and resources with no result for the victim.

15. The following are more specific examples of how the vacatur of the 2024 Rule and resultant reinstatement of the 2020 Rule frustrate VRLC's mission and divert its resources.

***Mandatory dismissal of complaints: vacatur of 2024 Rule's §§ 106.2, 106.11, 106.44(a), and 106.45(a)***

16. The reinstated 2020 Rule's narrow definition of "sexual harassment" and narrow scope of Title IX's jurisdiction require schools to dismiss a Title IX complaint of sex-based harassment if: (i) the incident is so "severe" *or* "pervasive" as to limit a student's access to education but not so "severe" *and* "pervasive" as to "deny" a student's access to education; or (ii) the harassment causes a *hostile environment* within an educational "program or activity" inside the United States, but the *underlying incident* occurs outside of an educational "program or activity" or outside the United States. These changes frustrate VRLC's mission of representing student survivors, as many incidents of sex-

based harassment its clients experience are no longer recognized under the Title IX rules. This is especially harmful because there are over 300 school districts and 130 higher education campuses in Massachusetts, and many of VRLC's student survivors experience sexual assault or dating violence at off-campus parties and apartments; while socializing with students from other local area schools; or going on vacations, spring break, or school-sponsored study abroad trips that are not within the scope of the 2020 Rule. Additionally, many schools may choose to stop providing supportive measures to those complainants whose complaints must now be dismissed—just as they did when the 2020 Rule was previously in effect—leaving VRLC clients with fewer safety, academic, housing, and other critical options to meet their education needs post-assault.

17. These changes in the Title IX rules also divert VRLC's resources from other mission-critical work in order to appeal schools' wrongful dismissals of student survivors' complaints under the reinstated 2020 Rule, including complaints that may have been pending for many months or even more than a year and are close to obtaining a final decision from the school. As they did when the 2020 Rule was previously in effect, VRLC staff must once again spend more time advocating for clients' rights to supportive measures when their complaints are mandatorily dismissed, including by asserting students' rights under other federal laws besides Title IX, which can often require more burdensome and invasive documentation.

***Inequitable dismissal of complaints involving unaffiliated parties: vacatur of 2024 Rule's §§ 106.2, 106.45(d)***

18. These changes frustrate VRLC's mission, as they did when the 2020 Rule was previously in effect, by: (i) requiring dismissals of complaints filed by student survivors who wait to

file until after they graduate or transfer to another school due to the retaliatory risks associated with, for example, filing a complaint against an athletics coach or faculty advisor; (ii) encouraging schools to mistakenly believe that they must dismiss a complaint whenever a survivor transfers to another school mid-investigation, even if the survivor had been enrolled in the school at the time they filed the complaint; and (iii) encouraging schools to mistakenly attempt to end supportive measures to a student survivor when their complaint is dismissed because the respondent has graduated, resigned, retired, or transferred to another school mid-investigation. These changes chill survivors from reporting; put survivors at risk of being deprived of counseling, tutoring, and other critical supportive measures; ensure no accountability for many incidents of sex-based harassment; and reduce deterrence by creating a loophole for respondents to escape accountability under Title IX.

19. They also divert VRLC's resources from other critical work by forcing VRLC to spend extra time arguing for a student survivor's right to access supportive measures or to continue their Title IX proceeding instead of being erroneously dismissed, rather than spending that valuable time advocating for the survivor's rights during their Title IX proceeding—just as they did when the 2020 Rule was first issued. For example, VRLC must spend more time educating school officials about ways to prevent future harassment, even after a respondent has withdrawn from a school, by issuing no-trespass directives, banning the respondent from future on-campus or alumni activities, or establishing a policy that the school will restart an investigation if a respondent later re-enrolls.

*Reduced responsibilities for schools and employees: vacatur of 2024 Rule's §§ 106.2, 106.44(a), 106.44(b), 106.44(c), 106.44(d), 106.44(e), and 106.44(f)*

20. First, under the 2020 Rule, employees at institutions of higher education are no longer required to either (i) report possible sex-based harassment to the Title IX coordinator or (ii) tell the disclosing student survivor how to notify the Title IX coordinator. And institutions of higher education are not required to address sexual harassment at all unless the Title IX coordinator or a high-ranking employee has "actual knowledge" of the harassment. These changes frustrate VRLC's mission because VRLC can no longer help student survivors in higher education file administrative complaints with the Department when their institutions do not respond adequately to sex-based harassment simply because it was reported to the "wrong" school official, such as a trusted coach, faculty member, or resident advisor. Just as they did when the 2020 Rule was previously in effect, these changes also divert VRLC's resources from other mission-critical work by requiring staff attorneys to spend additional time filing administrative complaints with state or local agencies under state or local laws that require institutions of higher education to address both known and suspected sex-based harassment and to address sex-based harassment reported to a larger set of school employees.

21. Second, the reinstated 2020 Rule does not include the 2024 Rule's provision allowing schools to designate certain employees as "confidential employees" to whom students could disclose sex-based harassment and from whom they could receive advice without triggering a report or complaint to the Title IX coordinator. This change frustrates VRLC's mission to protect survivors' privacy and autonomy because due to the confusing timing of the 2024 Rule's vacatur, clients may now inadvertently disclose

sexual assault or dating violence to an employee who was previously designated as a confidential employee while the 2024 Rule was in effect (August 1, 2024 to January 8, 2025), and subsequently have the incident reported to the Title IX coordinator without their consent. These changes will also divert VRLC's resources by requiring staff attorneys to spend more time petitioning Title IX coordinators not to pursue formal complaints that are initiated against the wishes of a client as a result of such inadvertent disclosures.

22. Third, the vacatur of the 2024 Rule frustrates VRLC's mission to prevent sex-based harassment and protect survivors' privacy and autonomy because Title IX coordinators are no longer required to: (i) monitor for and address barriers to reporting sex-based harassment, even though VRLC frequently informs schools of specific barriers to reporting based on clients' experiences at those schools; (ii) use information learned at public awareness events about sex-based harassment at an institution of higher education (*e.g.*, Take Back the Night) to inform the institution's prevention efforts; or (iii) consider a set of enumerated factors, including a survivor's reasonable safety concerns, to determine whether to initiate or continue a Title IX complaint against the survivor's wishes, which had provided a safeguard for survivors who reported sex-based harassment but were unsure if they wanted to trigger a formal investigation. Indeed, since the 2024 Rule's vacatur, VRLC has already had multiple clients' requests to withdraw their complaints be denied because the 2020 Rule does not articulate a set of enumerated factors for Title IX coordinators when considering complainants' withdrawal requests. These changes also divert VRLC's resources by requiring staff attorneys to spend more

time petitioning Title IX coordinators not to pursue complaints that are initiated against the wishes of a client.

***Unreasonable standard of care: vacatur of 2024 Rule's §§ 106.44(a), 106.44(f), 106.44(k), 106.45(d), and 106.45(h)***

23. These changes frustrate VRLC's mission to provide survivors with legal assistance because student survivors can no longer file administrative complaints with the Department when their schools respond *unreasonably* to sex-based harassment or fail to respond "promptly and effectively" but must now wait until their schools' responses rise to the level of "*clearly unreasonable*" or "deliberate indifference." This significant shift forces survivors to accept weaker or ineffective responses from their schools, which may include denial of important supportive measures, unnecessary delays, burdensome investigation procedures, and perhaps even punitive measures because schools are now permitted to take "unreasonable" actions toward survivors. For example, when the 2020 Rule was previously in effect, one VRLC client suffered five months of mistreatment, including repeated victim-blaming and retraumatizing questions during her investigation and denial of her request to withdraw her formal complaint. But it was only after her institution prevented her advisor from conducting cross-examination at her live hearing and failed to inform her of the investigation outcome that she had grounds to submit an administrative complaint under the reinstated 2020 Rule's "deliberate indifference" standard.

24. These changes also divert VRLC's resources by requiring staff attorneys to identify alternative state or local laws that require schools to respond "reasonably" to sex-based harassment and to file administrative complaints with state or local agencies instead of

with the Department. For example, just as it did when the 2020 Rule was previously in effect, VRLC expects to file many more complaints on behalf of K-12 student survivors through Massachusetts' Department of Elementary and Secondary Education's Problem Resolution System, even though the state agency is unfortunately less adept at addressing complaints of sex-based harassment as it has historically relied on the Department to address them.

***Required retraumatization of survivors through live cross-examination: vacatur of 2024 Rule's §§ 106.45(g) and 106.46(f)***

25. While the 2024 Rule was in effect and the 2020 Rule was not in effect, VRLC's higher education clients in Massachusetts were not required to be cross-examined in a live hearing by their respondent's advisor of choice in Title IX proceedings.

26. The reinstated 2020 Rule's requirement of live hearings and adversarial cross-examination in institutions of higher education frustrates VRLC's mission to deter and redress sex-based harassment by chilling reporting by student survivors who will no longer file complaints or continue their pending Title IX proceedings because: (i) they fear being retraumatized by hostile cross-examination by their respondent's advisor, who is often an attorney, angry parent or fraternity brother, or an athletics coach or professor with whom the complainant may have a class or future affiliation; (ii) Title IX respondents' attorneys frequently use cross-examination during a school's Title IX live hearing as a way to gather impeachment evidence for use against the survivor in a concurrent criminal proceeding; and (iii) the reinstated 2020 Rule expressly prohibits schools from excluding unduly prejudicial or misleading questions or questions that assume facts not in evidence, which may include invasive and humiliating questions

about a survivor's medical or family history. Indeed, both when the 2020 Rule was previously in effect and now after the vacatur of the 2024 Rule, many VRLC clients were and are afraid of being subjected to hostile cross-examination by their respondent's advisor and of having their Title IX cross-examination answers weaponized against them in their concurrent criminal proceeding. Furthermore, students who forgo or withdraw from an investigation for any of these reasons are no longer able to file an administrative complaint with the Department.

27. These changes also divert VRLC's resources because it now takes at least four times the amount of time to prepare adversarial cross-examination of each opposing party and all witnesses, thus reducing the overall number of survivors VRLC can represent. This is because a hearing without cross-examination can be completed in as quickly as one hour (and typically requires two to three hours of preparation), but a hearing with adversarial cross-examination can take five to ten hours or even last two days (and can require twelve to twenty-five hours of preparation). In fact, VRLC must now spend more time preparing a client for a Title IX live hearing than preparing a client for testimony in a court proceeding, such as a hearing for a civil protection order (CPO) (Mass. Gen. Laws ch. 209A or ch. 258E two-party hearing), as these court hearings comply with the rules of civil procedure and do not require VRLC attorneys to prepare a student survivor on how to respond to misleading or unduly prejudicial cross-examination questions.

*Unfair, delayed, and inaccurate investigations: vacatur of 2024 Rule's §§ 106.45(b) and 106.45(h)*

28. First, the reinstated 2020 Rule's requirement that two different people as investigator and decisionmaker in each Title IX proceeding frustrates VRLC's mission to provide fair,

timely, and accurate outcomes for its clients because: (i) decision-makers are often drawn from a wider pool of school employees than investigators and, therefore, tend to be less highly trained and skilled at conducting trauma-informed questioning; (ii) decision-makers often ask duplicative questions that were already asked by the investigator (and often answered by a party or witness with greater accuracy while their memories were fresher), which also forces survivors to unnecessarily relive painful memories without any evidentiary benefit to the school; and (iii) decision-making panels are often comprised of three people, so scheduling a live hearing now requires coordinating the schedules of at least eight people (including the investigator and/or Title IX coordinator, the two parties, their advisors, and any additional witnesses), which means hearings can take place months after an investigation ends, eroding the accuracy of all parties' and witnesses' statements and making a timely decision all but impossible. These changes also divert VRLC's resources because staff attorneys must now dedicate more time preparing clients to answer decision-makers' duplicative questions, supplementing decision-makers' knowledge of previous fact-finding already done by investigators, and assisting previous clients with re-opened investigations.

29. Second, schools are no longer prohibited from using a survivor's communications with a confidential employee or a witness's medical or mental health records without their consent, frustrating VRLC's mission of protecting survivors and their supporting witnesses from unnecessary and potentially traumatizing invasions of privacy that can dissuade them from participating in an investigation or seeking medical help or counseling. This change also diverts VRLC's resources, as staff attorneys must now

spend more time opposing schools' attempts to use or disclose confidential communications and sensitive medical and mental health records.

30. Third, VRLC's mission to obtain accurate outcomes for its clients is frustrated, as it was when the 2020 Rule was previously in effect, because schools are no longer instructed that a survivor's prior consensual sexual relationship with the respondent does not by itself imply consent to the alleged sexual assault or dating violence. VRLC must also now divert its resources to appeal erroneous decisions made based on a decision-maker's improper belief that prior consent to sexual activity implies or establishes consent to all future sexual activity.

31. Fourth, schools in some cases must now use the more burdensome clear and convincing evidence standard to resolve Title IX complaints against student respondents even if it uses the equitably burdensome preponderance of the evidence standard to resolve complaints of physical assault or race harassment against students. These changes frustrate VRLC's mission because: (i) it tilts the scales against survivors and in favor of accused rapists and abusers, making it harder for survivors to secure a favorable decision; and (ii) chills survivors from reporting in the first place, leading to fewer complaints and reduced deterrence of sex-based harassment. These changes also divert VRLC's resources, because staff attorneys must spend more time obtaining additional evidence and preparing more supporting witnesses in order to meet the higher threshold demanded by the clear and convincing evidence standard.

32. Furthermore, all of the above changes frustrate VRLC's mission to enforce students' Title IX rights as they are no longer able to seek an administrative remedy from the

Department for unfair, untimely, and inaccurate investigation procedures that are now permitted under the reinstated 2020 Rule.

***Required harmful actions and prohibited beneficial actions: vacatur of 2024 Rule's §§ 106.2, 106.44(h), 106.44(i), 106.44(k), 106.45(k), and 106.46(j)***

33. First, the reinstated requirement that complaints be written frustrates VRLC's mission to redress sex-based harassment, just as it did when the 2020 Rule was previously in effect, because K-12 students and their parents frequently make oral requests for a Title IX investigation that will again go ignored. This causes valuable time to be wasted before students and their parents realize that no investigation will take place, during which the student may have fallen considerably behind in school. This change also diverts VRLC's resources because staff attorneys who are brought in at that later stage must expend significant resources to address the compounded harm caused by the delayed investigation. For example, safety or academic concerns that may have been addressed by sanctions resulting from a prompt investigation may now require special education services, disability accommodations, or civil protection orders.

34. Second, VRLC's mission to protect student survivors is frustrated because schools: (i) can no longer remove a respondent on an emergency basis to prevent foreseeable harm to a survivor until the harm is merely moments away ("immediate"); and (ii) must disregard even an immediate threat that a harasser, rapist, abuser, or stalker may pose to a survivor's psychological health (the 2020 Rule requires harm to be "physical"). For example, when the 2020 Rule was previously in effect, one institution refused to remove a Title IX respondent from campus on an emergency basis even after he was incarcerated for raping VRLC's client because the institution did not consider the threat he posed to be

sufficiently "immediate," causing the survivor to suffer significant harm, including socially and academically and generally feeling unsafe on campus. With the 2020 Rule reinstated, VRLC must again divert its resources from other critical work to petition school officials for supportive measures that may be less effective than an emergency removal, such as a mutual no-contact order or a housing transfer, in order to protect its clients from imminent and serious physical harms or immediate psychological harms.

35. Third, VRLC's mission to prevent sex-based harassment is frustrated because the Title IX rules no longer explicitly instruct schools that student-employee respondents can be placed on administrative leave during their investigation, causing institutions to mistakenly believe that student-employee respondents with pending investigations must be allowed to continue serving as a resident advisor, teaching assistant, or other position that enables their further harassment of the survivor—as well as other students. For example, when the 2020 Rule was previously in effect, one of VRLC's clients had a resident advisor who used his master key to enter a survivor's dorm room during their pending investigation, but the institution still refused to place him on administrative leave. VRLC must again divert its resources to (i) educate school officials about their ability to put student-employee respondents on paid administrative leave; or (ii) failing that, petition school officials for supportive measures that may be less effective than administrative leave in order to protect its clients from further harassment by student-employee respondents.

36. Fourth, student survivors in higher education can no longer choose to resolve complaints against an employee harasser through an informal resolution, such as a mediation or restorative process. Furthermore, survivors at all levels of education can no longer initiate

an informal resolution without filing a written complaint. These changes frustrate VRLC's mission to redress and prevent sex-based harassment because: (i) employees' protections—especially tenured faculty's protections—in formal disciplinary proceedings are so extensive and rigorous that most college and graduate students are highly unwilling to report an employee harasser at all unless they have the option of choosing an informal resolution; (ii) reduced reporting of faculty and staff harassers enables more serial assailants and abusers to escape accountability and continue their predation of students; and (iii) many survivors do not want to submit a written complaint against a well-connected, wealthy, or famous respondent due to concerns about defamation liability, privacy, or detrimental impacts on a concurrent criminal proceeding, but they do want to address the harm through an informal resolution. These changes also divert VRLC's resources by requiring staff attorneys to spend more time in employee-on-student cases: (i) seeking additional supportive measures to ensure the survivor can complete their education, as informal resolution is no longer permitted and investigation is not a realistic option; and (ii) protecting from retaliation students who choose, despite the tremendous risks and costs to their academic and professional careers, to endure an investigation against their faculty harasser—who may be their dissertation advisor or department chair—in order to protect their classmates from future abuse.

### *Inadequate employee training: vacatur of 2024 Rule's § 106.8(d)*

37. First, because of the vacatur of the 2024 Rule, school employees who are not Title IX personnel are no longer required to be trained on Title IX compliance at all. This change frustrates VRLC's mission to prevent sex-based harassment because school employees are now not only less likely to be able to recognize sex-based harassment when they

witness it (*e.g.*, in the classroom, on the playground, during a school trip), but they also will be less likely to report such incidents to the Title IX coordinator, including when they learn of it from a student. This means more harassment and violence will persist and proliferate in schools without proper intervention. This change also diverts VRLC's resources, as it did when the 2020 Rule was previously in effect, because it forces staff attorneys to expend significant resources, particularly when representing survivors in K-12 schools, to: (i) educate school administrators of their Title IX obligations and prevent and correct procedural missteps; (ii) correct misinformation about Title IX shared by schools to students and families; and (iii) conduct extensive searches for schools' Title IX policies and procedures because they are not available online and/or there are no well-trained staff who can answer Title IX-related questions.

38. Second, Title IX investigators and decision-makers are no longer required to be trained on which types of evidence are impermissible in an investigation (*i.e.*, privileged, treatment records, and sexual history evidence). This change frustrates VRLC's mission to provide student survivors with legal assistance because Title IX investigators and decision-makers are now more likely to traumatize and harm VRLC's clients with invasive and inappropriate questioning and to make inaccurate final decisions in Title IX proceedings. It also diverts VRLC's resources because staff attorneys must now spend more time opposing investigators' and decision-makers' requests for impermissible evidence and preparing clients and their supporting witnesses to refuse to answer questions seeking impermissible evidence.

39. Third, employees who help implement Title IX grievance procedures or who have the authority to modify or terminate supportive measures but are not coordinators,

investigators, or decision-makers are no longer required to be trained on Title IX compliance at all. This frustrates VRLC's mission to provide student survivors with legal assistance because these employees are now more likely make mistakes when implementing investigation procedures or making decisions regarding supportive measures, resulting in more unfair, delayed, inaccurate, and harmful outcomes for VRLC's clients. These changes also divert VRLC's resources by requiring staff attorneys to spend more time informing these employees about how they have violated the Title IX rules and petitioning them to remedy their errors in a timely fashion.

40. Finally, Title IX coordinators are no longer required to be trained on their own responsibilities as coordinators. These changes frustrate VRLC's mission because Title IX coordinators who lack training on critical aspects of their job are more likely to violate complainants' privacy and autonomy when overriding their consent to investigate, more likely to produce mishandled investigations and supportive measures, and more likely to botch their recordkeeping duties, which can also make it more difficult for VRLC to later file an administrative complaint against the school with the Department. These changes also divert VRLC's resources because staff attorneys will need to spend more time explaining and opposing Title IX coordinators' actions that violate the Title IX rules.

*Conclusion*

41. As a whole, the vacatur of the 2024 Rule and resultant reinstatement of the 2020 Rule are injuring VRLC by making it more difficult and resource-intensive—and sometimes impossible—for VRLC to ensure survivors can stay in school; protect their safety and academic needs; protect their privileged and confidential mental health, medical and education records; preserve their employment and/or scholarships; and maintain their safe

housing. By chilling reporting of sex-based harassment, reducing the number of investigations that schools are permitted to conduct, allowing schools to respond unreasonably to sex-based harassment, and mandating inequitable grievance procedures that are skewed in favor of respondents, there is and will be less justice for victims and less deterrence of sex-based harassment. The drain on VRLC's resources is already stretching and will continue to stretch its ability to provide legal services for victims beyond current funding parameters. In VRLC's 21 years of experience providing services to survivors of sex-based harassment, including in Title IX proceedings, the provisions of the 2020 Rule are the most voluminous, drastic, and harmful Title IX provisions that VRLC has seen. These drastic changes to Title IX have harmed and will continue to harm victims of sex-based harassment, including sexual assault, dating violence, domestic violence, and stalking, across the country.

42. I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 28, 2025.

Stacy Malone, Esq.