# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

**State of Tennessee; Commonwealth of Kentucky; State of Ohio; State of Indiana; Commonwealth of Virginia; and State of West Virginia**,
*Plaintiffs*,

and

**Christian Educators Association International; A.C., by her next friend and mother, Abigail Cross**,
*Intervenor-Plaintiffs*,

v.

**Miguel Cardona, in his official capacity as Secretary of Education; and United States Department of Education,**
*Defendants,*

**A Better Balance,**
*[Proposed] Intervenor-Defendant,*

and

**Victim Rights Law Center and Jane Doe,**
*[Proposed] Intervenor-Defendants*

2:24-cv-00072-DCR-CJS
Judge Danny C. Reeves

## DECLARATION OF JANE DOE

I, Jane Doe, declare that I am over the age of 18 and competent to testify to the following facts:

**The Sexual Assault**

1. I was an undergraduate student at a state university ("the University") in Massachusetts from January 2024 to November 2024. During my sophomore year, I was 19 and lived in an on-campus apartment owned by the University.

2. On October 14, 2024, my friend brought another classmate ("Respondent") to visit my apartment. This was the first time I had met Respondent in person. That same day, Respondent returned to my on-campus apartment and raped and strangled me.

3. On October 17, my roommate accompanied me to a local hospital to be examined by a sexual assault nurse examiner (SANE). The SANE collected a rape kit from me within the recommended 72-hour window.

4. On October 18, I reported the rape and strangulation to the University's Title IX office.

**Complete Loss of Education**

5. After this incident, I hit rock bottom. I had no motivation to do anything, and I couldn't see any way out of my despair. There were many days when I didn't eat anything at all.

6. I did not feel safe leaving my apartment and stopped going to class starting on October 15, the day after Respondent raped and strangled me. My friends dropped off food for me from campus dining to ensure that I could continue to eat. The only times I left my room were to go with my roommates somewhere off campus, where I felt less afraid of running into Respondent and his friends.

7. Shortly after the incident, I discovered that Respondent had been living with his friends in my on-campus apartment building at the time of the incident. Our two apartments were the only two apartments on our floor.

8. On October 21, my University issued a mutual no-contact order to Respondent and me. However, the University's no-contact order did not prohibit Respondent's friends from harassing me.

9. Respondent's friends would frequently stare at me menacingly when I left my apartment. They would also yell at me and my roommates and flip us off when they saw us leaving

campus. One night, a group of men walked by my apartment window and mocked me for being raped. They yelled loudly so I could hear: "Help me! I'm being raped!"

10. Although the Title IX coordinator asked my professors if they could give me academic supportive measures, such as allowing me to attend class on Zoom or adjusting some assignment deadlines, none of them agreed to do so.

11. Without the option of attending class online to avoid Respondent and his friends, I did not go to class again after October 14. Eventually, when I realized that I was going to fail all of my classes by the end of the semester, I made the difficult decision to withdraw from the University on November 22.

**Effect of 2024 Title IX Rule's Vacatur on My University's Title IX Investigation**

12. On October 23, 2024, the University emailed Respondent and me a letter about our upcoming Title IX investigation.

13. On November 21, a Title IX investigator interviewed me.

14. On December 20, I met with a Title IX coordinator and Title IX investigator to discuss the next steps in my Title IX proceeding. The Title IX coordinator explained that there were two options as next steps in my investigation.

15. According to the University's Title IX policy at the time, the first option was "shuttle questioning," where Respondent and I could propose questions and follow-up questions for each other, and a decision-maker would ask those questions in one-on-one meetings with each of us. The second option was a live hearing, where Respondent and I would answer questions asked by a decision-maker and could participate virtually from separate physical locations. The Title IX office would decide which option to use.

16. But on January 27, 2025, the Title IX coordinator emailed me to say that I would now have to participate in a live hearing with cross-examination. I was told to hold April 3, April 4, and April 11 as potential dates for my hearing.

17. On January 29, I met with the Title IX coordinator to discuss these changes in person. She explained that the 2024 Title IX Rule is no longer in effect, and the 2020 Title IX Rule is in effect again. Therefore, I will have to submit to cross-examination in a live hearing. According to the University's new Title IX policy, I will be cross-examined by Respondent's advisor.

18. I am scared, anxious, and overwhelmed by the prospect of being cross-examined in a Title IX hearing. I worry that Respondent's advisor will use cross-examination to ask me questions that try to poke holes in my story to make it sound like it was my fault I was raped or that I deserved to be raped. This feels so different from the University's previous process. I think it's cruel to force me to go through cross-examination after everything I've already gone through and having the courage to report.

19. If I had known that I would have to be cross-examined, I never would have reported to the University's Title IX office in the first place.

20. I am considering choosing not to participate in my upcoming Title IX hearing to avoid being cross-examined. But I worry that this could make me look less credible to the Title IX decision-maker, which reduces my chances of holding Respondent accountable.

21. I hope to intervene in this case in order to appeal this Court's vacatur of the 2024 Rule, so that I do not have to choose between being subjected to a distressing cross-examination or not being cross-examined and therefore reducing my chances of holding Respondent accountable under the 2020 Rule.

22. I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 28, 2025.

_____
Jane Doe

5