UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| STATE OF TENNESSEE, *et al.*, <br><br> Plaintiffs, <br><br> and <br><br> CHRISTIAN EDUCATORS ASSOCIATION INTERNATIONAL and A.C., by her next friend and mother, Abigail Cross, <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> LINDA MCMAHON,[1] in her official capacity as Secretary of Education, and UNITED STATES DEPARTMENT OF EDUCATION, <br><br> Defendants. | Case No. 2:24-cv-00072-DCR-CJS <br> Chief District Judge Danny C. Reeves <br> Magistrate Judge Candace J. Smith |

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**MOTION TO INTERVENE BY A BETTER BALANCE**

Before the Court is a motion to intervene by A Better Balance ("ABB"), a national nonprofit organization that advocates for pregnant and caregiving workers and students. ABB seeks to intervene "for the limited purpose of appealing to argue that the Sixth Circuit should revive the portions of the Rule that protect pregnant and postpartum students," based on ABB's impression that "the government has indicated that it does not intend to continue to defend the Rule by appealing this Court's final judgment." ECF No. 152-1 at 1. The Office of the Solicitor General has not yet made a final determination concerning appeal in this case, but if ABB is correct

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Secretary of Education Linda McMahon is automatically substituted for former Secretary of Education Miguel Cardona.

1

that Defendants elect not to appeal, ABB may not appeal in Defendants' stead because it lacks Article III standing. Conversely, should Defendants appeal, ABB does not contend that Defendants would fail to adequately represent its interests in this litigation. Either way, the Court should deny ABB's motion to intervene and should deny ABB's motion for extension of time to file a notice of appeal.

## BACKGROUND

As set forth more fully in Defendants' prior briefing, this case concerns a 2024 rule (the "Rule") that makes numerous changes to the Department of Education's Title IX regulations. *See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024). The Rule contains numerous provisions, ranging from revising recordkeeping requirements to guaranteeing access to lactation spaces for breastfeeding students. *See generally id.* Plaintiffs and Plaintiffs-Intervenors challenged several portions of the Rule, including § 106.10, § 106.31(a)(2), and the definition of sex-based hostile environment harassment in § 106.2, focusing particularly on those provisions' application to gender identity discrimination. *E.g.*, ECF No. 21-3, ¶ 351; ECF No. 1, ¶ 263. Plaintiffs and Plaintiffs-Intervenors did not raise any claim that the Rule's provisions regarding protections for pregnant and postpartum students were unlawful. On January 9, 2025, the Court granted Plaintiffs' and Plaintiffs-Intervenors' motions for summary judgment, denied Defendants' motion for summary judgment, and vacated the Rule on a nationwide basis. ECF Nos. 143, 144. The Court declined to sever the challenged portions of the Rule from the Rule's other provisions, including the provisions addressing protections for pregnant and postpartum students. ECF No. 143 at 12. On January 10, 2025, the Court entered an Amended Judgment, which slightly revised the declaratory relief portion of the original Judgment. ECF Nos. 145, 146.

2

On February 26, 2025, ABB filed a motion to intervene, requesting "to intervene in this case to file an appeal and try to revive those portions of the regulation [that protect pregnant and postpartum students]." ECF No. 152 at 1.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 24(a)(2) establishes four requirements for intervention of right: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *United States v. Tennessee*, 260 F.3d 587, 591-92 (6th Cir. 2001); *see* Fed. R. Civ. P. 24(a)(2).

Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Court may deny a request for permissive intervention, among other reasons, because an existing party already adequately represents the proposed intervenor's interests. *See, e.g.*, *Tennessee v. Cardona*, No. 2:24-cv-072-DCR, 2024 WL 3584362, at *1 (E.D. Ky. May 20, 2024) ("Since the existing plaintiffs adequately represent Griffin's interests, permissive intervention is not warranted.").

The Sixth Circuit has held that mere intervention in an existing suit in district court does not require the intervenor to demonstrate constitutional standing. *See Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 428 (6th Cir. 2008) (explaining that "[a]n intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing" (quoting *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994))). However, "an intervenor seeking to appeal, like any other party, must fulfill the requirements of Article III of the Constitution before it can continue to pursue an action in the

absence of the party on whose side intervention was permitted." *Id.* (citing *Diamond v. Charles*, 476 U.S. 54, 68 (1986)); *see Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 317 (6th Cir. 2005) ("The Supreme Court has held that for an intervenor to continue litigation by pursuing an appeal when the party on whose side it has intervened has not appealed, the intervenor must have standing in its own right" (citing *Diamond*, 476 U.S. at 65)).

## ARGUMENT

The motion to intervene should be denied. ABB seeks to intervene only "to argue that the Sixth Circuit should revive the portions of the Rule that protect pregnant and postpartum students," in the event that Defendants "do[] not intend to continue to defend the Rule by appealing this Court's final judgment." ECF No. 152-1 at 1. Should Defendants appeal the Court's judgment, ABB does not contend that Defendants would fail to adequately represent its interests in this litigation, undermining a basis for intervention. *See* Fed. R. Civ. P. 24(a)(2) (listing inadequate representation by existing parties as a requirement for intervention of right); *Tennessee*, 2024 WL 3584362, at *1 (denying permissive intervention because proposed intervenor's interests were already adequately represented). Indeed, ABB does not even attempt to argue that it should be allowed to intervene for the purpose of raising its intended arguments on appeal if Defendants themselves notice an appeal. Rather, ABB argues that it is entitled to intervene because "the new Presidential administration has signaled that it does not intend to defend the Rule" on appeal. ECF No. 152-1 at 3, and ABB wishes "to argue on appeal that, even if the Court were right to strike down the challenged provisions, the provisions related to pregnant and postpartum students should go into effect," *id.* at 7. But because ABB lacks Article III standing to raise any such claims, it may not pursue an appeal in the absence of Defendants.

"[A] party seeking to establish Article III standing must show: 1) an injury in fact – an

4

invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, 2) a causal connection between the injury and the conduct complained of, and 3) a likelihood of redressability by a favorable judgment." *Providence*, 425 F.3d at 318 (quotation marks omitted). "It is possible to have standing to intervene in a lawsuit, but not have Article III standing to bring an independent appeal." *Id.* (citing *Perry*, 16 F.3d at 690). "This is so because the 'injury in fact' requirement is stricter than the 'substantial interest' inquiry." *Id.* "Like an individual, an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the . . . conduct" at issue. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) (quotation marks omitted). Here, ABB lacks standing to bring an independent appeal because it fails "to allege such a personal stake in the outcome of the controversy as to warrant [*its*] invocation of federal-court jurisdiction." *Providence*, 425 F.3d at 318 (quotation marks omitted).

ABB's claimed standing to pursue an appeal in this case rests on a theory that, if the regulatory provisions at issue remain vacated, ABB will expend resources that it otherwise would use to more broadly pursue its mission. ECF No. 152-1 at 16-18. As an example, ABB posits that "if the Rule were in effect, ABB could quickly point postpartum callers to the provision of the regulation that requires their schools to provide them time and space to express milk at school," instead of having to "conduct research and craft individualized arguments for why these callers' schools should provide these lactation accommodations." *Id.* at 17. ABB argues that this anticipated impact is sufficient to establish an Article III injury under *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). ECF No. 152-1 at 17.

ABB overreads *Havens* and fails to demonstrate that it is suffering or will imminently suffer any injury in fact due to vacatur of the Rule. In *Havens*, the plaintiff housing counseling

5

service sued the defendant under the Fair Housing Act for "racial steering," 455 U.S. at 367, and its claimed injury was that the defendant's steering practices had "frustrated the organization's counseling and referral services, with a consequent drain on resources," *id.* at 369. The Court concluded that this impairment of the organization's "ability to provide counseling and referral services for low-and moderate-income homeseekers" was an injury in fact because it was "concrete and demonstrable," and thus "far more than simply a setback to the organization's abstract social interests." *Id.* at 379. In other words, the *Havens* plaintiff had standing because the defendant's actions "directly affected and interfered with [the plaintiff's] core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *All. for Hippocratic Med.*, 602 U.S. at 395. "*Havens* was an unusual case, and [the] Court has been careful not to extend the *Havens* holding beyond its context." *Id.*

The narrow holding of *Havens* does not help ABB here. ABB's declarant explains that "[a] significant portion of our legal work consists of counseling workers and students who contact us through our free legal helpline," ECF No. 152-2, ¶ 6, and ABB argues that "in the absence of the Rule, ABB must expend more resources counseling pregnant and postpartum students who call the organization for assistance, with worse results." ECF No. 152-1 at 17. But ABB does not contend that the January 9, 2025, vacatur of the Rule has prevented it from effectively counseling such pregnant and postpartum students. Nor does ABB otherwise demonstrate that the Rule's vacatur is "directly affect[ing] and interfer[ing] with [its] core business activities." *All. for Hippocratic Med.*, 602 U.S. at 395. Indeed, ABB does not even contend that the Rule's vacatur has caused it to "expend more resources counseling pregnant and postpartum students"—or to have "worse results" counseling such students—than it did during the months when the Rule was in effect in some states. ECF No. 152-1 at 17. At best, ABB speculates that if the Rule were in

6

effect, ABB could expand its core activities and more effectively carry out its mission. *See id.* (arguing that if the Rule were in effect, ABB could devote its resources "to other ends, such as serving more students or providing more comprehensive services"); ECF No. 152-2, ¶¶ 13-14, 19-20, 25, 29-30. But standing cannot rest on a chain of speculative possibilities, *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), and in any event, the benefits ABB imagines might accrue if it were to prevail on appeal do not equate to a present or imminent harm.

Because ABB has not shown that it is suffering any concrete and particularized, actual or imminent injury due to the Court's vacatur of the Rule, it lacks standing to pursue an independent appeal. *See Providence*, 425 F.3d at 318. Accordingly, the Court should deny ABB's motion to intervene. *See, e.g.*, *Ctr. for Powell Crossing, LLC v. City of Powell*, No. 2:14-CV-2207, 2016 WL 3384298, at *3 (S.D. Ohio June 20, 2016) ("[T]he court concludes that Petitioners may not intervene for purposes of filing an appeal because they lack standing."), *aff'd sub nom. Ctr. for Powell Crossing, LLC v. Ebersole*, 696 F. App'x 702 (6th Cir. 2017). Given ABB's lack of standing to appeal, the Court also should deny ABB's motion for extension of time to file a notice of appeal.

## CONCLUSION

For the foregoing reasons, the Court should deny ABB's motion to intervene and deny ABB's motion for extension of time to file a notice of appeal.

Dated: March 6, 2025                              Respectfully submitted,

                                                YAAKOV M. ROTH
Acting Assistant Attorney General

DIANE KELLEHER
Director, Federal Programs Branch

*/s/ Elizabeth Tulis*
ELIZABETH TULIS
Assistant Director
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-9237
Fax: (202) 616-8470
E-mail: elizabeth.tulis@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on March 6, 2025, the above document was filed with the CM/ECF filing system.

/s/ *Elizabeth Tulis*