# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## COVINGTON DIVISION

| | |
|---|---|
| **State of Tennessee; Commonwealth of Kentucky; State of Ohio; State of Indiana; Commonwealth of Virginia;** and **State of West Virginia**, | |
| *Plaintiffs*, | |
| and | |
| **Christian Educators Association International; A.C.**, by her next friend and mother, Abigail Cross, | |
| *Intervenor-Plaintiffs*, | Case No. 2:24-cv-00072-DCR-CJS <br> Judge Danny C. Reeves |
| v. | **Intervenor-Plaintiffs' Brief in Opposition to Motions to Intervene by Proposed Intervenor-Defendants** |
| **Miguel Cardona**, in his official capacity as Secretary of Education; and **United States Department of Education,** | |
| *Defendants,* | |
| **A Better Balance**, | |
| *[Proposed] Intervenor-Defendant,* | |
| and | |
| **Victim Rights Law Center** and **Jane Doe**, | |
| *[Proposed] Intervenor-Defendants.* | |

# TABLE OF CONTENTS

Table of Authorities ......................................................................................... ii

Introduction ...................................................................................................... 1

Background ........................................................................................................ 2

Argument ........................................................................................................... 4

I.      The Court should deny intervention as of right. ................................. 4

        A.      The proposed intervenors have not established Article III standing to appeal. ........................................................................................ 4

                1.      Proposed intervenors have not set forth specific facts identifying an injury in fact. ............................................... 5

                2.      Proposed intervenors have not established causation. ............. 10

                3.      Proposed intervenors asserted injuries would not be redressed by a favorable ruling on appeal. ............................. 13

        B.      The motions to intervene are not timely. ............................... 14

II.     The Court should deny permission to intervene. ............................. 18

Conclusion ....................................................................................................... 19

**CERTIFICATE OF SERVICE** ............................................................. 21

# Table of Authorities

## Cases

*Alabama v. United States Secretary of Education,*
  No. 24-12444, 2024 WL 3981994 (11th Cir. Aug. 22, 2024) ............... 14, 16, 17

*Arizona Alliance for Retired Americans v. Mayes,*
  117 F.4th 1165 (9th Cir. 2024) ............................................................. 6, 7, 8

*Blount-Hill v. Zelman,*
  636 F.3d 278 (6th Cir. 2011) ............................................................ 4, 5, 15, 18

*Cherry Hill Vineyards, LLC v. Lilly,*
  553 F.3d 423 (6th Cir. 2008) ................................................................... 4

*Department of Education v. Louisiana,*
  603 U.S. 866 (2024) ............................................................................. 1, 3, 16

*Fair Housing Center of Metropolitan Detroit v. Singh Senior Living,* LLC,
  124 F.4th 990 (6th Cir. 2025) ..................................................................... 6

*FDA v. Alliance for Hippocratic Medicine,*
  602 U.S. 367 (2024) .................................................................... 6, 7, 9, 10, 13

*Havens Realty Corporation v. Coleman,*
  455 U.S. 363 (1982) ........................................................................... 6, 7

*Kansas v. United States Department of Education,*
  739 F. Supp. 3d 902 (D. Kan. 2024) .................................................... 14

*Sprint Communications Company, L.P. v. APCC Services, Inc.,*
  554 U.S. 269 (2008) ............................................................................... 13

*Tennessee Conference of the National Association for the Advancement of
  Colored People v. Lee,*
  105 F.4th 888 (6th Cir. 2024) ....................................................... 12

*Tennessee v. Cardona,*
  737 F. Supp. 3d 510 (E.D. Ky. 2024) .................................................... 3

*Tennessee v. Cardona,*
  No. 24-5588, 2024 WL 3453880 (6th Cir. July 17, 2024) ........................... 3, 17

*Tennessee v. Cardona,*
  No. CV 2:24-072-DCR, 2025 WL 63795 (E.D. Ky. Jan. 9, 2025) ...................... 3

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ........................................................................... 5

*United Airlines, Inc. v. McDonald*,
   432 U.S. 385 (1977) ......................................................................... 15

*United States v. City of Detroit*,
   712 F.3d 925 (6th Cir. 2013) ..................................................... 15, 18

*Ward v. National Patient Account Services Solutions*,
   9 F.4th 357 (6th Cir. 2021) ............................................................. 56

## Statutes, Rules and Regulations

34 C.F.R. § 106.10 .................................................................................. 16

34 C.F.R. § 106.2 .................................................................................... 3

34 C.F.R. § 106.45(b)(6)(i) (2020) ........................................................ 10

105 ILCS § 10-20.60 ................................................................................ 8

Ark. Code 6-18-234 ................................................................................. 8

Cal. Educ. Code § 66271.9 ...................................................................... 8

Fed. R. App. P. 4(a)(1)(B)(i) .................................................................... 3

Fed. R. Civ. P. 24(a)(2) ............................................................................ 4

Fed. R. Civ. P. 24(b)(1)(B) ..................................................................... 18

La. Rev. Stat. § 17:221.8 .......................................................................... 8

Mass. Gen. Laws Ann ch. 6 § 168E ...................................................... 10

## Other Authorities

Nondiscrimination on the Basis of Sex in Education Programs and Activities
   Receiving Federal Financial Assistance," 89 Fed. Reg. 33,474 (Apr. 29,
   2024) .................................................................................................. 1

The Tennessean, *Tennessee sues feds over new Title IX protections for
   transgender students* (Apr. 30, 2024),
   https://www.tennessean.com/story/news/education/2024/04/30/tennesse
   e-sues-department-of-education-title-ix-lgbtq-protections/73512717007/ ...... 15

## INTRODUCTION

After this Court entered final judgment on January 9, 2025, vacating the Department of Education's Title IX regulation, "Nondiscrimination on the Basis of Sex in Education Programs and Activities Receiving Federal Financial Assistance," 89 Fed. Reg. 33,474 (Apr. 29, 2024) ("the Rule"), two groups and one individual have sought to intervene to appeal just a few days before the federal government's (Government) generous 60-day appeal deadline. Intervenor-Plaintiffs—like the Plaintiff States—oppose both motions. The proposed intervenors cannot show standing, their requests come too late, and their intervention would prejudice the current parties. This Court should deny intervention for any of these reasons.

Start with jurisdiction. To intervene to appeal, the proposed intervenors must show Article III standing based on evidence sufficient at the summary-judgment stage. But they cannot. As parties not directly regulated by the Rule, they face an uphill climb to show that the Rule's vacatur will injure them. Meanwhile, other injunctions already stop the Rule from going into effect. So proposed intervenors have too many speculative links in the chain to overcome to carry their burden to show injury, causation, or redressability.

Next, the proposed intervenors come too late. It has been nearly seven months since the Supreme Court rejected the Government's plea to sever the Rule. *Dep't of Educ. v. Louisiana*, 603 U.S. 866 (2024) (per curiam). From that day on—if not before—proposed intervenors were on notice that the Government might not adequately represent their interests. Yet they did nothing. When the Government sought summary judgment without offering anything more, the proposed

1

intervenors did nothing. When the Government filed its closing brief—still offering no more justification for severability—they did nothing. When a new President with a vastly different Title IX agenda was elected, they did nothing. Nearly two months ago, this Court again rejected the Government's threadbare severability argument and vacated the Rule. The Government's generous appeal clock runs out this Monday, March 10. Yet the proposed intervenors still did nothing until the last week of February.

Finally, the proposed intervenors' delay prejudices the existing parties. The parties cannot probe the basis for standing nor fully respond to new arguments brought for the first time now. The late timing would disadvantage the current parties on appeal when responding to new arguments and new facts for the first time. Because this prejudice is great and the proposed intervenors have not established Article III standing, they should not be allowed to intervene at this late hour.

## BACKGROUND

In April 2024, the Department of Education promulgated new rules redefining "sex" throughout Title IX. Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33474 (April 29, 2024), https://bit.ly/3WijcNn. Six states sued in this Court challenging the Rule. *See* Compl. [ECF No. 1]. Intervenor-Plaintiffs Christian Educators Association International and A.C. moved to intervene, demonstrating the multiple, direct injuries the Rule inflicted upon them. *See* Intervenor-Pl.'s

Mem. in Supp. of Mot. to Intervene [ECF No. 21-1] at 11–19. This Court granted their motion. *See* Order [ECF No. 50].

This Court preliminarily enjoined enforcement of the Rule in June 2024. *See Tennessee v. Cardona*, 737 F. Supp. 3d 510, 572 (E.D. Ky. 2024). The Sixth Circuit denied the Government's motion for a stay. *Tennessee v. Cardona*, No. 24-5588, 2024 WL 3453880, at *5 (6th Cir. July 17, 2024). The Supreme Court then denied the Government's emergency application for a stay pending appeal. *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 868 (2024) (per curiam).

On January 9, 2025, this Court granted motions for summary judgment filed by the Plaintiff States and Plaintiff-Intervenors and vacated the Rule. *See Tennessee v. Cardona*, No. CV 2:24-072-DCR, 2025 WL 63795, at *7 (E.D. Ky. Jan. 9, 2025), as amended (Jan. 10, 2025). Defendants have until March 10 to file a notice of appeal. *See* Fed. R. App. P. 4(a)(1)(B)(i).

Over six weeks after this Court's judgment, A Better Balance ("ABB"), Victim Rights Law Center ("VRLC"), and a Jane Doe moved to intervene to appeal. *See* Proposed Intervenor-Defendant A Better Balance's Mot. to Intervene [ECF No. 152]; Proposed Intervenor-Defendants Victim Rights Law Center's and Jane Doe's Mot. to Intervene [ECF No. 164]. ABB wants to show on appeal that "the provisions related to pregnant and postpartum students" can be severed from the unlawful provisions of the Rule. ABB Mem. [ECF No. 152-1] at 7. VRLC and Jane Doe want to defend, on a similar basis, the Rule's definition of sex-based harassment in 34 C.F.R. § 106.2 and "numerous" procedural provisions that the

States and Intervenor-Plaintiffs "did not specifically challenge." VRLC Mem. [ECF No. 164-1] at 3–4. Their foundational theory is that the Rule's redefinition of sex-based discrimination to encompass gender-identity-based considerations is severable from the rest of the Rule.

## ARGUMENT

## I.    The Court should deny intervention as of right.

To intervene for purposes of appealing, the proposed intervenor must establish its own Article III standing "before it can continue to pursue an action in the absence of the party on whose side intervention was granted." *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 428 (6th Cir. 2008). In addition, intervention as of right depends on the proposed intervenor meeting four requirements: (A) the proposed intervenor must file a timely request to intervene; (B) the proposed intervenor must have a "substantial legal interest" in the case; (C) that will be impaired without intervention; and (D) its interest is not adequately represented by existing parties. *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011); *see* Fed. R. Civ. P. 24(a)(2). Proposed intervenors cannot show (A) standing or (B) timeliness.

### A.    The proposed intervenors have not established Article III standing to appeal.

The proposed intervenors seek to intervene to appeal a judgment in the absence of the original defendants, so the "substantial legal interest" they must

establish to intervene under Rule 24 is the same as Article III standing. *See id.* Proposed intervenors must establish standing, and they fail to do so.[1]

On top of this, proposed intervenors seek to appeal a grant of summary judgment. That means they "bear the burden of establishing the elements of standing," which are "(1) ... injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Ward v. Nat'l Patient Account Servs. Solutions*, 9 F.4th 357, 360, 368 n.1 (6th Cir. 2021) (cleaned up). To meet this burden at the summary-judgment stage, they "cannot rely on mere allegations, but must also set forth specific facts demonstrating ... standing." *Id.* at 361. Proposed intervenors do not present the "specific facts" required to carry their burden.

### 1. Proposed intervenors have not set forth specific facts identifying an injury in fact.

Injury-in-fact means "a concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). None of the proposed intervenors is directly regulated by the Rule. Instead, ABB and VRLC allege that the Rule, through its regulation of third parties, affects their ability to carry out their respective missions and causes them to divert resources. *See* ABB Mem. [ECF No. 152-1] at 17; VRLC Mem. [ECF No. 164-1] at 7–11. These are not cognizable injuries under Article III.

---

[1] ABB contradicts Sixth Circuit precedent when it says, "[a]t this juncture, ABB does not need Article III standing." ABB Mem. [ECF No. 152-1] at 16. VRLC and Jane Doe correctly acknowledge that proving standing "is ... necessary to appeal where no original party is doing so." VRLC Mem. [ECF No. 164-1] at 6 n.4.

**a.**    ABB and VRLC's theory of injury relies on the Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). But the Supreme Court has clarified the scope of *Havens*, and the Sixth Circuit and other courts have abandoned expansive theories of both injury and causation built on overbroad readings of *Havens. See FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 393–96 (2024); *Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living*, LLC, 124 F.4th 990, 992–93 (6th Cir. 2025); *Arizona All. for Retired Americans v. Mayes*, 117 F.4th 1165, 1178–81 (9th Cir. 2024). *Havens*-type standing "extends *only* to cases in which an organization can show that a challenged governmental action *directly* injures the organization's pre-existing core activities and does so apart from the plaintiffs' response to that governmental action." *Mayes*, 117 F.4th at 1170.

As the Supreme Court explained, it is "incorrect" to argue that "standing exists when an organization diverts its resources in response to a defendant's actions." *Alliance*, 602 U.S. at 395. The alleged injury in *Havens* was the provision of false information *to the plaintiff* which then "perceptibly impaired" the organization's activity of providing referrals based on that information. 455 U.S. 379. Thus, the Court explained that the challenged action "directly affected and interfered with [the party's] core business activities." *Id.*

Other courts have elaborated further. As the Sixth Circuit explained, "[i]t is not enough to broadly gesture toward 'a drain on an organization's resources' and call it a day, as some of [the Sixth Circuit's] pre-*Alliance* cases have done." *Singh*, 124 F.4th at 992. Rather, "[t]here must be something more—the court must find

that the organization has alleged and shown that the conduct challenged in the suit interfered with the organization's 'core business activities.'" *Id.* at 992– 93 (quoting *Alliance*, 602 U.S. at 395). And, as the Ninth Circuit explained, "neither the frustration of a mission nor the diversion of resources confers standing under Article III." *Mayes*, 117 F.4th at 1170.

Unlike the group in *Havens*, ABB and VRLC do not identify any false information anyone is giving their potential clients that hinders ABB's and VRLC's core business activities. ABB and VRLC instead ask to extend *Havens* to cover the government's failure to provide a uniform national rule, thereby forcing ABB and VRLC to research local laws that could give their clients relief. But this alleged "uniformity harm" is unbounded. Every advocacy group would benefit from a uniform national rule in their field to turn to first. While the Supreme Court has compared the group in *Havens* to a retailer who sues a manufacturer for selling defective goods to the retailer, *Alliance*, 602 U.S. at 395, ABB and VRLC are like retailers suing the government for not uniformly forcing manufacturers to offer a new product line that is convenient for them. That would extend *Havens* well beyond its facts and any breaking point.

ABB and VRLC also cannot show any direct interference with their "pre-existing" activities. *Id.* ABB says that *in response* to the vacatur of the Rule, it must "expend more resources" or "conduct research and craft individualized arguments" in favor of accommodations for pregnant and parenting students. ABB Mem. [ECF No. 152-1] at 17. VRLC says that *in response* to vacatur, it must

expend resources to compensate for reduced demand for its services or "expend significantly more time and resources to provide legal assistance to its clients ...." VRLC Mem. [ECF No, 164-1] at 7–8, 10. But parties cannot "spend their way into Article III standing by taking new actions in response to what they view as disfavored policy." *Mayes*, 117 F.4th at 1178. "[S]pending money voluntarily in response to a governmental policy cannot be an injury in fact." *Id.*

Vacatur of the Rule does not prevent these groups from pursuing their respective missions: "providing policy and legal assistance for pregnant and parenting students," ABB Mem. [ECF No. 152-1] at 5; and "redress[ing] and prevent[ing] sex-based harassment" by helping student victims pursue Title IX complaints with their schools, VRLC Mem. [ECF No. 164-1] at 8. Both groups can continue to counsel and advise students within the framework of governing law, whichever framework that might be.[2]

Intervenors' frustration-of-mission and diversion-of-resources theories would permit any legal or advocacy organization to challenge any change in the law they

---

[2]    In addition to Title IX, many state laws provide protections for the students the organizations serve. Indeed, ABB acknowledges that Title IX and the Rule are not the only sources of protection for ABB's potential clients. It highlights the Pregnant Workers Fairness Act, the PUMP for Nursing Mothers Act, and "a wealth of" unspecified "state and local policies" in "seventeen states." Greenberg Decl. [ECF No. 152-2] at 2. That's correct. pregnant and parenting students. *See, e.g.*, Ark. Code 6-18-234; Cal. Educ. Code § 66271.9; 105 ILCS § 10-20.60; La. Rev. Stat. § 17:221.8.
      As to sexual assault and harassment, there is state criminal and tort law, along with procedural protections. VRLC declarants cite Mass. Gen. Laws Ann ch. 6 §§ 168D, 168E as an example of "the best ways to protect student survivors." Malone Decl. [ECF No. 164-2] at 5.

disagree with, so long as it might make their planned future activities more expensive. Or, as the Ninth Circuit put it, "[i]f we accepted plaintiffs' extravagant theory of standing, a law school professor who teaches election law would have standing to challenge [new election laws] because she would have to spend resources to change her curriculum and further educate her students about the state of the law." *Id.* at 1181. In a similar vein as that professor, ABB argues that its client counseling in the future might be more complex. ABB Mem. [ECF No. 152-1] at 17. VRLC worries that it may get fewer calls (which is another way of saying it must spend more on outreach) and that students it represents will have access to less favorable procedures (according to VRLC). VRLC Mem. [ECF No. 164-1] at 8, 9–11. The groups point only to *impact upon* their activities, when the binding standard is that they must "show[] *interference with* [their] core business activities." *Singh*, 124 F.4th at 993 (emphasis added). They fail to do so.

VRLC points to "two previous cases" in which district courts concluded it had shown diversion of resources. VRLC Mem. [ECF No. 164-1] at 10. But these district court decisions predated *Alliance* and reflect a capacious understanding of diversion-of-resources-standing that has been repudiated.

**b.**    Moving to Jane Doe, her alleged injury is cross-examination during a hearing on the Title IX complaint she filed last year. Doe "worr[ies] that Respondent's advisor will use cross-examination to ask me questions that try to poke holes in my story to make it sound like it was my fault I was raped or that I deserved to be raped." Doe Decl. [ECF No. 164-3] at 4.

*First*, the alleged injury is not actual or imminent. As the States explain, the scenario Ms. Doe describes involves school officials *violating* the 2020 regulations or acting outside their requirements. *See* Plaintiffs' Br. [ECF No. 175] at 13. The 2020 regulations, for example, limit any cross-examination to "relevant" questions. 34 C.F.R. § 106.45(b)(6)(i) (2020). Indeed, Massachusetts law requires universities to adopt procedures that bar parties from "directly question[ing] each other during a hearing" and may place "restrictions on evidence considered by the fact-finder including ... the use of evidence of prior sexual activity." Mass. Gen. Laws Ann ch. 6 § 168E(b)(H)–(I). Doe offers no facts to suggest the university will ignore these procedures. The alleged injury here is speculative.

*Second*, this injury would not support standing to appeal any other provisions of the Rule, particularly the definition of hostile-environment harassment. Indeed, though Jane Doe asks to defend the new hostile-environment standard on appeal, she nowhere explains what it has to do with her case. *See* VRLC Mem. [ECF 164-1] at 3, 12. There is no suggestion that the assault she describes would violate the Rule's new standard but not the *Davis* standard.

## 2. Proposed intervenors have not established causation.

Proposed intervenors also fail to allege specific facts necessary to show that their alleged harms are traceable to vacatur of the Rule. When parties "challenge[] the government's 'unlawful regulation (or lack thereof) of *someone else*,' 'standing is not precluded, but it is ordinarily more difficult to establish." *Alliance*, 602 U.S. at 382 (quoting *Lujan*, 504 U.S. at 562). "The causation requirement precludes speculative links—that is, where is it not sufficiently predictable how third parties

would react to government action or cause downstream injury to" the intervenors. *Id.* at 383. "[T]he causation requirement also rules out attenuated links—that is, where the government action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing." *Id.* at 383. The causal link between proposed intervenors' alleged injuries and the vacatur of the Rule is both speculative and attenuated.

ABB gives no details about the calls it has received that enable this Court to evaluate causation (let alone to meet their burden at the summary-judgment stage). ABB's declaration reports, "[t]he vast majority of the helpline calls we have received since August 1, 2024, were from students in states or at schools where the regulation was enjoined." Greenberg Decl. [ECF No. 152-2] at 4. But, since the Rule never took effect in the states where it was enjoined, ABB's factual claim is that it simply continued doing the work it was voluntarily performing—helping students obtain accommodations. Moreover, the declarants don't say how many calls they received or where they came from. They don't say what issues the calls raised specifically or how often each issue came up. There's no evidence that students called about accommodations that would have been required by the Rule, so there's no traceability.

Nor has ABB identified anyone who suffered harm traceable to the Rule's vacatur. Ms. Greenberg discusses two particular students who did not receive adequate accommodations for lactation. *See* Greenberg Decl. [ECF No. 152-2] at 6–7. But she does not establish a causal link to the vacatur for either harm (let alone

11

link those students to any harm to ABB). For the first, Ms. Greenberg says
"because she was in a state where the regulations were enjoined, her school told
her that she could not" receive the requested accommodation. *Id.* (emphasis added).
This conclusory allegation fails because such a circumstance does not prevent ABB
from counseling about accommodations. After all, many state laws have similar
requirements. *See supra* n.2.

The second instance has even less detail: it just says that "[a]nother student
was denied her requested schedule for lactation breaks." But the most the Rule
would require is "reasonable" accommodations. Here, it's impossible to tell whether
the student's requested schedule was reasonable. This does not establish causation
at the summary-judgment stage. *See Tennessee Conf. of the Nat'l Ass'n for the
Advancement of Colored People v. Lee*, 105 F.4th 888, 907 (6th Cir. 2024) (NAACP)
failed to show standing at summary-judgment stage where "the NAACP did not
identify any specific voters, or even the number of voters, that it had helped in the
past. Nor did it provide any similar detail about its plans to help voters register in
the future.").

VRLC also fails its causation burden by relying on speculative and
attenuated claims. Like ABB, it relies on unspecified, undifferentiated allegations
about the volume of calls received. *See* Malone Decl. [ECF No. 164-2] at 4–5. VRLC
claims, "[i]n the first six weeks following the 2024 Rule's vacatur, VRLC received
41% fewer requests for legal assistance than in the first six weeks following the
implementation of the 2024 Rule." *Id.* at 5. But this statistic establishes no causal

link. In many jurisdictions and at many schools, enforcement of the Rule was already enjoined. So there's no way to know if there was any relationship between the number (or type) of requests received and the enforcement of the Rule. And VRLC declarants don't say how many requests a 41% difference signifies, so the figure has no statistical value. They also don't say what other reasons there might be for the number of requests to vary from one six-week period to another.

Jane Doe also does not show causation. She asserts that the vacatur of the Rule is responsible for a change in proceedings related to her Title IX complaint, which would now subject her to cross-examination. Doe Decl. [ECF No. 164-3] at 4. But any such harm is not traceable to vacatur. As discussed above, the scenario she describes would require her school to violate, not follow, the 2020 regulations. *See supra* at 10.

> ### 3. Proposed intervenors asserted injuries would not be redressed by a favorable ruling on appeal.

To prove standing, a party must also prove "redressability (i.e., it is likely and not merely speculative that the [party's] injury will be remedied by the relief [the party] seeks in bringing suit)." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273–74 (2008) (cleaned up). Causation and redressability are typically linked, and intervenors' failure on the former element necessitates their failure on the latter. *See Alliance*, 602 U.S. at 367, 380–81 ("causation and redressability—are often "flip sides of the same coin") (quoting *Sprint*, 554 U.S. at 288).

Proposed intervenors fail redressability for an independent reason: in addition to this Court vacating the Rule, another court has too. *See* Mem. Op. & Order, *Carroll ISD v. U.S. Dep't of Educ.*, No. 2:24-cv-00461 (N.D. Tex. Feb. 19, 2025), ECF No. 86. Reversal of this Court's judgment therefore wouldn't put the Rule into effect. And other courts have enjoined its enforcement in multiple states and at hundreds of schools and universities. *See Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994, at *8 (11th Cir. Aug. 22, 2024) (per curiam) (collecting cases); *e.g.*, *Kansas v. U.S. Dep't of Educ.*, 739 F. Supp. 3d 902, 936–37 (D. Kan. 2024) (enjoining the rule at "schools attended by the members of Young America's Foundation or Female Athletes United, as well as the schools attended by the minor children of the members of Moms for Liberty"). Proposed intervenors have not offered sufficient facts to show that their asserted injuries do not arise in states or institutions covered by these other court orders. As a result, they have not met their burden to show that a favorable ruling in this litigation would redress any of their injuries.

Redressability is also lacking for Jane Doe because this appeal will not be resolved by next month, which is when she says the hearing will be held, but she has not sought any type of emergency relief. That means intervention here likely will not remedy any of her alleged injuries.

## B. The motions to intervene are not timely.

Even if the proposed intervenors had satisfied their burden to prove Article III standing, their motions are untimely. The proposed intervenors have had at

least six months' notice that their alleged interests were at risk—yet they did not intervene.

Five considerations bear on timeliness: (1) the stage of the litigation; (2) how long the proposed intervenor has known about its interest in the case; (3) the purpose of intervention; (4) prejudice to the original parties; and (5) any "unusual circumstances militating against or in favor of intervention." *Blount-Hill*, 636 F.3d at 284. "If the motion is untimely, the court *must* deny intervention." *United States v. City of Detroit*, 712 F.3d 925, 930 (6th Cir. 2013) (emphasis added).

The stage of this litigation undermines timeliness. Although district courts have discretion to allow intervention for purposes of appeal, that request must be made "as soon as it bec[omes] clear" that the proposed intervenors' asserted interests will not be protected by an existing party. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977). The proposed intervenors cannot make that showing here.

This litigation has been highly publicized from the day it was filed.[3] And it has been clear since last summer, when the Supreme Court rejected the Government's severability arguments to partially stay the preliminary injunction, that the proposed intervenors' asserted interests were at risk.

---

[3]    *E.g.*, The Tennessean, *Tennessee sues feds over new Title IX protections for transgender students* (Apr. 30, 2024), https://www.tennessean.com/story/news/education/2024/04/30/tennessee-sues-department-of-education-title-ix-lgbtq-protections/73512717007/;, *Biden's new Title IX rules are all set to take effect. But not in these states.* (Aug. 1, 2024), https://www.usatoday.com/story/news/nation/2024/08/01/biden-title-ix-rules-stalled-state-challenges/74530041007/.

The Government argued to the Supreme Court that this Court erred "by enjoining provisions that respondents had not challenged and that the court had not held to be likely unlawful."[4] In support of its request for a partial stay of the preliminary injunction, the Government provided a paragraph listing provisions it contended were unaffected—including "protections for pregnant and postpartum students" and "recipients' obligations in responding to claims implicating Title IX."[5] So it should have been no surprise to the proposed intervenors that their asserted interests could depend on the severability question. The Supreme Court rejected the Government's stay application, explaining that the Government had not "adequately identified which particular provisions, if any, are sufficiently independent of the enjoined definitional provision [34 C.F.R. § 106.10,] and thus might be able to remain in effect." *Louisiana*, 603 U.S. at 868.

The proposed intervenors might be forgiven for assuming the Government would correct its failure going forward. After all, eight district courts, three courts of appeals, and the Supreme Court all had rejected the Government's efforts to carve such provisions out of the preliminary injunctions. *See Alabama*, 2024 WL 3981994, at *8 (collecting cases). In one way or another, each court agreed that "the three provisions that Plaintiffs challenge are 'central provisions' that 'appear to touch every substantive provision of the Rule,' and the Department 'never

---

[4]    Application for a Partial Stay of the Injunction Entered By the United States District Court for the Eastern District of Kentucky at 20, *Cardona et al. v. Tennessee et al.*, No. 24A63, 2024 WL 351533 (July 22, 2024).
[5]    *Id.* at 21.

contemplate[d] enforcement of the [r]ule without any of the core provisions.'" *Id.* (quoting *Tennessee v. Cardona*, No. 24-5588, 2024 WL 3453880, at *3–4 (6th Cir. July 17, 2024)). The Government's strategy—cite the Rule's severability clause and a handful of provisions claimed to be unaffected—was not enough to show the Rule was severable. Yet when it came to summary judgment, the Government did nothing more. *Compare* Application, *supra* n.4, at 20–21, *with* Defendant's Consolidated Response and Motion for Summary Judgment [ECF No. 133] at 39–40. The proposed intervenors should have been aware that their asserted interests in the Rule's severability were not being adequately represented by the Government. Yet still, they did nothing.

So when this Court took up the existing parties' dispositive motions, all it had to work with in support of severability was 1.5 pages of a brief centered on a bulleted list of supposedly severable provisions. If ABB, for example, had sought intervention during the summary-judgment stage, it could have made the case for severing "the unchallenged provisions of the Rule that seek to protect students with 'pregnancy or related conditions.'" ABB Mem. [ECF No. 152-1] at 12. To start, it could have identified and provided context for these provisions with more than a single bullet point. *See* ECF No. 133 at 40. And ABB could have articulated a theory for how these provisions could operate sensibly after vacatur. The same goes for the other proposed intervenors when it comes to changes in grievance and hearing procedures for alleged sex-based harassment and discrimination. Instead of identifying these provisions and articulating a theory for severing them from the

ones directly at issue, they waited on the sidelines until it was too late for this Court to take their perspectives into account. "Interested parties should not be able to join at a late stage and re-litigate issues that they watched from the sidelines." *City of Detroit*, 712 F.3d at 932.

The existing parties are also prejudiced by the proposed intervenors' wait-and-see approach. The plaintiffs cannot probe the evidence supporting their asserted standing and interests—not without sacrificing the finality of the judgment. And if the intervenor-defendants are permitted to appeal, the plaintiffs will be confronting their arguments for the very first time on appeal. If the Government appeals and advances its severability theory, the plaintiffs will likely argue that severing these provisions is forfeited based on inadequate briefing below. But the proposed intervenors will argue they are not penalized by the Government's briefing forfeiture. Either way, the intervenors' delay puts the current parties at a disadvantage and does not allow them to adequately oppose arguments on appeal.

## II.  The Court should deny permission to intervene.

"On *timely* motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B) (emphasis added). Because the motions to intervene were *not* timely, permissive intervention should be denied. *See Blount-Hill*, 636 F.3d at 287. But even assuming timeliness, permissive intervention should be denied. The proposed intervenor-defendants will not defend the gender-identity discrimination provisions at the heart of the Rule, 34 C.F.R. §§ 106.10 and

18

106.31(a)(2), and they seek to pursue factual circumstances not raised before final judgment. This should not be permitted.

## CONCLUSION

The Court should deny the motions to intervene by A Better Balance, Victim Rights Law Center, and Jane Doe. ECF Nos. 152, 164.

Respectfully submitted this 7th day of March, 2025.

By: */s/ Henry W. Frampton, IV*

Edward L. Metzger III
Kentucky Bar No. 94138
**OMEGA LAW PLLC**
P.O. Box 559
Union, KY 41091
(859) 898-2140
Lee@nkylaw.net

Jonathan A. Scruggs*
Arizona Bar No. 030505
Henry W. Frampton, IV*
South Carolina Bar No. 75314
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

Natalie D. Thompson*
TX Bar No. 24088529
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax
nthompson@ADFlegal.org

Rachel A. Rouleau*
Virginia Bar No. 97783
**Alliance Defending Freedom**
44180 Riverside Parkway
Lansdowne, Virginia 20176
(571) 707-2119
(571) 707-4790 Fax
rrouleau@ADFlegal.org

*Counsel for Intervenor-Plaintiffs*

*\*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of March, 2025, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record who are registered users of the ECF system.

By: */s/ Henry W. Frampton, IV*
Henry W. Frampton, IV
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
hframpton@ADFlegal.org

21